NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
**HOLLEY DRIGGS**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 791-0308 / Fax: (702) 791-1912
Email: nsantoro@nevadafirm.com
           jsmith@nevadafirm.com

Ching-Lee Fukuda *(pro hac vice forthcoming)*
clfukuda@sidley.com
Sharon Lee *(pro hac vice forthcoming)*
sharon.lee@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Plaintiffs Evolution Malta Ltd.,
Evolution Gaming Malta, Ltd., Evolution
Gaming Ltd., and SIA Evolution Latvia*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| EVOLUTION MALTA LIMITED, EVOLUTION GAMING MALTA LIMITED, EVOLUTION GAMING LIMITED, and SIA EVOLUTION LATVIA, <br><br> Plaintiffs, <br><br> v. <br><br> LIGHT & WONDER, INC. f/k/a SCIENTIFIC GAMES CORP. and LNW GAMING, INC. f/k/a SG GAMING, INC., <br><br> Defendants. | Case No.: 2:24-cv- 00993 <br><br> **COMPLAINT** <br><br> **JURY DEMAND** <br><br><br> **(FILED UNDER SEAL)** |

Plaintiff Evolution Malta Limited, Evolution Gaming Malta Limited, Evolution Gaming Limited, and SIA Evolution Latvia (collectively, "Evolution"), by and through their undersigned counsel, seek a declaration and judgment that Defendants Light & Wonder, Inc. f/k/a Scientific Games Corp. ("Light & Wonder") and LNW Gaming, Inc. f/k/a SG Gaming, Inc. ("LNW Gaming") (collectively, "L&W") deliberately and willfully infringe U.S. Patent Nos. 10,629,024

("the '024 patent"), 11,011,014 ("the '014 patent"), and 11,756,371 ("the '371 patent") (collectively, the "Asserted Patents"), which are each owned by and assigned to Evolution, and that L&W misappropriated Evolution's trade secrets.

## NATURE OF THE ACTION

1.      This case arises out of L&W's use of, without authorization or license, Evolution's intellectual property, including L&W's deliberate infringement of patents that protect Evolution's technology and L&W's misappropriation of Evolution's highly valuable trade secrets.

2.      Evolution is a leading provider of fully-integrated online casino solutions to online gaming operators and land-based casinos.[1]  Evolution was founded in 2006 as one of the first providers of B2B live casino solutions in Europe.  Live casinos are a form of online gambling where the games are facilitated in real-time by a human dealer and players can place wagers and participate online.  Live casinos have become immensely popular among players because they replicate online the environment of a land-based casino.  Due to its industry-leading solutions, Evolution has been named Live Casino Supplier of the Year at the EGR B2B Awards, which reward the best service providers in the online gaming industry, 12 years in a row.[2]

3.      L&W is a "cross-platform global games company with a focus on content and digital markets."[3]  L&W supplies gaming machines, gaming content, casino management systems, and table game products and services to licensed gaming entities, such as casinos.[4] According to L&W, its products are installed in all of the major regulated U.S. gaming jurisdictions.[5]

4.      In 2018, Evolution launched its Lightning Roulette game in an online live version format.  Lightning Roulette is presented in a game show-style environment with advanced

---

[1] *See* https://www.evolution.com/company-overview.

[2] *See* https://www.evolution.com/news/five-wins-for-evolution-group-at-egr-b2b-awards-including-live-casino-supplier-of-the-year-for-12th-year-running/.

[3] Light & Wonder, Inc., Annual Report (Form 10-K) (for fiscal year ending Dec. 31, 2023) at 8.

[4] *Id.*

[5] *Id.* at 9.

sound and lighting effects, that combines all the familiar elements of traditional roulette (*e.g.*, wheel, dealer, roulette bets), but adds additional features to enhance the players' experience by, for example, including extra chances to win at higher payouts.[6]  Specifically, in each round, after players place their bets on the roulette table, Lightning Roulette randomly selects between one and five "Lucky Numbers" and identifies them by using animated lightning strikes.  Each of these "Lucky Numbers" is assigned a multiplied payout of between 50x and 500x.  If the ball lands in one of these "Lucky Numbers," then each player who bet on that number is paid out according to the random multiplier assigned to that number for that roulette spin.  In the online live version, users are able to participate online in a game that is hosted by a live dealer.[7]  Lightning Roulette, due to its unique formatting and features, has been hugely successful and is enjoyed by millions of players around the world.[8]  Indeed, Lightning Roulette is the largest and most profitable roulette game in the world.

5.      In 2022, building on Lightning Roulette's success, Evolution launched XXXtreme Lightning Roulette, which also randomly selects between one and five "Lightning Numbers" that are assigned multipliers from 50x up to 500x.[9]  In XXXtreme Lightning Roulette, however, the numbers can be selected again potentially increasing multipliers up to 2,000x.[10]

6.      The U.S. Patent and Trademark Office awarded Evolution several patents for the innovations embodied in Lightning Roulette, including the '024, '014, and '371 patents. The gaming industry has also recognized Lightning Roulette's innovation and contribution to the field and awarded Evolution a number of prestigious awards for Lightning Roulette.

---

[6] *See* https://games.evolution.com/live-casino/live-roulette/lightning-roulette/.

[7] *See* https://www.evolution.com/games/live-roulette/.

[8] *See, e.g.*, https://evolution.com/news/evolution-and-scientific-games-strike-land-based-lightning-roulette-deal.

[9] *See* https://www.evolution.com/news/evolution-launches-xxxtreme-lightning-roulette-latest-lightning-family-live-casino-games/.

[10] *Id.*

7.     For example, Lightning Roulette was awarded Product Innovation of the Year at the 2018 Global Gaming Awards, which recognized Lightning Roulette as "the most revolutionary product in the last 12 months."[11]  The Product Innovation of the Year award is "one of the most prestigious awards to win."[12]

8.     Lightning Roulette was also the winner of the Product Innovation of the Year award at the 2018 Global Gaming Expo (G2E), beating nine other shortlisted candidates and "prov[ing] that its sophisticated software contributions to the industry in both sectors (land-based, as well as digital) have been unsurpassed in the past 12 months."[13]

9.     Lightning Roulette was also named Game of the Year at the EGR Operator Awards in 2018 and recognized as the game "making the biggest annual impact."[14]  The EGR Operator Awards are considered the "Oscars of the egaming sector" and reward operators for "setting the [industry] standard."[15]  The Game of the Year winner is decided by votes by peer operators who were shortlisted for one of the awards.[16]

10.    Lightning Roulette was also awarded Game of the Year at the American Gambling Awards in 2022.[17]

11.    L&W's former Senior Vice President of Global Systems and Table Games recognized what a "phenomenal success" Lightning Roulette has been and attributed that success to "provid[ing] a truly unique roulette experience for players."[18]

---

[11] https://www.globalgamingawards.com/vegas/2018/; https://www.gamblinginsider.com/news/6039/global-gaming-awards-las-vegas-2018-winners-revealed.

[12] https://stargambling.net/news/global-gaming-awards-2018-vegas.html.

[13]   https://www.realmoneyaction.com/evolution-gaming-wins-product-innovation-of-the-year-at-g2e/.

[14] https://lcb.org/news/evolution-s-lightning-roulette-voted-goty-at-egr.

[15] https://egr.global/events/egr-operator-awards-2018/.

[16] https://lcb.org/news/evolution-s-lightning-roulette-voted-goty-at-egr.

[17] https://www.evolution.com/games/lightning-roulette/.

[18]      https://evolution.com/news/evolution-and-scientific-games-strike-land-based-lightning-roulette-deal.

12.     Evolution sought to build on the success of the online live version of Lightning Roulette and increase its brand exposure and potential market.  Evolution thus identified potential partners who could help bring Lightning Roulette to land-based casinos worldwide, including in the United States.  Not surprisingly, numerous companies, recognizing Lightning Roulette's success and the huge earning opportunity associated with producing a version for land-based casinos, expressed interest in partnering with Evolution for this opportunity.

13.     Evolution began negotiating the terms of an agreement with a competitor of L&W to develop a land-based version of Lightning Roulette.  After Evolution's negotiations with that company began, L&W (at the time, Scientific Games) expressed its interest in partnering with Evolution to develop the land-based version of Lightning Roulette.  Accordingly, Evolution was engaged in parallel negotiations with L&W and L&W's competitor.

