JONES DAY
HAROLD K. GORDON, ESQ.
(Admitted *Pro Hac Vice*)
hkgordon@jonesday.com
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939

JONES DAY
RYAN K. WALSH
(Admitted *Pro Hac Vice*)
rkwalsh@jonesday.com
1221 Peachtree Street N.E., Suite 400
Atlanta, Georgia 30361
Telephone: (404) 521-3939

JONES DAY
JENNIFER D. BENNETT, ESQ.
(Admitted *Pro Hac Vice*)
jenniferbennett@jonesday.com
555 California Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 626-3939

JONES DAY
RANDALL E. KAY, ESQ.
(Admitted *Pro Hac Vice*)
rekay@jonesday.com
4655 Executive Drive, Suite 1500
San Diego, California 92121
Telephone: (858) 314-1139

CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222

*Attorneys for Defendants*
*Light & Wonder, Inc. and LNW Gaming, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EVOLUTION MALTA LIMITED, EVOLUTION GAMING MALTA LIMITED, EVOLUTION GAMING LIMITED and SIA EVOLUTION LATVIA,<br><br>Plaintiffs,<br><br>vs.<br><br>LIGHT & WONDER, INC. f/k/a SCIENTIFIC GAMES CORP. and LNW GAMING, INC. f/k/a SG GAMING, INC.,<br><br>Defendants, | CASE NO.: 2:24-cv-00993-CDS-EJY<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** |

**TABLE OF CONTENTS**

|  |  | **Page** |

I. INTRODUCTION ................................................................................................................ 1

II. THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101 ......................... 2

    A. *Alice* Step One – The Asserted Patents Are Directed To Abstract Ideas ................ 2

    B. *Alice* Step Two – The Asserted Patents Contain No Inventive Concept ................ 6

III. AN ARBITRATOR MUST DECIDE ARBITRABILITY ................................................... 7

IV. THE TRADE SECRET CLAIMS ARE ARBITRABLE ..................................................... 8

V. THE LICENSE AGREEMENT'S TIME BAR PLAINLY COVERS THE '024 AND '014 PATENT CLAIMS AND THE TRADE SECRET CLAIMS ......................... 10

VI. THE TIME-BAR ARGUMENTS CAN BE RESOLVED NOW ..................................... 11

VII. CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

Page

**CASES**

*Accentra, Inc. v. Staples, Inc.*,
   No. 07-cv-5862, 2008 WL 7400627 (C.D. Cal. Feb. 27, 2008) ............................................ 11

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) .............................................................................................................. 2

*Amcor Flexibles Inc. v. Fresh Express Inc.*,
   No. 14-cv-01025, 2014 WL 2967909 (N.D. Cal. July 1, 2014) ........................................... 12

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ............................................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 5

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
   571 U.S. 49 (2013) .............................................................................................................. 12

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................................................. 7

*Bielar v. Washoe Health Sys., Inc.*,
   306 P.3d 360 (Nev. 2013) ................................................................................................... 11

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ............................................................................................. 6

*Carvajal v. Clark Cnty.*,
   539 F. Supp. 3d 1104 (D. Nev. 2021) ................................................................................. 11

*CASS, Inc. v. Prod. Pattern & Foundry Co.*,
   No. 13-cv-701, 2015 WL 3935078 (D. Nev. June 26, 2015) .............................................. 12

*Cedars-Sinai Medical Center v. Global Excel Management, Inc.*,
   CV-09-3627, 2009 WL 7322253 (C.D. Cal. Dec. 30, 2009) .............................................. 11

*CG Tech. Dev., LLC v. Bwin.party (USA), Inc.*,
   No. 16-CV-00871, 2016 WL 6089696 (D. Nev. Oct. 18, 2016) ...................................... 5, 6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ............................................................................................... 4

*Conour IP Holding LLC v. GoPro, Inc.*,
   113 F.4th 1373 (Fed. Cir. 2024) ............................................................................................ 3

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
   830 F. App'x 634 (Fed. Cir. 2020) ........................................................................................ 3