14.     Over the ensuing months, LNW Gaming (at the time, SG Gaming, Inc.) and Evolution negotiated the terms of an agreement for producing a physical Lightning Roulette game table to be placed in land-based casinos.  The parties first negotiated the terms of a Mutual Non-Disclosure Agreement (hereinafter, the "NDA") to protect confidential information that the parties may exchange in connection with discussions related to the development of a land-based version of Lightning Roulette.  The parties agreed to the terms of the NDA on February 18, 2020.  Under Section 3(b) of the NDA, L&W was only allowed to use Evolution's confidential information to the extent necessary to evaluate the possibility of developing a land-based version of Lightning Roulette, and "not for any other purpose."  Moreover, as reflected in Section 11 of the NDA, the parties agreed that L&W's breach of the NDA would irreparably harm Evolution and that money damages alone would be an inadequate remedy.

15.     During the course of the parties' negotiations, LNW Gaming continuously delayed the progress of negotiations.  As Evolution repeatedly told LNW Gaming, it was extremely important to Evolution for the first land-based Lightning Roulette game tables to be placed in land-based casinos by January 2022, to coincide with Evolution's planned U.S. launch of the online version of Lightning Roulette.  It was not until Evolution informed LNW Gaming that Evolution

would pursue an arrangement with one of LNW Gamings' competitors if LNW Gaming continued to delay negotiations that LNW Gaming finally re-engaged in negotiations.

16.     The parties then entered into a Heads of Terms on March 8, 2021 to set out their common understanding of the terms of the arrangement.  That Heads of Terms included a Confidentiality provision whereby the parties agreed not to use the other party's confidential information for any purpose other than to perform their obligations under the Heads of Terms.  The Heads of Terms identified some of Evolution's intellectual property that protects Lightning Roulette, including the '024 patent and the application that led to the '014 patent.

17.     After the parties agreed to the terms of the NDA and Heads of Terms, Evolution disclosed to LNW Gaming Evolution's proprietary and confidential information regarding Lightning Roulette for the strict purpose of LNW Gaming using that information to develop physical Lightning Roulette game tables.  For example, in early March 2021, Evolution's then Director of Product, provided to L&W's then Executive Director of Table Games Development, two math files for Lightning Roulette.  These math files, which are each prominently marked "COMPANY CONFIDENTIAL" at the top, lay out the underlying math for the Lightning Roulette game, including the frequency with which each multiplier is selected, the frequency with which the roulette numbers are selected as "Lucky Numbers," and the frequency with which the ball lands on a roulette number.  This information is proprietary, unique to the Lightning Roulette game, and cannot be readily ascertained through proper means, including by observing the Lightning Roulette features or by playing the game.  The proprietary information allows, among other things, the game to remain profitable despite the inclusion of multipliers with increased payouts and increases player engagement with the game.

18.     Evolution spent significant time and resources developing the math files for Lightning Roulette and Lightning Roulette's success is attributable, at least in part, to the information in these math files.  At LNW Gaming's request, Evolution also had a subsequent telephone conversation with a number of L&W's employees, including L&W's then Senior Game Producer, to explain the contents of the math files.

19.     Evolution and LNW Gaming ultimately entered into an agreement on March 29, 2021 that required LNW Gaming to develop and manufacture a physical Lightning Roulette game table to be placed in land-based casinos beginning in January 2022 (hereinafter, the "Agreement").  Evolution granted LNW Gaming an exclusive license to certain of Evolution's intellectual property, including the Asserted Patents, but only for purposes of developing a physical Lightning Roulette game table to be placed in land-based casinos.  Through this arrangement with LNW Gaming, Lightning Roulette, which had exclusively been available online, would be introduced for the first time in land-based casinos.

20.     The Agreement reiterated LNW Gaming's obligations to maintain the confidentiality of Evolution's confidential and proprietary information, which includes the Lightning Roulette math files, and not to use Evolution's confidential and proprietary information for LNW Gaming's own or anyone else's benefit.  The Agreement further provided that Evolution's disclosure of confidential and proprietary information to LNW Gaming shall not be construed as a grant of any rights in or license to that information.  The Agreement further expressly prohibited LNW Gaming from using Evolution's intellectual property to create physical table games that would compete with a physical Lightning Roulette game table.  LNW Gaming again acknowledged in the Agreement that Evolution would be "damaged irreparably if any of the provisions of this Agreement (specifically including the obligations of confidentiality set forth in paragraph 7 herein) are not performed in accordance with their specific terms or otherwise are breached."

21.     After entering into the Agreement, Evolution publicly announced that it had entered into an exclusive agreement with L&W (then, Scientific Games) to make Evolution's multi-award winning live online Lightning Roulette game available as a physical game in land-based casinos worldwide.[19]  That press release included the following quote from L&W's then Senior Vice President of Global Systems and Table Games:

---

[19] https://www.prnewswire.com/news-releases/evolution-and-scientific-games-strike-land-based-lightning-roulette-deal-301300565.html.

- 7 -

> We have watched Lightning Roulette's phenomenal success in a live-dealer, online format and cannot wait to make it available on gaming floors of land-based casinos across North America and around the world. With its trademark lightning strikes and big-win multipliers, Lightning Roulette is sure to be one of the most visually engaging and entertaining live table games ever offered. It provides a truly unique roulette experience for players and we are confident that in its land-based form, scheduled for go-live in 2022, it will be an absolute star attraction.[20]

22.    Over the ensuing months, LNW Gaming led Evolution to believe that it was working on developing the Lightning Roulette game tables pursuant to the parties' Agreement. However, in August 2021 and much to Evolution's surprise, LNW Gaming attempted to unilaterally terminate the parties' Agreement.  Evolution also learned that LNW Gaming was falsely informing Evolution customers that the Agreement had been terminated.

23.    Even more disturbingly, L&W announced the launch of its own copycat roulette game, called RouletteX.  L&W has released RouletteX in at least two different forms: in an electronic table game format, which, according to L&W, "demonstrates the Company's passion to cultivate unique gaming experiences in the rapidly growing [electronic table game] sector," and in a physical table game format, like the type it was supposed to—but failed to—make for Lightning Roulette.[21]

24.    RouletteX's appearance, features, and functionality are strikingly similar to Lightning Roulette.  For example, RouletteX—like Lightning Roulette—randomly selects up to five roulette numbers and assigns multipliers from 50x to 500x to those randomly selected numbers for each roulette spin.[22]  RouletteX even identifies these randomly selected numbers with an animated lightning strike, like Lightning Roulette.  If the ball falls into one of those randomly selected roulette numbers and the player bet on that number, then RouletteX pays out according to the assigned multiplier, again like Lightning Roulette.

---

[20] *Id.*

[21] https://explore.lnw.com/newsroom/scientific-games-is-driving-the-future-of-gaming/; *see also, e.g.*, https://www.youtube.com/watch?v=7e22FFSWTac at 0:22, 0:43, 0:53.

[22] *See, e.g.*, https://www.indiangaming.com/light-wonder-roulette-x/; *see also* https://www.youtube.com/watch?v=gSD-ynTxJ8M.

25.     L&W recently petitioned the Pennsylvania Gaming Control Board to add a temporary regulation (58 Pa. Code § 617b.5) allowing certificate holders in Pennsylvania to offer RouletteX.  The temporary regulation states that "Roulette X is similar to already authorized Lightning Roulette in that it incorporates increased payout odds being randomly applied to the Roulette table."[23]  Because "Roulette X, [is] a variation on Lightning Roulette," the temporary regulation provides that RouletteX "shall follow the rules and procedures of Lightning Roulette under § 617b.3 (relating to Lightning Roulette)."[24]

26.     According to L&W's Senior Vice President of Global Table Gaming, RouletteX is "a very big product for [L&W]" that is "in the field" and "driving a ton of excitement."[25]  In fact, L&W sees RouletteX as its "number one product right now in [L&W]'s ETG space."[26]  He further explained that "players love it," "operators love it," and "naturally [L&W] love[s] it."[27]

27.     Upon information and belief, L&W manufactures RouletteX within the United States and/or imports, uses, offers to sell, sells, and/or has sold RouletteX in the United States.[28]

28.     Upon learning about L&W's copycat RouletteX game, Evolution sent L&W a letter, dated February 28, 2022, demanding that L&W immediately take all necessary steps to

---

[23]     54 Pa. Bull. 1537, 1541 (March 23, 2024), *available at* https://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol54/54-12/398.html&search=1&searchunitkeywords=125-248.

[24] *Id.*

[25] https://www.youtube.com/watch?v=B9sGivHKgiA.