| | |
|---|---|
| *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) | 3, 7 |
| *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) | 5 |
| *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043 (Fed. Cir. Aug. 21, 2023) | 6 |
| *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 638 (2019) | 1, 7 |
| *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157 (Fed. Cir. 2018) (Mayer, J., concurring) | 5 |
| *In re Musgrave*, 431 F.2d 882 (C.C.P.A. 1970) | 3 |
| *In re Smith*, 815 F.3d 816 (Fed. Cir. 2016) | 5 |
| *Jenkins-Naudian v. ABM Indus. Inc.*, No. 2:22-cv-01826-CDS-NJK, 2023 U.S. Dist. LEXIS 125447 (D. Nev. July 20, 2023) | 9 |
| *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) | 9 |
| *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) | 3 |
| *Meta Platforms, Inc. v. Bright Data Ltd.* No. 23-cv-00077, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024) | 11 |
| *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024) | 6 |
| *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1 (1983) | 10 |
| *Mosley v. Wells Fargo & Co.*, No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024) | 8 |
| *MyMail, Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) | 4 |
| *O'Reilly v. Morse*, 56 U.S. 62 (1853) | 2 |
| *Old Republic Ins. Co. v. Jensen*, 276 F. Supp. 2d 1097 (D. Nev. 2003), *aff'd Old Republic Ins. Co. v. Griffin*, 185 F. App'x 588 (9th Cir. 2006) | 12 |
| *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013) | 1, 8 |

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) .................................................................................. 6

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ................................................................................... 4, 5

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ................................................................................... 2, 6

*Savvy Dog Sys., LLC v. Pennsylvania Coin*,
    LLC, 2023-1073, 2024 WL 1208980 (Fed. Cir. March 21, 2024) ........................................... 6

*Sears v. Russell Rd. Food & Beverage, LLC*,
    460 F. Supp. 3d 1065 (D. Nev. 2020) ................................................................................ 11

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................................................ 10

*Skillz Platform Inc. v. Aviagames Inc.*,
    No. 21-cv-02436, 2022 WL 783338 (N.D. Cal. Mar. 14, 2022) ....................................... 3, 4

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) ......................................................................................... 3

*Sr Constr., Inc. v. Peek Bros. Constr., Inc.*,
    510 P.3d 794 (Nev. 2022) .................................................................................................. 9

*Strabala v. State Farm Fire & Cas. Ins. Co.*,
    124 F. App'x 517 (9th Cir. 2005) ..................................................................................... 12

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ..................................................................................... 5, 7

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
    No. 05-cv-4063, 2008 WL 239215 (N.D. Cal. Jan. 28, 2008) ........................................... 11

*Texas Instruments Inc. v. Tessera Inc.*,
    231 F.3d 1325 (Fed. Cir. 2000) ....................................................................................... 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ......................................................................................... 7

*Ubisoft Entm't S.A. v. Yousician Oy*,
    814 Fed. App'x 588 (Fed. Cir. 2020) ................................................................................. 4

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ....................................................................................... 2, 3

*Vetnos, LLC v. Sideprize, LLC*,
    No. 23-cv-02746, 2024 WL 3843015 (N.D. Ga. July 9, 2024) .......................................... 5

*W. Filter Corp. v. Argan, Inc.*,
    No. 05-cv-03548, 2005 WL 8165587 (C.D. Cal. Nov. 17, 2005) ..................................... 12

*Watershape, Inc. v. Assoc. of Pool and Spa Pros.*,
  No. 2:23-cv-00466-JCM-EJY, 2024 WL 229736 (D. Nev. Jan. 19, 2024) ...................... 10, 11

Defendants Light & Wonder, Inc. and LNW Gaming, Inc. (collectively, "L&W") hereby submit their Reply ("Reply") in support of the Motion to Dismiss ("Motion") (ECF No. 34).

## I. INTRODUCTION

All five claims asserted by Evolution fail as a matter of law. The three Patent Claims (including the only claim not time-barred) do not qualify for patent protection under binding Federal Circuit precedent. Evolution's Lightning Roulette game may be "entertaining" and "engaging," but these qualities do not turn an abstract idea into a patent-eligible invention. Evolution's Opposition ("Opp." at 6, 8, 14) confirms that the Asserted Patents are directed to the wagering game roulette, and the Asserted Patents—quick reads with little technical disclosure—do not describe, much less claim, a technological advance to survive *Alice*. The Complaint's conclusory allegations to the contrary cannot change that result.

Two of the three Patent Claims, along with the Trade Secret Claims, also fail as a matter of law because they are clearly time-barred under the plain language of Section 8(g) of the parties' License Agreement and the allegations in the Complaint. ECF No. 43 at § 8(g). Evolution's argument in its Opposition that both the alleged trade secrets and the Asserted Patents are Licensed Property under the License Agreement further demonstrates that both the Patent Claims and Trade Secret Claims at least "relate to" the License Agreement, invoking the time bar.