[26] *Id.*

[27] *Id.*

[28]     *See* https://www.linkedin.com/posts/lightnwonder_youre-looking-at-the-very-first-install-activity-7043692695092924416-kS6u?utm_source=share&utm_medium=member_desktop (displaying RouletteX set-up at Four Winds Casino).  Upon information and belief, Four Winds Casino operates casinos in Michigan.  *See* https://fourwindscasino.com/.  *See also* 54 Pa. Bull. 1537, 1541 (March 23, 2024) (adopting temporary regulation § 617b.5, permitting certificate holders to offer RouletteX in Pennsylvania); https://igaming.lnw.com/games/roulette-x/ ("Welcome to Roulette X, an exhilarating, supercharged bonus roulette experience that has already become a renowned brand in land-based casinos worldwide!").  RouletteX is also available at the MGM National Harbor casino in Oxon Hill, Maryland.

refrain from further violation of Evolution's intellectual property. In that letter, Evolution specifically identified the '024 and '014 patents—the '371 patent's grandparent and parent patents, respectively—and explained how L&W's RouletteX infringes one or more claims of those patents. Evolution further explained that L&W's unauthorized use of Evolution's trade secrets, including the Lightning Roulette math files, to develop and launch its own copycat RouletteX game constitutes trade secret misappropriation under applicable federal and state law.

29. L&W, however, has refused to cease its violation of Evolution's intellectual property rights. Instead, L&W doubled down on its infringement and recently released another copycat roulette game, called PowerX, which L&W touted as one of its "innovative offerings."[29] Like RouletteX, PowerX "randomly select[s] numbers enriched with multipliers of 50x, 100x, 250x, or even 750x the value. If a player's chosen number matches these multipliers upon winning, their credits skyrocket."[30] According to L&W's Senior Vice President of Global Table Gaming, PowerX, like RouletteX, includes "all the great multipliers but then also with a progressive option."[31] According to L&W, PowerX is a "first-of-its-kind standalone roulette progressive" that, unlike RouletteX, allows a player to "sit down and play their own roulette game and not have to wait for the whole table to make bets."[32] Upon information and belief, L&W manufactures PowerX within the United States and/or imports, uses, offers to sell, sells, and/or has sold PowerX in the United States.

30. Evolution sent L&W another letter, dated April 24, 2024, regarding its ongoing violation of Evolution's intellectual property and again demanded that L&W immediately take all necessary steps to refrain from further violation of Evolution's intellectual property. In that letter, Evolution specifically identified the '024, '014, and '371 patents. Evolution reiterated its notice from its previous February 28, 2022 letter that L&W's RouletteX game infringes one or

---

[29] *See* https://explore.lnw.com/newsroom/light-wonder-unveils-innovative-offerings-at-g2e-2023/.

[30] https://www.indiangaming.com/light-wonder-power-x-roulette/.

[31] https://www.youtube.com/watch?v=B9sGivHKgiA.

[32] https://cdcgaming.com/light-wonder-introduces-ruyi-baccarat-at-g2e/.

more claims of the '024 and '014 patents, and also explained how L&W's RouletteX and PowerX copycat games infringe one or more claims of the '371 patent. Evolution again explained that L&W's improper use of Evolution's trade secrets, including the Lightning Roulette math files, to develop and launch its own copycat games constitutes trade secret misappropriation under applicable federal and state law.

31.     Evolution will be irreparably harmed if L&W is permitted to continue to manufacture, import, use, offer to sell, and/or sell devices that not only infringe Evolution's patents, but were also developed using Evolution's highly valuable trade secrets. Evolution will be forced to compete against the very technology that it spent significant time and resources researching, developing, and bringing to market.

32.     L&W's unlawful conduct has caused Evolution, among other things, reputational harm, loss of competitive advantage, loss of goodwill, lost compensation, and potential future economic loss. For example, Evolution publicly announced to the industry and its customers that, pursuant to the parties' Agreement, physical Lightning Roulette game tables would be available in land-based casinos beginning in January 2022. Rather than fulfill its obligations under the Agreement, however, L&W used Evolution's intellectual property to launch its own copycat roulette games and make them available in land-based casinos. By doing so, L&W prevented Evolution from delivering physical Lightning Roulette game tables to land-based casinos, as Evolution promised, and robbed Evolution of the opportunity to be the first company to launch its unique game in land-based casinos worldwide, including in the United States. L&W is instead brazenly touting itself as "the first to introduce this exciting gameplay to the market."[33]

## THE PARTIES

33.     Plaintiff Evolution Malta Limited is a Maltese company with its principal place of business at Level 1, Spinola Park, Mikiel Ang. Borg Street, St. Julians SPK1000, Malta.

---

[33]     https://explore.lnw.com/newsroom/light-wonder-illuminates-new-games-and-technology-at-niga-2022/.

34.     Plaintiff Evolution Gaming Malta Limited is a Maltese company with its principal place of business at Spinola  Park, Level 1, Mikiel Ang. Borg Street, St. Julians, SPK 1000, Malta.

35.     Plaintiff Evolution Gaming Limited is a corporation organized and existing under the laws of the United Kingdom with its principal place of business at 5th Floor, 1 Bolton Street, London, England W1J 8BA, United Kingdom.

36.     Plaintiff SIA Evolution Latvia is a Latvian company with its principal place of business at Brivibas Street 151, Riga, LV-1012, Latvia.

37.     Defendant Light & Wonder is a Nevada corporation with its principal place of business at 6601 Bermuda Road, Las Vegas, Nevada 89119.  Defendant LNW Gaming is a Nevada corporation with its principal place of business at 6601 Bermuda Road, Las Vegas, Nevada 89119.  Upon information and belief, LNW Gaming operates as a wholly-owned subsidiary of Light & Wonder, acts at Light & Wonder's direction and control and for Light & Wonder's direct benefit, and is controlled by Light & Wonder.

38.     Joinder is proper under 35 U.S.C. § 299.  Evolution's allegations are asserted against the Defendants jointly, severally, or in the alternative, arise, at least in part, out of the same series of transactions or occurrences relating to Defendants' manufacture, use, sale, offer for sale, and/or importation of the same infringing products.  Defendants are part of the same corporate family and Evolution's allegations arise, at least in part, from Defendants' collective activities with respect to the infringing products.  Questions of fact common to Defendants will arise in this action, including questions relating to the structure and operation of the infringing products and Defendants' infringing acts.

## JURISDICTION AND VENUE

39.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), and 18 U.S.C. § 1836(c).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they are sufficiently related to the federal claims so as to form part of the same case or controversy.

40.     This Court has personal jurisdiction over Light & Wonder and LNW Gaming because they are Nevada corporations.  Upon information and belief, Light & Wonder and LNW Gaming are residents of this judicial district, have systematic and continuous contacts in this judicial district, regularly transact business within this district, and regularly avail themselves of the benefits of this district.

41.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because Light & Wonder and LNW Gaming reside in this District.

## FIRST CAUSE OF ACTION

### (Infringement of U.S. Patent No. 10,629,024)

42.     Evolution realleges and incorporates by reference the allegations contained in paragraphs 1-41 as though fully set forth herein.

43.     Evolution Malta Limited is the owner of all rights, title, and interest in and to the '024 patent.  The '024 patent issued on April 21, 2020, and is titled "Systems, Methods, and Media for Implementing Internet-Based Wagering."  A copy of the '024 patent is attached as Exhibit 1.

44.     The innovations of the '024 patent significantly improved existing technology for a roulette game.  For example, unlike in a traditional table roulette game, the '024 patent describes using, *e.g.*, a pseudo-random number generator, to randomly select one or more of the roulette wheel numbers, and determine the increased payouts for those randomly selected numbers.  *See* '024 patent, 4:56-5:30.

45.     Accordingly, the claims of the '024 patent provide a significant advancement over the prior art.  For example, the prior art neither taught nor suggested the claimed methods and systems for wagering in a roulette game.  These advancements were neither well-known, routine, nor conventional.  Upon information and belief, a person of ordinary skill in the art would have viewed the invention of the '024 patent as a patentable advancement over the prior art.

46.     The claims of the '024 patent cover an inventive electronic wagering system and method for a roulette game.  L&W has infringed and continues to infringe one or more claims of the '024 patent, literally or under the doctrine of equivalents, including, without limitation, claim 1 in violation of 35 U.S.C. § 271(a) by manufacturing, using, importing, selling, and/or offering to sell in the United States at least its RouletteX system.