The only question that remains is whether the Court may dismiss the Trade Secret Claims now or whether those claims must be sent to an arbitrator to at least to determine their arbitrability. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 6568 (2019). Where, as here, it is undisputed that (i) a valid arbitration agreement exists between the parties, (ii) the parties incorporated the ICC Rules into the agreement, and (iii) the ICC Rules delegate questions of arbitrability to an arbitrator, the arbitrator must decide the question of arbitrability. The mere inclusion of a carve-out in the arbitration agreement (where the parties dispute its application to the claims) does not change this. *See Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013). Accordingly, the Trade Secret Claims should either be arbitrated or alternatively dismissed, resolving the entirety of Evolution's Complaint.

## II. THE ASSERTED PATENTS ARE INVALID UNDER 35 U.S.C. § 101

### A. *Alice* Step One – The Asserted Patents Are Directed To Abstract Ideas

The Asserted Patents' failure to improve any technology or technical field dooms them under the *Alice* decision. Evolution claims that the Asserted Patents provide "an improvement in existing technology that is unlike traditional roulette" (Opp. at 7), but never identifies the "technology" that is allegedly improved. In fact, no technology is improved, and the bare, unsupported allegations of the Complaint cannot save Evolution's patent claims.

The Supreme Court's *Alice* decision "articulated a technological arts test for patent eligibility," concluding that claims were patent-ineligible "because they did not 'improve the functioning of the computer itself' or 'effect an improvement in any other *technology* or *technical field*.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014) (quoting *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 210 (2014)).[1] The Asserted Patents fall well short of this test because, as L&W's Motion (Mot. at 8–9, 11–13) established, no technology or technical field is improved. The roulette wheel, ball, and hardware processor (which can be "any suitable," off-the-shelf processor of a "general-purpose" computer) are in no way improved. And neither the claimed random number selection nor the increased payout—the only alleged "innovation" of the Asserted Patents, Compl. ¶¶ 44, 69, 96—improves technology because the Asserted Patents do not describe or claim algorithms to perform either of these steps, much less unique algorithms for "encourag[ing] 'the onward march of science,'" which might qualify for patent protection.[2] *Ultramercial*, 772 F.3d at 721 (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1853)).

Instead, the Asserted Patents generically describe the exact opposite of a specific algorithm—"randomly select[ing] one or more of the roulette wheel numbers" in "*any suitable manner*," and "determin[ing] the increased payouts for the numbers selected," where "[*a*]*ny*

---

[1] All emphasis is added herein unless otherwise noted.
[2] The Opposition (at 1, 3–4, 12–13) repeatedly refers to "inventive software algorithms." To the extent Evolution is referring to collections of functionally-claimed steps (*e.g.*, the steps of method claim 9 of the '014 patent) as allegedly providing algorithms—which they do not—those steps improve no technology: Notwithstanding their execution, the hardware processor runs no faster than it did before, and the roulette wheel and ball operate as they always have. As explained below, the alleged "inventive[ness]" of the claims over the prior art is insufficient to survive *Alice*. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) (advances in the realm of abstract ideas, "no matter how groundbreaking the advance," are not protected.)

- 2 -

*suitable payouts can be used.*" '014 patent at 4:58–61, 5:15–17. Such "results-oriented, functional . . . claim language" improves no technology and is "a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). At best, the addition of random number selection for providing an increased payout is an *entrepreneurial* advance, not a technical one—a tweak to traditional roulette intended to enhance the "player's experience" and drive profits. Opp. at 9 (quoting '024 patent at 4:56–5:30). But "[i]n assessing patent eligibility, advances in non-technological disciplines," like business, law, and gaming "simply do not count." *Ultramercial*, 772 F.3d at 721; *In re Musgrave*, 431 F.2d 882, 893 (C.C.P.A. 1970); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1166 (Fed. Cir. 2019).

The Federal Circuit cases cited by Evolution (*McRo*, *EcoServices*, *Contour IP*) are inapposite[3] and simply confirm that claims encompassing a technical improvement are patent eligible (L&W does not contend otherwise). In *McRO*, the claims focused on a specific means (rules that "define[] a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence") for improving technology ("3-D computer generated lip-synchronization"). 837 F.3d at 1315–16. "The specific structure of the claimed rules" in *McRo* "prevent[ed] broad preemption of all rules-based means of automating lip synchronization . . . ." *Id.* at 1315. Here, the Asserted Patents do not claim specific means for random number selection or payout determination, and instead broadly preempt all ways of carrying out these functions. '014 patent at 4:58–61, 5:15–17 (random number selection in "any suitable manner," "[a]ny suitable payment can be used"). Pairing these functionally claimed steps with conventional components ("roulette wheel," "ball," and "hardware processor") improves no technology. *See Elec. Power Grp.*, 830 F.3d at 1355. The claims in *EcoServices* and *Contour IP* likewise involved technological improvements ("improved system for washing jets" and "improv[ed] POV camera technology," respectively), in contrast to the Asserted Patents. 830 F. App'x at 642; 113 F.4th at 1380.