47.     For example, claim 1 of the '024 patent recites:

(a)     A system for wagering, comprising:

(b)     a roulette wheel;

(c)     a ball configured to be used in the roulette wheel;

(d)     a hardware processor configured to:

(e)     receive first bet information for a first bet from a first player device of a first player on a spin of the roulette wheel, the first bet information corresponding to at least a first position on the roulette wheel;

(f)     receive second bet information for a second bet from a second player device of a second player on the spin of the roulette wheel, the second bet information corresponding to at least a second position on the roulette wheel that is different from the first position;

(g)     determine that the roulette wheel and the ball have been spun for the spin of the roulette wheel;

(h)     randomly select a first selected position on the roulette wheel for the spin of the roulette wheel prior to the ball falling into a position on the roulette wheel, wherein the first selected position is the same as the first position;

(i)     determine a first payout for first position and a second payout for the second position for the spin of the roulette wheel, wherein the first payout is higher than the second payout;

(j)     determine that the ball has fallen in the first position for the spin of the roulette wheel; and

(k)     indicating that the first player is to be paid at the first payout for the spin of the roulette wheel.

48. To the extent the preamble of claim 1 is considered a limitation, at least RouletteX comprises a system for wagering. Additional information is set forth in Exhibit 2 at claim 1(a).

49. At least RouletteX comprises a roulette wheel. Additional information is set forth in Exhibit 2 at claim 1(b).

50. At least RouletteX comprises a ball configured to be used in the roulette wheel. Additional information is set forth in Exhibit 2 at claim 1(c).

51. At least RouletteX comprises a hardware processor. Additional information is set forth in Exhibit 2 at claim 1(d).

52. At least RouletteX comprises a hardware processor configured to receive first bet information for a first bet from a first player device of a first player on a spin of the roulette wheel, the first bet information corresponding to at least a first position on the roulette wheel. Additional information is set forth in Exhibit 2 at claim 1(e).

53. At least RouletteX comprises a hardware processor configured to receive second bet information for a second bet from a second player device of a second player on the spin of the roulette wheel, the second bet information corresponding to at least a second position on the roulette wheel that is different from the first position. Additional information is set forth in Exhibit 2 at claim 1(f).

54. At least RouletteX comprises a hardware processor configured to determine that the roulette wheel and the ball have been spun for the spin of the roulette wheel. Additional information is set forth in Exhibit 2 at claim 1(g).

55. At least RouletteX comprises a hardware processor configured to randomly select a first selected position on the roulette wheel for the spin of the roulette wheel prior to the ball falling into a position on the roulette wheel, wherein the first selected position is the same as the first position. Additional information is set forth in Exhibit 2 at claim 1(h).

56. At least RouletteX comprises a hardware processor configured to determine a first payout for first position and a second payout for the second position for the spin of the

roulette wheel, wherein the first payout is higher than the second payout.  Additional information is set forth in Exhibit 2 at claim 1(i).

57.     At least RouletteX comprises a hardware processor configured to determine that the ball has fallen in the first position for the spin of the roulette wheel.  Additional information is set forth in Exhibit 2 at claim 1(j).

58.     At least RouletteX comprises a hardware processor configured to indicate that the first player is to be paid at the first payout for the spin of the roulette wheel.  Additional information is set forth in Exhibit 2 at claim 1(k).

59.     L&W has had actual knowledge of the '024 patent since at least March 8, 2021, as it was expressly identified in the parties' Heads of Terms as intellectual property that protects Evolution's Lightning Roulette.  The '024 patent is also specifically identified in the parties' March 29, 2021 Agreement.

60.     Upon information and belief, L&W then used the '024 patent and Lightning Roulette as blueprints in developing its own copycat game, RouletteX, and thus knew that RouletteX would infringe one or more claims of the '024 patent.  In view of at least L&W's actual knowledge of the '024 patent, L&W's knowledge that Lightning Roulette embodies the '024 patent, and the substantial similarities between Lightning Roulette and RouletteX, L&W deliberately and intentionally infringed the '024 patent.  At the very least, L&W knew, based on the foregoing, that there was a high probability that RouletteX would infringe one or more claims of the '024 patent, but took deliberate steps to avoid learning of that infringement.

61.     In addition, by letters dated February 28, 2022 and April 24, 2024, Evolution twice put L&W on notice that RouletteX infringes the '024 patent and included explanation and citations to evidence showing how RouletteX infringes.  L&W's continued infringement of the '024 patent, despite Evolution's notice, is deliberate and intentional.

62.     On information and belief, L&W has intentionally instructed, and will intentionally instruct, others, including casinos, game operators, and players, to use RouletteX in a manner that infringes the '024 patent, literally or under the doctrine of equivalents.  For example,

as is typical in the gaming industry, L&W directly advertises RouletteX to casinos and game operators to encourage them to offer RouletteX in their casinos. For example, L&W promoted RouletteX at the Global Gaming Expo, which is held annually in Las Vegas, Nevada, in 2021, 2022, and 2023.[34] The Global Gaming Expo is widely attended by the global gaming community, including representatives from casinos and gaming operators, and used by vendors, including L&W, to promote their products. And, in fact, casinos are offering RouletteX on their floors for players to use and thus directly infringe the '024 patent.[35] L&W knows or has been willfully blind to the fact that such actions are inducing, and will induce, infringement. The foregoing actions by L&W constitute, and will constitute, induced infringement of one or more claims of the '024 patent in violation of 35 U.S.C. § 271(b).

63. Upon information and belief, L&W has supplied and continues to supply from the United States all or a substantial portion of its infringing RouletteX system and has induced and continues to induce the combination of such components outside of the United States in a manner that would infringe the '024 patent if it occurred within the United States. Upon information and belief, L&W has exported the infringing RouletteX system from the United States to at least Europe and Asia.[36] For example, L&W (then, Scientific Games) announced through its LinkedIn page that its RouletteX game terminals are live in Finland and the UK, and encouraged customers to contact their L&W sales representatives:

---

[34]   *See*   https://explore.lnw.com/newsroom/scientific-games-is-driving-the-future-of-gaming/ (2021);   *see   also*   https://www.youtube.com/watch?v=7e22FFSWTac   (2022); https://www.youtube.com/watch?v=B9sGivHKgiA (2023).

[35] *See, e.g.*, https://www.linkedin.com/posts/lightnwonder_youre-looking-at-the-very-first-install-activity-7043692695092924416-kS6u?utm_source=share&utm_medium=member_desktop.

[36]   *See   e.g.*,   https://explore.lnw.com/newsroom/light-wonder-builds-new-worlds-of-play-at-g2e-asia-in-singapore/   ("Light & Wonder also will feature one of its premier ETG experiences, *RouletteX*[TM].");   https://www.ggrasia.com/a-jin-ji-bao-xi-grand-entrance-from-light-wonder/ ("[T]he group's clients in Asia Pacific could look forward to the introduction of RouletteX, which gives players the chance to win up to 500 times the value of their wager on a single number.").

The foregoing actions by L&W constitute infringement of one or more claims of the '024 patent in violation of 35 U.S.C. § 271(f).

63. L&W's infringement is without the consent or other authority of Evolution. L&W's license to the '024 patent was limited to building a physical Lightning Roulette game table.

65. L&W's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

66. Evolution has been damaged by L&W's acts in an amount as yet unknown. Evolution has no adequate legal remedy.  Unless enjoined by this Court, L&W's continued acts of infringement will cause Evolution substantial and irreparable harm.  Under 35 U.S.C. § 283, Evolution is entitled to an injunction barring L&W from further infringement of the '024 patent.

**SECOND CAUSE OF ACTION**

**(Infringement of U.S. Patent No. 11,011,014)**

67.     Evolution realleges and incorporates by reference the allegations contained in paragraphs 1-66 as though fully set forth herein.

68.     Evolution Malta Limited is the owner of all rights, title, and interest in and to the '014 patent.  The '014 patent issued on May 18, 2021, and is titled "Systems, Methods, and Media for Implementing Internet-Based Wagering."  A copy of the '014 patent is attached as Exhibit 3.

69.     The innovations of the '014 patent significantly improved existing technology for electronic wagering in a roulette game.  For example, unlike in a traditional table roulette game, the '014 patent describes using, *e.g.*, a pseudo-random number generator, to randomly select one or more of the roulette wheel numbers, and determine the increased payouts for those randomly selected numbers.  *See* '014 patent, 4:58-5:32.

70.     Accordingly, the claims of the '014 patent provide a significant advancement over the prior art.  For example, the prior art neither taught nor suggested the claimed methods and systems for wagering in a roulette game.  These advancements were neither well-known, routine, nor conventional.  Upon information and belief, a person of ordinary skill in the art would have viewed the invention of the '014 patent as a patentable advancement over the prior art.