Evolution also cites *Skillz Platform Inc. v. Aviagames Inc.*, but that case supports L&W's position, not Evolution's. No. 21-cv-02436, 2022 WL 783338, at *23–24 (N.D. Cal. Mar. 14,

---

[3] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016); *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634 (Fed. Cir. 2020); *Conour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373 (Fed. Cir. 2024).

- 3 -

2022). Indeed, the *Skillz* court invalidated the claims similar to those of the Asserted Patents. *Id.* Specifically, at *Alice* step one, the *Skillz* court found claims reciting "software . . . . [that] *provides a random number seed*" were directed to abstract ideas: They were "entirely functional" and "fail[ed] to provide specific steps for how this outcome is achieved." *Id.* The claims here are no different—they recite "randomly selecting . . . a number" and "determining a first payout" without any indication how these results are achieved.[4]

The claims upheld in *Skillz* are nothing like those of the Asserted Patents. First, the claims that survived solved a particular technological problem ("setting up common, randomized gameplay in a networked computing environment") with a specific technical solution ("deriv[ing] pseudo-random numbers for gaming sessions"). *Id.* at *10. In contrast, Evolution's claims allegedly improve a non-technical discipline (gaming) with results-oriented, non-technical features (increasing the payout for a position randomly selected in "any suitable" manner). Second, while the claims in *Skillz* involved pseudo-random generation—a mathematical algorithm, and thus an abstract idea, *see RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)— the court found the upheld claims were not directed to that abstract idea because they contained other non-abstract elements (*e.g.*, the use of a "unique match identifier to standardize randomized behavior in the game instance") for achieving a "non-abstract improvement in computer technology." *See Skillz*, 2022 WL 783338, at *9–11. Evolution's claims recite no such elements for removing the alleged invention from the realm of abstract ideas or improving technology.

Finally, Evolution argues that the Court *must* deny L&W's Motion because of the Complaint's conclusory allegations that the Asserted Patents "improved existing technology." Opp. at 1, 8. But Evolution's bare allegation of a technical improvement is not enough because "[n]othing in the [Asserted Patents] discloses a technological improvement over conventional methods," *Ubisoft Entm't S.A. v. Yousician Oy*, 814 Fed. App'x 588, 591 (Fed. Cir. 2020), and the specification "never suggests that [anything] is improved from a technical perspective." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019); *see also MyMail, Ltd.*

---

[4] At *Alice* step two, the *Skillz* court also found no inventive concept because the claims "do not provide enough detail to provide a non-abstract solution," and "the claims are implemented on generic and conventional computing elements." *Id.* at *24.

- 4 -

*v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364, at *6 (Fed. Cir. Aug. 19, 2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations are "not entitled to be assumed true").

In sum, although not "all inventions in the gaming arts [are] foreclosed from patent protection," *In re Smith*, 815 F.3d 816, 819 (Fed. Cir. 2016),[5] Evolution's patents fall short. They claim an elementary tweak to roulette—randomly selecting a position and increasing the payout for that position. No technology is improved. While non-technical advances to "games may enhance our leisure hours, they contribute nothing to the existing body of technological and scientific knowledge" and are therefore ineligible for patenting. *See In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1166 (Fed. Cir. 2018) (Mayer, J., concurring).

Evolution's remaining Step One Arguments also fail. L&W's Motion (at 7–8) showed that the claims are directed to the wagering game roulette. Evolution argues that "the patents are in fact directed to an *improved* roulette game." Opp. at 14 (emphasis in original). Improved or not, the claims are still directed to wagering, an abstract idea under Federal Circuit precedent. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151–52 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea") (emphasis in original). Mot. at 5–7.

Moreover, the only alleged improvement in the Asserted Patents is the random number selection and payout determination, which are *more abstract ideas*. Unlike in *Vetnos, LLC v. Sideprize, LLC*,[6] there is no question whether the claims can be performed in the human mind—humans have been randomly selecting numbers for decades, if not centuries, *e.g.*, by rolling dice or picking numbers out of a hat, and determining a payout is simply math. Both are textbook examples of abstract ideas. *RecogniCorp*, 855 F.3d at 1327 ("Adding one abstract idea (math) to another abstract idea … does not render the claim non-abstract."); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) ("we have repeatedly found unpatentable" processes that can be performed in the human mind). Evolution's *CG Tech. Dev., LLC v. Bwin.party (USA), Inc.* case confirms this: the court said that determining "game outcomes" and

---

[5] For instance, L&W's U.S. Patent No. 11,302,152, as cited by Evolution (Opp. at 9–10), claims a "new or original" blackjack table analogous to the "new or original deck of cards" referenced in *In re Smith* as potentially patent-eligible. 815 F.3d at 819; ECF No. 53-2 (Exhibit A) at 8–10.