71.     The claims of the '014 patent cover an inventive electronic wagering system and method for a roulette game.  L&W has infringed and continues to infringe one or more claims of the '014 patent, literally or under the doctrine of equivalents, including, without limitation, claim 1 in violation of 35 U.S.C. § 271(a) by manufacturing, using, importing, selling, and/or offering to sell in the United States at least its RouletteX system.

72.     For example, claim 1 of the '014 patent recites:

(a)     A system for wagering, comprising:

(b)      a roulette wheel;

(c)      a ball configured to be used in the roulette wheel;

(d)      at least one hardware processor collectively configured to:

(e)      generate a first graphical user interface for presentation on a first player device of a first player;

(f)      generate a second graphical user interface for presentation on a second player device of a second player;

(g)      receive first bet information for a first bet on a spin of the roulette wheel via the first graphical user interface, the first bet information corresponding to only a single first position on the roulette wheel;

(h)      receive second bet information for a second bet on the spin of the roulette wheel via the second graphical user interface, the second bet information corresponding to only a single second position on the roulette wheel that is different from the single first position;

(i)      determine that the roulette wheel and the ball have been spun for the spin of the roulette wheel;

(j)      randomly select a first selected position on the roulette wheel for the spin of the roulette wheel prior to the ball falling into an outcome position on the roulette wheel, wherein the first selected position is the same as the single first position;

(k)      determine a first payout for the first single position and a second payout for the single second position for the spin of the roulette wheel, wherein the first payout is higher than the second payout;

(l)      determine that the ball has fallen in the single first position for the spin of the roulette wheel; and

(m)      indicate that the first player is to be paid at the first payout for the spin of the roulette wheel.

73.    To the extent the preamble of claim 1 is considered a limitation, at least RouletteX comprises a system for wagering.  Additional information is set forth in Exhibit 4 at claim 1(a).

74.    At least RouletteX comprises a roulette wheel.  Additional information is set forth in Exhibit 4 at claim 1(b).

75.     At least RouletteX comprises a ball configured to be used in the roulette wheel.  Additional information is set forth in Exhibit 4 at claim 1(c).

76.     At least RouletteX comprises at least one hardware processor.  Additional information is set forth in Exhibit 4 at claim 1(d).

77.     At least RouletteX comprises at least one hardware processor collectively configured to generate a first graphical user interface for presentation on a first player device of a first player.  Additional information is set forth in Exhibit 4 at claim 1(e).

78.     At least RouletteX comprises at least one hardware processor collectively configured to generate a second graphical user interface for presentation on a second player device of a second player.  Additional information is set forth in Exhibit 4 at claim 1(f).

79.     At least RouletteX comprises at least one hardware processor collectively configured to receive first bet information for a first bet on a spin of the roulette wheel via the first graphical user interface, the first bet information corresponding to only a single first position on the roulette wheel.  Additional information is set forth in Exhibit 4 at claim 1(g).

80.     At least RouletteX comprises at least one hardware processor collectively configured to receive second bet information for a second bet on the spin of the roulette wheel via the second graphical user interface, the second bet information corresponding to only a single second position on the roulette wheel that is different from the single first position.  Additional information is set forth in Exhibit 4 at claim 1(h).

81.     At least RouletteX comprises at least one hardware processor collectively configured to determine that the roulette wheel and the ball have been spun for the spin of the roulette wheel.  Additional information is set forth in Exhibit 4 at claim 1(i).

82.     At least RouletteX comprises at least one hardware processor collectively configured to randomly select a first selected position on the roulette wheel for the spin of the roulette wheel prior to the ball falling into an outcome position on the roulette wheel, wherein the first selected position is the same as the single first position.  Additional information is set forth in Exhibit 4 at claim 1(j).

83.     At least RouletteX comprises at least one hardware processor collectively configured to determine a first payout for the first single position and a second payout for the single second position for the spin of the roulette wheel, wherein the first payout is higher than the second payout.  Additional information is set forth in Exhibit 4 at claim 1(k).

84.     At least RouletteX comprises at least one hardware processor collectively configured to determine that the ball has fallen in the single first position for the spin of the roulette wheel.  Additional information is set forth in Exhibit 4 at claim 1(l).

85.     At least RouletteX comprises at least one hardware processor collectively configured to indicate that the first player is to be paid at the first payout for the spin of the roulette wheel. Additional information is set forth in Exhibit 4 at claim 1(m).

86.     L&W has had actual knowledge of the '014 patent since at least March 8, 2021, as the patent application that led to the '014 patent—U.S. Patent App. No. 16/852,049—and its parent patent, the '024 patent, were expressly identified in the parties' Heads of Terms as intellectual property that protects Evolution's Lightning Roulette.  That patent application and parent '024 patent are also specifically identified in the parties' March 29, 2021 Agreement.

87.     Upon information and belief, L&W then used the '014 patent and Lightning Roulette as blueprints in developing its own copycat game, RouletteX, and thus knew that RouletteX would infringe one or more claims of the '014 patent.  In view of at least L&W's actual knowledge of the '014 patent, L&W's knowledge that Lightning Roulette embodies the '014 patent, and the substantial similarities between Lightning Roulette and RouletteX, L&W deliberately and intentionally infringed the '014 patent.  At the very least, L&W knew, based on the foregoing, that there was a high probability that RouletteX would infringe one or more claims of the '014 patent, but took deliberate steps to avoid learning of that infringement.

88.     In addition, by letters dated February 28, 2022 and April 24,  2024, Evolution twice put L&W on notice that RouletteX infringes the '014 patent and included explanation and citations to evidence showing how RouletteX infringes.  L&W's continued infringement of the '014 patent, despite Evolution's notice, is deliberate and intentional.

89.     On information and belief, L&W has intentionally instructed, and will intentionally instruct, others, including casinos, game operators, and players, to use RouletteX in a manner that infringes the '014 patent, literally or under the doctrine of equivalents.  For example, as is typical in the gaming industry, L&W directly advertises RouletteX to casinos and game operators to encourage them to offer RouletteX in their casinos.  For example, L&W promoted RouletteX at the Global Gaming Expo, which is held annually in Las Vegas, Nevada, in 2021, 2022, and 2023.[37]  The Global Gaming Expo is widely attended by the global gaming community, including representatives from casinos and gaming operators, and used by vendors, including L&W, to promote their products.  And, in fact, casinos are offering RouletteX on their floors for players to use and thus directly infringe the '014 patent.[38]  L&W knows or has been willfully blind to the fact that such actions are inducing, and will induce, infringement. The foregoing actions by L&W constitute, and will constitute, induced infringement of one or more claims of the '014 patent in violation of 35 U.S.C. § 271(b).

90.     Upon information and belief, L&W has supplied and continues to supply from the United States all or a substantial portion of its infringing RouletteX system and induced and continues to induce the combination of such components outside of the United States in a manner that would infringe the '014 patent if it occurred within the United States.  Upon information and belief, L&W has exported the infringing RouletteX system from the United States to at least Europe and Asia.[39]  For example, L&W (then, Scientific Games) announced through its

[37]   *See*   https://explore.lnw.com/newsroom/scientific-games-is-driving-the-future-of-gaming/ (2021);   *see   also*   https://www.youtube.com/watch?v=7e22FFSWTac   (2022); https://www.youtube.com/watch?v=B9sGivHKgiA (2023).

[38]  *See, e.g.*, https://www.linkedin.com/posts/lightnwonder_youre-looking-at-the-very-first-install-activity-7043692695092924416-kS6u?utm_source=share&utm_medium=member_desktop.

[39]   *See   e.g.*,   https://explore.lnw.com/newsroom/light-wonder-builds-new-worlds-of-play-at-g2e-asia-in-singapore/ ("Light & Wonder also will feature one of its premier ETG experiences, *RouletteX*[TM].");   https://www.ggrasia.com/a-jin-ji-bao-xi-grand-entrance-from-light-wonder/ ("[T]he group's clients in Asia Pacific could look forward to the introduction of RouletteX, which gives players the chance to win up to 500 times the value of their wager on a single number.").

LinkedIn page that its RouletteX game terminals are live in Finland and the UK, and encouraged customers to contact their L&W sales representatives:



The foregoing actions by L&W constitute infringement of one or more claims of the '014 patent in violation of 35 U.S.C. § 271(f).

91.     L&W's infringement is without the consent or other authority of Evolution. L&W's license to the '014 patent was limited to building a physical Lightning Roulette game table.

92.     L&W's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

93.     Evolution has been damaged by L&W's acts in an amount as yet unknown. Evolution has no adequate legal remedy.  Unless enjoined by this Court, L&W's continued acts of

infringement will cause Evolution substantial and irreparable harm.  Under 35 U.S.C. § 283, Evolution is entitled to an injunction barring L&W's from further infringement of the '014 patent.