[6] No. 23-cv-02746, 2024 WL 3843015, at *3 (N.D. Ga. July 9, 2024).

- 5 -

"payouts" based on rules or algorithms are abstract because they "can be conducted in one's mind." No. 16-CV-00871, 2016 WL 6089696, at *4 (D. Nev. Oct. 18, 2016). The claims in *CG Tech.* survived because they "require[d] activity outside of one's mind" (*id.*), but the claims here do not.

### B. *Alice* Step Two – The Asserted Patents Contain No Inventive Concept

Evolution argues that the claimed random number selection and increased payout provide an inventive concept for *Alice* step two. Opp. at 12. But these features are necessary parts of the abstract idea and thus cannot supply an inventive concept. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1294 (Fed. Cir. 2024). The law is clear: After identifying the abstract idea at step one, the analysis at step two considers "what *remains in the claims*" to determine whether these additional elements "contain an 'inventive concept' sufficient to 'transform the nature of the claim' into a patent-eligible application." *Savvy Dog Sys., LLC v. Pennsylvania Coin*, LLC, 2023-1073, 2024 WL 1208980, at *2, 4 (Fed. Cir. March 21, 2024) (citing *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018)). Here, what remains—*i.e.*, features aside from the claimed wagering game using random number selection and increased payouts—is just the roulette wheel, ball, and processor, all of which are indisputably conventional and not inventive.

Evolution's other *Alice* step two arguments fail. *First*, Evolution accuses L&W of "ignor[ing] and contradict[ing] the Complaint's well-pleaded allegations." Opp. at 12–13. But the Complaint's unsupported allegations of "improved existing technology" (Compl. ¶¶ 44, 69, 96) fail for the reasons stated above—they are inconsistent with the Asserted Patents, which describe no improvement to technology. The alleged "unique formatting" of Evolution's Lightning Roulette (Compl. ¶ 4) is not recited in the claims and thus cannot supply an inventive concept. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014). And even assuming that Evolution's tweaked version of roulette is "hugely successful," "unique," and not taught by the prior art (Compl. ¶ 4), this is "not enough for eligibility." *SAP Am., Inc.*, 898 F.3d at 1163; *Ficep Corp. v. Peddinghaus Corp.*, No. 2022-1590, 2023 WL 5346043, at *7 (Fed. Cir. Aug. 21, 2023). "The claims here are ineligible because their [alleged] innovation is an innovation in ineligible subject matter," *i.e.*, gaming, a non-technical discipline like business or law, *SAP Am.*, 898 F.3d at 1163, and "the [Asserted Patents]

do not introduce a technical advance or improvement." *Synopsys*, 839 F.3d at 1151-52.

*Second*, Evolution's Opposition (Opp. at 13–14) argues that the Asserted Patents' "ordered combination of claim elements" provides an inventive concept, citing to *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). In *Bascom*, the Federal Circuit found claims patent-eligible when they combined conventional components ("client computer," "ISP server," "computer network") to provide a "technology-based solution" to a technical problem, "filter[ing] content on the Internet." *Id.* at 1349–52. Here, the combination of claim elements—(i) roulette wheel, (ii) ball, and (iii) hardware processor executing steps for playing roulette—improves no technology and does not solve a technical problem. Evolution's simple tweak to roulette is not comparable to *Bascom*'s technological solution.

*Finally*, Evolution accuses L&W of "opportunistically shift[ing] the alleged 'abstract idea' halfway through the analysis." Opp. at 14. Not so. L&W's *Alice* step one arguments established that the claims are directed to the abstract idea of playing the wagering game roulette, *including the random number selection and increased payout features* of the Asserted Patents. Mot. at 7–8. L&W never suggested that the claims were directed to traditional roulette lacking these features. *Id.* Evolution's strawman arguments fail. In any case, even if the claims were directed to the abstract idea of traditional roulette, the random number generation and increased payout are also functionally-claimed abstract ideas and thus cannot supply an inventive concept at *Alice* step two. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017); *Elec. Power Grp.*, 830 F.3d at 1356.

### III. AN ARBITRATOR MUST DECIDE ARBITRABILITY

Evolution concedes (Opp. at 19), "*PGE* states . . . 'the incorporation of the rules of the ICC into an arbitration agreement . . . constitutes clear and unmistakable evidence of a delegation of gateway issues to the arbitrator.'" Given these concessions, the analysis should end here—an arbitrator must decide the arbitrability of the Trade Secret Claims. *See Henry Schein*, 586 U.S. at 65–68 (holding a court possesses no power to decide arbitrability "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless").