**THIRD CAUSE OF ACTION**

**(Infringement of U.S. Patent No. 11,756,371)**

94.     Evolution realleges and incorporates by reference the allegations contained in paragraphs 1-93 as though fully set forth herein.

95.     Evolution Malta Limited is the owner of all rights, title, and interest in and to the '371 patent.  The '371 patent issued on September 12, 2023, and is titled "Systems, Methods, and Media for Implementing Internet-Based Wagering."  A copy of the '371 patent is attached as Exhibit 5.

96.     The innovations of the '371 patent significantly improved existing technology for electronic wagering in a roulette game. For example, unlike in a traditional table roulette game, the '371 patent describes using, *e.g.*, a pseudo-random number generator, to randomly select one or more of the roulette wheel numbers, and determine the increased payouts for those randomly selected numbers. *See* '371 patent, 4:60-5:34.

97.     Accordingly, the claims of the '371 patent provide a significant advancement over the prior art.  For example, the prior art neither taught nor suggested the claimed methods and systems for wagering in a roulette game.  These advancements were neither well-known, routine, nor conventional.  Upon information and belief, a person of ordinary skill in the art would have viewed the invention of the '371 patent as a patentable advancement over the prior art.

98.     The claims of the '371 patent cover an inventive electronic wagering system and method for a roulette game.  L&W has infringed and continues to infringe one or more claims of the '371 patent, literally or under the doctrine of equivalents, including, without limitation, claim 1 in violation of 35 U.S.C. § 271(a) by manufacturing, using, importing, selling, and/or offering to sell in the United States at least its RouletteX and PowerX systems.

99.     For example, claim 1 of the '371 patent recites:

(a)     A system for wagering, comprising:

(b)     a ball;

(c)     a roulette wheel having a plurality of positions into which the ball can land after a spin of the roulette wheel; and

(d)     at least one hardware processor collectively configured to:

(e)     randomly or pseudo-randomly select a first selected position of the plurality of positions on the roulette wheel to have a first increased payout for the spin of the roulette wheel prior to the ball landing into any of the plurality of positions on the roulette wheel for the spin;

(f)     determine that the ball has landed into the first selected position for the spin; and

(g)     determine that the first increased payout is applicable to a first bet made on the first selected position for the spin of the roulette wheel, wherein the first increased payout is greater than a first non-selected payout that would have been applicable to the first bet on the first selected position for the spin had the first selected position not been selected by the randomly or pseudo-randomly selecting the first selected position for the spin.

100.    To the extent the preamble of claim 1 is considered a limitation, each of at least RouletteX and PowerX comprises a system for wagering.  Additional information is set forth in Exhibit 6 at claim 1(a).

101.    Each of at least RouletteX and PowerX comprises a ball.  Additional information is set forth in Exhibit 6 at claim 1(b).

102.    Each of at least RouletteX and PowerX comprises a roulette wheel having a plurality of positions into which the ball can land after a spin of the roulette wheel.  Additional information is set forth in Exhibit 6 at claim 1(c).

103.    Each of at least RouletteX and PowerX comprises at least one hardware processor.  Additional information is set forth in Exhibit 6 at claim 1(d).

104.    Each of at least RouletteX and PowerX comprises at least one hardware processor collectively configured to randomly or pseudo-randomly select a first selected position

of the plurality of positions on the roulette wheel to have a first increased payout for the spin of the roulette wheel prior to the ball landing into any of the plurality of positions on the roulette wheel for the spin.  Additional information is set forth in Exhibit 6 at claim 1(e).

105.    Each of at least RouletteX and PowerX comprises at least one hardware processor collectively configured to determine that the ball has landed into the first selected position for the spin.  Additional information is set forth in Exhibit 6 at claim 1(f).

106.    Each of at least RouletteX and PowerX comprises at least one hardware processor collectively configured to determine that the first increased payout is applicable to a first bet made on the first selected position for the spin of the roulette wheel, wherein the first increased payout is greater than a first non-selected payout that would have been applicable to the first bet on the first selected position for the spin had the first selected position not been selected by the randomly or pseudo-randomly selecting the first selected position for the spin.  Additional information is set forth in Exhibit 6 at claim 1(g).

107.    As another example, claim 2 of the '371 patent recites:

The system of claim 1, further comprising a display that identifies the first selected position.

108.    Each of at least RouletteX and PowerX further "compris[es] a display that identifies the first selected position."  Additional information is set forth in Exhibit 6 at claim 2.

109.    As another example, claim 4 of the '371 patent recites:

The system of claim 1, wherein the at least one hardware processor is further collectively configured to: randomly or pseudo-randomly select a second selected position of the plurality of positions on the roulette wheel to have a second increased payout for the spin of the roulette wheel prior to the ball landing into any of the plurality of positions on the roulette wheel for the spin, wherein the second increased payout for the second selected position is greater than a second non-selected payout that would have been applicable to a second bet on the second selected position for the spin had the second selected position not been selected by the randomly or pseudo-randomly selecting the second selected position for the spin, and wherein the second increased payout is different than the first increased payout.

110.     Each of at least RouletteX and PowerX further comprises "wherein the at least one hardware processor is further collectively configured to: randomly or pseudo-randomly select a second selected position of the plurality of positions on the roulette wheel to have a second increased payout for the spin of the roulette wheel prior to the ball landing into any of the plurality of positions on the roulette wheel for the spin, wherein the second increased payout for the second selected position is greater than a second non-selected payout that would have been applicable to a second bet on the second selected position for the spin had the second selected position not been selected by the randomly or pseudo-randomly selecting the second selected position for the spin, and wherein the second increased payout is different than the first increased payout."  Additional information is set forth in Exhibit 6 at claim 4.

111.     As explained above, L&W had actual knowledge of the '371 patent's parent patent—the '014 patent—and grandparent patent—the '024 patent—because they were expressly identified in the parties' Heads of Terms and March 29, 2021 Agreement as intellectual property that protects Evolution's Lightning Roulette.  In addition, by letter dated February 28, 2022, Evolution put L&W on notice that RouletteX infringes the parent '014 patent and grandparent '024 patent and included explanation and citations to evidence showing how RouletteX infringes those patents.  PowerX infringes the '371 patent in substantially the same way.

112.     In view of at least L&W's actual knowledge of the '024 and '014 patents, L&W's knowledge that Lightning Roulette embodies those patents, and the substantial similarities between Lightning Roulette, on the one hand, and RouletteX and PowerX, on the other, L&W knew that RouletteX and PowerX would also infringe the '371 patent or knew that there was a high probability that RouletteX and PowerX would infringe claims of other patents in the same family as the '024 and '014 patents, including the '371 patent, but took deliberate steps to avoid learning of that infringement.

113.     At minimum, L&W had actual knowledge of the '371 patent since at least April 24, 2024, when Evolution sent a letter to L&W notifying L&W that RouletteX and PowerX infringe the '371 patent and including explanation and citations to evidence showing how

RouletteX and PowerX infringe.  L&W's continued infringement of the '371 patent, despite Evolution's notice, is deliberate and intentional.

114.    On information and belief, L&W has intentionally instructed, and will intentionally instruct, others, including casinos, game operators, and players, to use RouletteX and PowerX in a manner that infringes the '371 patent, literally or under the doctrine of equivalents. For example, as is typical in the gaming industry, L&W directly advertises RouletteX and PowerX to casinos and game operators to encourage them to offer them in their casinos.  For example, L&W promoted RouletteX in 2021, 2022, and 2023 and PowerX in 2023 at the Global Gaming Expo, which is held annually in Las Vegas, Nevada.[40] The Global Gaming Expo is widely attended by the global gaming community, including representatives from casinos and gaming operators, and used by vendors, including L&W, to promote their products.  And, in fact, casinos are offering RouletteX on their floors for players to use and thus directly infringe the '371 patent.[41]  L&W knows or has been willfully blind to the fact that such actions are inducing, and will induce, infringement.  The foregoing actions by L&W constitute, and will constitute, induced infringement of one or more claims of the '371 patent in violation of 35 U.S.C. § 271(b).

115.    Upon information and belief, L&W has supplied and continues to supply from the United States all or a substantial portion of its infringing RouletteX system and induced and continues to induce the combination of such components outside of the United States in a manner that would infringe the '371 patent if it occurred within the United States.  Upon information and belief, L&W has exported the infringing RouletteX system from the United States to at least Europe and Asia.[42]  For example, L&W (then, Scientific Games) announced through its

---

[40]    *See*    https://explore.lnw.com/newsroom/scientific-games-is-driving-the-future-of-gaming/ (2021);    *see also*    https://www.youtube.com/watch?v=7e22FFSWTac    (2022); https://www.youtube.com/watch?v=B9sGivHKgiA    (2023); https://www.youtube.com/watch?v=I32uyqj7OPI (2023).