In its attempt to avoid arbitration, Evolution ignores both Supreme Court and Ninth Circuit

precedent to argue that arbitration provisions with carve-outs do not delegate the question of arbitrability to an arbitrator for claims that may fall within the carve-out.[7] Ninth Circuit precedent, however, is clear: a carve-out provision in the parties' arbitration agreement does **not** express their intent that a court—and not an arbitrator—should decide arbitrability. *Oracle Am., Inc.*, 724 F.3d at 1075 (holding the parties had "clearly and unmistakably" agreed to delegate arbitrability to an arbitrator despite "a carve-out provision in the parties' arbitration clause expresses their intent that a court would decide arbitrability"); *see also Mosley*, 2024 WL 977674, at *2–3 (holding that questions about whether a carve-out provision applies goes to the arbitrator).

*Oracle* is instructive. 724 F.3d at 1075. In *Oracle*, the arbitration agreement had a carve-out for claims relating to "intellectual property rights" similar to the carve-out at issue here for disputes relating to Licensed Property, and there was a dispute about whether the court decides arbitrability. *Id.* The Ninth Circuit determined that "the decision that a claim relates to intellectual property rights . . . constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules." *Id.* at 1076. As was the case in *Oracle*, Evolution's argument that the Trade Secrets Claims fall within the carve-out[8] and thus the court decides arbitrability "conflates the scope of the arbitration clause, i.e., which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Id.* And, according to the Ninth Circuit, any question about whether the Trade Secret Claims are subject to the carve-out constitutes an arbitrability determination that is reserved for the arbitrator. *Id.*

## IV. THE TRADE SECRET CLAIMS ARE ARBITRABLE

If the Court concludes that it can decide arbitrability, Evolution's Trade Secret Claims fall squarely within the scope of the License Agreement's broad arbitration provision. ECF No. 43 § 15(c). Evolution argues that the alleged trade secrets constitute Licensed Property under the parties' License Agreement and are therefore carved out of the arbitration provision. Evolution is wrong for several reasons.

---

[7] Evolution's cases are from the Second and Fifth Circuits, not the Ninth Circuit. Opp. at 18–19. But see *Oracle Am., Inc.*, 724 F.3d at 1076; *Mosley v. Wells Fargo & Co.*, No. 23-55478, 2024 WL 977674, at *2–3 (9th Cir. Mar. 7, 2024).

[8] L&W has not compelled arbitration of the Patent Claims because the Asserted Patents are indisputably Licensed Property and are subject to the carve-out provision.

- 8 -

First, Evolution ignores the strong presumption in Nevada courts in favor of arbitration where a valid and enforceable arbitration agreement exists between the parties. *Jenkins-Naudian v. ABM Indus. Inc.*, No. 2:22-cv-01826-CDS-NJK, 2023 U.S. Dist. LEXIS 125447, *2 (D. Nev. July 20, 2023) (citing *Sr Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022)). "Under a broad arbitration provision—*i.e.*, one that encompasses all disputes related to or arising out of an agreement—a presumption of arbitrability applies and 'only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Sr. Constr.*, 510 P.3d at 798. Evolution fails to adduce such "forceful evidence" here.

Second, as noted in L&W's Motion, the alleged trade secrets are not Licensed Property under the proper interpretation of the License Agreement and thus the Trade Secret Claims are arbitrable. (Mot. at 18–19). At the very least, Evolution's opposition fails to show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sr. Constr.*, 510 P.3d at 800. Indeed, the definition of Licensed Property does not reference "trade secrets." ECF No. 43 at 6. Moreover, Evolution's Complaint does not allege that the math files—the alleged trade secrets—are Licensed Property. Tellingly, Evolution only alleged that it "disclosed" the math files, but alleged that it licensed the Asserted Patents. Compl. ¶¶ 17, 19 ("Evolution granted LNW Gaming an exclusive license to . . . the Asserted Patents"). It was only after L&W filed its Motion that Evolution argued that the math files (i.e., the alleged trade secrets) are Licensed Property.[9] Thus, the arbitration clause is clearly susceptible to an interpretation that covers the Trade Secret Claims.