[41] *See, e.g.*, https://www.linkedin.com/posts/lightnwonder_youre-looking-at-the-very-first-install-activity-7043692695092924416-kS6u?utm_source=share&utm_medium=member_desktop.

[42]    *See  e.g.*,  https://explore.lnw.com/newsroom/light-wonder-builds-new-worlds-of-play-at-g2e-asia-in-singapore/  ("Light & Wonder also will feature one of its premier ETG experiences, *RouletteX*$^{TM}$.");    https://www.ggrasia.com/a-jin-ji-bao-xi-grand-entrance-from-light-wonder/ ("[T]he group's clients in Asia Pacific could look forward to the introduction of RouletteX, which

LinkedIn page that its RouletteX game terminals are live in Finland and the UK, and encouraged customers to contact their L&W sales representatives:



The foregoing actions by L&W constitute infringement of one or more claims of the '371 patent in violation of 35 U.S.C. § 271(f).

116.   L&W's infringement is without the consent or other authority of Evolution.

117.   L&W's actions are willful and deliberate, and render this an exceptional case under 35 U.S.C. § 285.

118.   Evolution has been damaged by L&W's acts in an amount as yet unknown. Evolution has no adequate legal remedy.  Unless enjoined by this Court, L&W's continued acts of

_____

gives players the chance to win up to 500 times the value of their wager on a single number.").

infringement will cause Evolution substantial and irreparable harm.  Under 35 U.S.C. § 283, Evolution is entitled to an injunction barring L&W's from further infringement of the '371 patent.

**FOURTH CAUSE OF ACTION**

**(Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836)**

119.    Evolution realleges and incorporates by reference the allegations contained in paragraphs 1-118 as though fully set forth herein.

120.    Evolution is the owner of trade secrets.  As a result of the NDA, Heads of Terms, and pursuant to the Agreement, L&W obtained Evolution's intellectual property, including Evolution's proprietary work product, processes, formulae, trade secrets, and know-how or similar rights.  At minimum, the proprietary math files described above in paragraph 17 above constitute Evolution's trade secrets subject to protection under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

121.    Evolution's trade secrets, as described above, relate to a product or service used in, or intended for use in, interstate or foreign commerce.  Specifically, these trade secrets are used in Evolution's online live version of Lightning Roulette, which is available online throughout the world, including in the United States.  In addition, these trade secrets were intended for use in physical Lightning Roulette game tables, such as those that LNW Gaming had agreed to produce pursuant to the Agreement, in land-based casinos throughout the world, including in the United States.  Upon information and belief, L&W has improperly used Evolution's trade secrets, without authorization, in RouletteX and/or PowerX products that L&W has offered to sell and/or sold in the United States and overseas in at least Europe (*e.g.*, Finland and United Kingdom) and Asia.[43]

---

[43]  *See, e.g.*, https://www.linkedin.com/posts/scientific-games-gaming_roulettex-etg-activity-6884235953263783936-Nrw7; https://explore.lnw.com/newsroom/light-wonder-builds-new-worlds-of-play-at-g2e-asia-in-singapore/ ("Light & Wonder also will feature one of its premier ETG experiences, *RouletteX*™."); https://www.ggrasia.com/a-jin-ji-bao-xi-grand-entrance-from-light-wonder/ ("[T]he group's clients in Asia Pacific could look forward to the introduction of RouletteX, which gives players the chance to win up to 500 times the value of their wager on a single number.").



122.    Evolution's trade secret information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by the public or other persons who could obtain value from its disclosure or use.  For example, as explained above, the Lightning Roulette math files allow, among other things, the Lightning Roulette game to remain profitable despite the inclusion of multipliers with increased payouts and increases player engagement with the game.  Indeed, Lightning Roulette's resounding success is attributable, at least in part, to these math files.  Evolution's trade secrets are limited in their distribution within Evolution, only disclosed to third parties under strict confidentiality and/or non-disclosure agreements, and not readily available to the public or to Evolution's competitors.

123.    Evolution has taken more than reasonable measures under the circumstances to maintain the secrecy of its trade secret information, including marking such information with a "COMPANY CONFIDENTIAL" stamp or other indication of secrecy in a reasonably noticeable manner, limiting internal access to such information at Evolution, protecting against impermissible dissemination of the information, requiring passwords to be used to access computer systems and records, and requiring employees to sign confidentiality agreements. Evolution also had and has policies and procedures in place to protect its trade secret information.

124.    Under the terms of the NDA, LNW Gaming agreed to maintain the confidentiality of Evolution's trade secrets and use that information solely to the extent necessary for evaluating a business opportunity to develop a land-based version of Lightning Roulette.  In the Heads of Terms, LNW Gaming confirmed that it would not use Evolution's trade secrets for any purpose other than to perform its obligations under the Heads of Terms.  In addition, in the Agreement, LNW Gaming again confirmed its agreement to "hold all confidential information of [Evolution], including without limitation, any information relating to [Evolution's] business operations and all other information disclosed by [Evolution] . . . in strict confidence and not to use any of the foregoing commercially for its own benefit or that of anyone else."  LNW Gaming further agreed not to disseminate or provide access to Evolution's confidential information to anyone, other than those who have expressly been approved by Evolution and who have entered

into an agreement that would also prohibit their unauthorized use of Evolution's confidential information. The Agreement further provided that Evolution's disclosure of confidential and proprietary information to LNW Gaming shall not be construed as a grant of any rights in or license to that information. The Agreement further expressly prohibited LNW Gaming from using Evolution's intellectual property to create physical table games that would compete with a physical Lightning Roulette game table. Accordingly, LNW Gaming had a duty to maintain the secrecy of Evolution's trade secrets and had no expectation that it would be authorized to utilize Evolution's trade secrets for its or anyone else's benefit.

125. Evolution has spent significant time, skill, research and development to develop and maintain its trade secrets, which are extremely valuable to Evolution, give Evolution a competitive advantage, and would be of great value to a competitor.

126. In reliance on the confidentiality terms of the NDA, Heads of Term, and Agreement, Evolution provided LNW Gaming with access to its trade secrets for the sole purpose of developing physical Lightning Roulette game tables for land-based casinos.

127. Rather than use Evolution's trade secrets for purposes of developing the agreed physical Lighting Roulette game tables, LNW Gaming (together with Light & Wonder, which as LNW Gaming's parent company was aware that LNW Gaming was not authorized to use Evolution's trade secrets for any purpose other than to develop the physical Lightning Roulette game tables) improperly used Evolution's trade secrets, without authorization, to develop RouletteX and PowerX, its own copycat roulette games for land-based casinos. L&W's use of Evolution's trade secrets for its own benefit violates the Defend Trade Secrets Act, 18 U.S.C. § 1836.

128. Evolution first discovered that L&W had misappropriated Evolution's trade secrets when L&W unilaterally sought to terminate the parties' Agreement in August 2021 and Evolution learned that L&W had launched a copycat game—RouletteX—that has strikingly similar appearance, features, and functionality as Evolution's Lightning Roulette.

129.     Evolution faces an immediate threat of irreparable harm, for which Evolution lacks an adequate remedy at law, for L&W's misappropriation and misuse of Evolution's trade secret information, including, but not limited to, reputational harm, loss of future business, and the potential that Evolution's trade secrets may be disseminated (*e.g.*, to L&W's contractors) beyond the Court's ability to provide monetary redress.

130.     Unless L&W is enjoined from the foregoing conduct, Evolution will be irreparably harmed by:

(a)     Disclosure of trade secrets and other confidential information that is the property of Evolution;

(b)     Loss of competitive advantage, loss of goodwill, lost compensation, and loss of business reputation; and

(c)     Potential future economic loss, which is presently incalculable.

131.     As alleged herein, L&W's conduct has been and is malicious, deliberate, and willful.  LNW Gaming induced Evolution into providing L&W with Evolution's trade secrets for Lightning Roulette—Evolution's highly successful flagship product—under the auspices of entering into a partnership for developing physical Lightning Roulette game tables, but turned around and used those trade secrets to develop its own copycat products knowing that its acts would harm Evolution.  Evolution is therefore entitled to recover from L&W exemplary damages in an amount twice the total of the damages record for actual loss and/or unjust enrichment as permitted by 18 U.S.C. § 1836(b)(3)(C).