Finally, Evolution's over-broad reading of the License Agreement to license **any** intellectual property directly contradicts the plain language of the License Agreement, which expressly provides that "**neither the disclosure of any confidential** or proprietary information" (which Evolution alleges the math files are), "**shall be construed** as granting to the recipient of such information, **by implication or otherwise**, **any** right in, or **license to**, any **present** or future **proprietary information**, . . . except as provided in this Agreement." ECF No. 43 § 7(c). Given

---

[9] Evolution improperly relies on an extrinsic letter, citing the "incorporation by reference" doctrine. Opp. at 17 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). That doctrine is inapplicable, as L&W did not attach the letter at issue to its motion to dismiss. *Id.* at 1076.

any doubts must be resolved in favor of arbitration, the Trade Secret Claims should be arbitrated. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983).

## V. THE LICENSE AGREEMENT'S TIME BAR PLAINLY COVERS THE '024 AND '014 PATENT CLAIMS AND THE TRADE SECRET CLAIMS

Section 8(g) of the License Agreement is explicit that any claim that arises under or relates to the License Agreement must be brought within twelve months from the date the claim arises, or if later, within twelve months from the date the party claiming first became or should become aware. ECF No. 43 § 8(g). Per the Complaint, Evolution sat on its claims for years. *See* Compl. ¶¶ 61, 88 ("by letters dated February 28, 2022 . . . ., Evolution put L&W on notice that RouletteX infringes the '024 patent [and '014 patent]."); ¶142 ("Evolution first discovered that L&W had misappropriated Evolution's trade secrets . . . in August 2021.").

All claims but the recently issued '371 patent claim at the very least "relate to" the License Agreement (Mot. at 21–22) and fall within the scope of the time bar. "[P]hrases like 'relating to' . . . reach 'every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.'" *Watershape, Inc. v. Assoc. of Pool and Spa Pros.*, No. 2:23-cv-00466-JCM-EJY, 2024 WL 229736, at *2 (D. Nev. Jan. 19, 2024) (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)). This Court has recognized that contract clauses including "relating to" are broadly defined. *Id.* (allegations need only "touch matters" covered by the contract). Here, the Complaint alleges that the Asserted Patents were licensed to L&W pursuant to the License Agreement (Compl. ¶19), and Evolution argues in its Opposition that the alleged trade secrets were licensed under that agreement, as well. Under these circumstances, allegations that L&W infringes the same "Licensed Property" has a significant relationship with the License Agreement. *Id*. Evolution cannot credibly argue otherwise.

Moreover, Evolution's argument that the Trade Secret Claims do not arise under or relate to the License Agreement is directly at odds with Evolution's arbitrability argument. Evolution cannot have it both ways. If the Trade Secret Claims are subject to the carve-out in Section 15(c) of the License Agreement because the alleged trade secrets are Licensed Property, then the Trade Secret Claims also relate to the License Agreement and are time-barred by Section 8(g).

Evolution cites only to two California district court opinions[10] to support its argument that courts "*regularly* conclude that IP claims like patent infringement claims do not 'arise under' or relate to contracts like license agreements." Opp. at 21.  Not so.  The Federal Circuit itself has plainly said that "[p]atent infringement disputes do arise from license agreements." *Texas Instruments Inc. v. Tessera Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000).

Evolution's California cases are inapposite.  In *Tessera*, the court did not conclude that the patent claims did not "arise under" or "relate to" the contract—instead the court concluded a party could not avoid discovery of unlicensed products because "the ITC discovery dispute is not related to licensing issues." *Tessera*, 2008 WL 239215, at *3.  In *Accentra*, there was no intellectual property license agreement—as the court noted the provision at issue "does not grant rights to either party"—the contract at issue was a manufacturing agreement. *Accentra*, 2008 WL 7400627, at *2. In contrast, L&W received a license to the Asserted Patents as defined by the License Agreement.

Finally, Evolution cannot rewrite Section 8(g) to remove "relates to" so that it only covers contract-based claims.[11]  Opp. at 21.  "A basic rule of contract interpretation is that [e]very word must be given effect if at all possible. . . ." *Bielar v. Washoe Health Sys., Inc.*, 306 P.3d 360, 364 (Nev. 2013) (cleaned up).  And, inclusion of "relating to" in the clause is meaningful given it has broader reach and is not as restrictive as "arises under." *See Cedars-Sinai Medical Center v. Global Excel Management, Inc.*, CV-09-3627, 2009 WL 7322253, at *5 (C.D. Cal. Dec. 30, 2009) ("clauses governing claims 'arising out of or relating to' a contract have broader reach than those governing disputes 'arising under' an agreement"); *see Watershape, Inc.*, 2024 WL 229736, at *2.