132.     Evolution is entitled to an award of attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

## FIFTH CAUSE OF ACTION

**(Misappropriation of Trade Secrets in Violation of the Nevada Trade Secrets (Uniform Act), NRS 600A)**

133.     Evolution realleges and incorporates by reference the allegations contained in paragraphs 1-132 as though fully set forth herein.

134.    L&W's actions, as set forth above, constitute trade secret misappropriation under Nevada law.

135.    Evolution is the owner of trade secrets.  As a result of the NDA, Heads of Terms, and pursuant to the Agreement, LNW Gaming obtained Evolution's intellectual property, including Evolution's proprietary work product, processes, formulae, trade secrets, and know-how or similar rights.  At minimum, the proprietary math files described above in paragraph 17 constitute Evolution's trade secrets subject to protection under Nevada law.

136.    Evolution's trade secret information derives independent economic value from not being generally known to and not being readily ascertainable by proper means by the public or other persons who could obtain value from its disclosure or use.  For example, as explained above, the Lightning Roulette math files allow, among other things, the Lightning Roulette game to remain profitable despite the inclusion of multipliers with increased payouts and increases player engagement with the game.  Indeed, Lightning Roulette's resounding success is attributable, at least in part, to these math files.  Evolution's trade secrets are limited in their distribution within Evolution, only disclosed to third parties under strict confidentiality and/or non-disclosure agreements, and not readily available to the public or to Evolution's competitors.

137.    Evolution has taken more than reasonable measures under the circumstances to maintain the secrecy of its trade secret information, including marking such information with a "COMPANY CONFIDENTIAL" stamp or other indication of secrecy in a reasonably noticeable manner, limiting internal access to such information at Evolution, protecting against impermissible dissemination of the information, requiring passwords to be used to access computer systems and records, and requiring employees to sign confidentiality agreements. Evolution also had and has policies and procedures in place to protect its trade secret information.

138.    Under the terms of the NDA, LNW Gaming agreed to maintain the confidentiality of Evolution's trade secrets and use that information solely to the extent necessary for evaluating a business opportunity to develop a land-based version of Lightning Roulette.  In the Heads of Terms, LNW Gaming confirmed that it would not use Evolution's trade secrets for

any purpose other than to perform its obligations under the Heads of Terms.  In addition, in the Agreement, LNW Gaming again confirmed its agreement to "hold all confidential information of [Evolution], including without limitation, any information relating to [Evolution's] business operations and all other information disclosed by [Evolution] . . . in strict confidence and not to use any of the foregoing commercially for its own benefit or that of anyone else."  LNW Gaming further agreed not to disseminate or provide access to Evolution's confidential information to anyone, other than those who have expressly been approved by Evolution and who have entered into an agreement that would also prohibit their unauthorized use of Evolution's confidential information.  The Agreement further provided that Evolution's disclosure of confidential and proprietary information to LNW Gaming shall not be construed as a grant of any rights in or license to that information.  The Agreement further expressly prohibited LNW Gaming from using Evolution's intellectual property to create physical table games that would compete with a physical Lightning Roulette game table.  Accordingly, LNW Gaming had a duty to maintain the secrecy of Evolution's trade secrets and had no expectation that it would be authorized to utilize Evolution's trade secrets for its or anyone else's benefit.

139.    Evolution has spent significant time, skill, research and development to develop and maintain its trade secrets, which are extremely valuable to Evolution, give Evolution a competitive advantage, and would be of great value to a competitor.

140.    In reliance on the terms of the NDA, Heads of Terms, and Agreement, Evolution provided LNW Gaming with access to its trade secrets for the sole purpose of developing physical Lightning Roulette game tables for land-based casinos.

141.    Rather than use Evolution's trade secrets for purposes of developing the agreed physical Lighting Roulette game tables, LNW Gaming (together with Light & Wonder, which as LNW Gaming's parent company was aware that LNW Gaming was not authorized to use Evolution's trade secrets for any purpose other than to develop the physical Lightning Roulette game tables) improperly used Evolution's trade secrets, without authorization, to develop

RouletteX and PowerX, its own copycat roulette games for land-based casinos.  L&W's use of Evolution's trade secrets for its own benefit violates Nevada law.

142.    Evolution first discovered that L&W had misappropriated Evolution's trade secrets when L&W unilaterally sought to terminate the parties' Agreement in August 2021 and Evolution learned that L&W had launched a copycat game—RouletteX—that has strikingly similar appearance, features, and functionality as Evolution's Lightning Roulette.

143.    Evolution faces an immediate threat of irreparable harm, for which Evolution lacks an adequate remedy at law, for L&W's misappropriation and misuse of Evolution's trade secret information, including, but not limited to, reputational harm, loss of future business, and the potential that Evolution's trade secrets may be disseminated (*e.g.*, to L&W's contractors) beyond the Court's ability to provide monetary redress.

144.    Unless L&W is enjoined from the foregoing conduct, Evolution will be irreparably harmed by:

(d)    Disclosure of trade secrets and other confidential information that is the property of Evolution;

(e)    Loss of competitive advantage, loss of goodwill, lost compensation, and loss of business reputation; and

(f)    Potential future economic loss, which is presently incalculable.

145.    As alleged herein, L&W's conduct has been and is willful, wanton, and/or reckless.  LNW Gaming induced Evolution into providing L&W with Evolution's trade secrets for Lightning Roulette—Evolution's highly successful flagship product—under the auspices of entering into a partnership for developing physical Lightning Roulette game tables, but turned around and used those trade secrets to develop its own product, RouletteX and PowerX, knowing that its acts would harm Evolution.  Evolution is therefore entitled to recover from L&W exemplary damages in an amount twice the total of the damages record for actual loss and/or unjust enrichment as permitted under NRS 600A.050.

146.    Evolution is entitled to an award of attorneys' fees pursuant to NRS 600A.060.

## **PRAYER FOR RELIEF**

WHEREFORE, Evolution respectfully requests judgment from this Court as follows:

A.      The entry of judgment that L&W has directly infringed, literally or under the doctrine of equivalents, and/or induced infringement of one or more claims of the Asserted Patents;

B.      The entry of judgment that L&W has willfully infringed one or more claims of the Asserted Patents;

C.      The entry of judgment that L&W has misappropriated Evolution's trade secrets under Defend Trade Secrets Act, 18 U.S.C. § 1836;

D.      The entry of judgment that L&W has misappropriated Evolution's trade secrets under the Nevada Trade Secrets (Uniform Act), NRS 600A;

E.      A judgment against L&W preliminarily and permanently enjoining L&W and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of the Asserted Patents;

F.      A judgment against L&W preliminarily and permanently enjoining L&W and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further use or disclosure of any of Evolution's trade secret, proprietary, and/or confidential information;

G.      A judgment awarding Evolution damages resulting from L&W's infringement in an amount no less than a reasonable royalty or an amount equaling Evolution's lost profits due to L&W's infringement, and that such amount be multiplied based on L&W's willful infringement;

H.     A judgment awarding Evolution compensatory, exemplary, and punitive damages resulting from L&W's misappropriation of Evolution's trade secrets in an amount to be determined at a hearing and/or trial, including, but not limited to, double damages for willful or malicious misappropriation under 18 U.S.C. § 1836(b)(3)(C) and/or NRS 600A.050; or in lieu of damages measured by other methods, the damages caused L&W's misappropriation measured by imposition of liability for a reasonable royalty for L&W's unauthorized disclosure or use of Evolution's trade secrets in an amount to be determined at trial;

I.     Disgorgement of L&W's wrongfully obtained profits;

J.     A judgment declaring that this is an exceptional case and awarding Evolution treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285;

K.     A judgment awarding Evolution attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D) and/or NRS 600A.060;

L.     A judgment against L&W that interests, costs, and expenses be awarded in favor of Evolution; and

M.     Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Evolution hereby demands trial by jury for all causes of action, claims, or issues that are triable as a matter of right to a jury.

Dated this 28th day of May 2024.

**HOLLEY DRIGGS**

/s/ *Jason D. Smith*
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101

Tel.: (702) 791-0308 / Fax: (702) 791-1912
Email: nsantoro@nevadafirm.com
        jsmith@nevadafirm.com

Ching-Lee Fukuda
*(pro hac vice forthcoming)*
clfukuda@sidley.com
Sharon Lee
*(pro hac vice forthcoming)*
sharon.lee@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Plaintiffs Evolution Malta Ltd.,*
*Evolution Gaming Malta, Ltd., Evolution Gaming*
*Ltd., and SIA Evolution Latvia*