## VI. THE TIME-BAR ARGUMENTS CAN BE RESOLVED NOW

L&W's Motion on the time bar is not premature, as Nevada courts have repeatedly granted motions to dismiss claims as time-barred. *See, e.g.*, *Carvajal v. Clark Cnty.*, 539 F. Supp. 3d 1104, 1119 (D. Nev. 2021) (granting motion to dismiss claims as time-barred); *Sears v. Russell Rd. Food*

---

[10] *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. 05-cv-4063, 2008 WL 239215, at *3 (N.D. Cal. Jan. 28, 2008); *Accentra, Inc. v. Staples, Inc.*, No. 07-cv-5862, 2008 WL 7400627, at *2–3 (C.D. Cal. Feb. 27, 2008).

[11] To support this argument, Evolution cites *Meta Platforms, Inc. v. Bright Data Ltd*. No. 23-cv-00077, 2024 WL 251406, at *18 (N.D. Cal. Jan. 23, 2024).  However, in *Meta*, the court looked at the structure of the contract due to an ambiguity in the time-bar provision. *Id.* at 16.  Here, the Court does not need to look at the structure of the contract because Section 8(g) is unambiguous.

- 11 -

*& Beverage, LLC*, 460 F. Supp. 3d 1065, 1068 (D. Nev. 2020) (granting motion to dismiss claims as time-barred). Evolution points to two California opinions to argue that "courts have rejected attempts to dismiss claims as untimely under a disputed contractual provision."[12] Opp. at 23. The courts in *Amcor* and *Western Filter* both denied the at-issue motion to dismiss because the disputed provision was ambiguous and the factual timeline was disputed. *Amcor*, 2014 WL 2967909, at *4–6; *W. Filter*, 2005 WL 8165587, at *3. Here, in contrast, Section 8(g)'s language is unambiguous and the timeline is undisputed.

Next, Evolution implies (with no support) that the 1-year time-bar provision may be "unreasonable" and that "reasonableness" is an inherently factual issue. Opp. at 24. Yet, as L&W noted in its Motion, courts in the Ninth Circuit have held that 1-year time-bars are "reasonable" and such a decision is clearly within the Court's power. *See, e.g.*, *Strabala v. State Farm Fire & Cas. Ins. Co.*, 124 F. App'x 517, 518 (9th Cir. 2005) (affirming Rule 12(b)(6) dismissal of claims as time-barred pursuant to a 12-month limitation period). The procedural posture of L&W's cited cases is of no moment; the fact remains that courts in this circuit have found that a one-year time bar is reasonable, and Evolution offers no argument why such a time period is unreasonable.

Finally, public policy works against Evolution's attempt to rewrite the License Agreement's provisions. "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 66 (2013); *see also Old Republic Ins. Co. v. Jensen*, 276 F. Supp. 2d 1097, 1101 (D. Nev. 2003), *aff'd Old Republic Ins. Co. v. Griffin*, 185 F. App'x 588 (9th Cir. 2006) ("[A] Nevada court will not rewrite contract provisions that are otherwise unambiguous."). The License Agreement, an unambiguous contract bargained for and agreed upon by two sophisticated parties, should not be rewritten.

### VII.   CONCLUSION

For the foregoing reasons, L&W's Motion should be granted.

---

[12] *Amcor Flexibles Inc. v. Fresh Express Inc.*, No. 14-cv-01025, 2014 WL 2967909, at *4–6 (N.D. Cal. July 1, 2014); *W. Filter Corp. v. Argan, Inc.*, No. 05-cv-03548, 2005 WL 8165587, at *3 (C.D. Cal. Nov. 17, 2005). And, in *CASS, Inc. v. Prod. Pattern & Foundry Co.*, No. 13-cv-701, 2015 WL 3935078, at *3 (D. Nev. June 26, 2015), the claim accrual date of the claim was disputed.

1    DATED this 8th day of October, 2024.

                                                        CAMPBELL & WILLIAMS

                                                        By:  */s/ Philip R. Erwin*
                                                              PHILIP R. ERWIN, ESQ. (11563)
                                                             710 South Seventh Street
                                                             Las Vegas, Nevada 89101

                                                         JONES DAY

                                                         HAROLD K. GORDON, ESQ.
                                                         (*Pro Hac Vice*)
                                                         RYAN K. WALSH, ESQ.
                                                         (*Pro Hac Vice*)
                                                         JENNIFER D. BENNETT, ESQ.
                                                         (*Pro Hac Vice*)
                                                         RANDALL E. KAY, ESQ.
                                                         (*Pro Hac Vice*)

                                                         *Attorneys for Defendants Light &*
                                                         *Wonder, Inc and LNW Gaming, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of October, 2024, I caused a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

   /s/ *Philip R. Erwin*
An employee of Campbell & Williams