UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Evolution Malta Limited, et al.,

    Plaintiffs

v.

Light & Wonder, Inc., et al.,

    Defendants

Case No. 2:24-cv-00993-CDS-EJY

**Order Granting Defendants' Motion to Dismiss**

[ECF No. 34]

Plaintiffs Evolution Malta Limited, Evolution Gaming Malta Limited, Evolution Gaming Limited, and SIA Evolution Latvia (collectively, "Evolution") bring this action against defendants Light & Wonder, Inc. and LNW Gaming, Inc.[1] (collectively, "L&W") alleging that they have "deliberately and willfully infringe[d]" on U.S. Patent Nos. 10,629,024 ("the '024 patent"), 11,011,014 ("the '014 patent") and 11,756,371 ("the '371 patent") which are owned and assigned to Evolution, and that L&W misappropriated Evolution's trade secrets. Compl., ECF No. 1 at 1–2. L&W filed a motion to dismiss the claims on July 24, 2024. Mot. to dismiss, ECF No. 34.[2] Evolution responded on September 10, 2024. Opp'n, ECF No. 53. L&W replied on October 8, 2024. Reply, ECF No. 66. For the reasons herein, I grant L&W's motion to dismiss.

---

[1] Light & Wonder, Inc., formerly known as Scientific Games Corp., and LNW Gaming, Inc., formerly known as SG Gaming, Inc. ECF No. 1 at 1.

[2] In the motion to dismiss, L&W asks the court to (1) dismiss the patent claims for failure to state a claim, and (2) stay and compel arbitration of the trade secret claims; or alternatively dismiss the trade secret claims because they are time-barred under the parties' agreement. ECF No. 34 at 1. Requesting two forms of relief in one document violates Local Rule IC 2-2(b). Because the motion violates this district's Local Rules, I issued a notice informing the parties that this order will only address the patent claims, and directed the defendants to file a separate motion that requests I compel arbitration, should they wish to do so. Notice, ECF No. 72.

## I. Background[3]

Evolution is a "leading provider of fully integrated online casino solutions to online gaming operators and land-based casinos." ECF No. 1 at 2. Founded in 2006, Evolution was one of the providers of "B2B live casino solutions in Europe." *Id.* Live casinos are "a form of online gambling where the games are facilitated in real-time by a human dealer and players can place wagers and participate online." *Id.* L&W is a "cross-platform global games company with a focus on content and digital markets." *Id.* L&W provides gaming machines, gaming content, casino management systems, and table game products and services to casinos and other "licensed gaming entities." *Id.*

In 2018, Evolution launched a new game called "Lightning Roulette" in an online live version format. *Id.* The game is presented in a "game show style environment with advanced sound and lighting effects." *Id.* at 2–3. Lightning Roulette combines all the familiar elements of traditional roulette, with new additional features—like extra chances to win at higher payouts. *Id.* at 3. These new additions have made Lightning Roulette hugely successful. *Id.* Because of the success, in 2022, Evolution launched "XXXtreme Lightning Roulette" which increases the opportunities for bigger payouts. *Id.*

The U.S. Patent and Trademark Office has awarded Evolution multiple patents for the innovations created in Lightning Roulette, including the '024, '014, and '371 patents. *Id.* Wanting to capitalize on Lightning Roulette's immense success, Evolution began looking for a partner to help bring Lightning Roulette to land-based casinos worldwide. *Id.* at 5. L&W expressed its interest in partnering with Evolution. So, over the course of several months, the companies negotiated terms of an agreement for producing a physical Lightning Roulette game table to be put in land-based casinos. *Id.* The first terms negotiated were terms of a Mutual Non-Disclosure Agreement (NDA), which were agreed to on February 18, 2020. *Id.* Section 3(b) of the NDA

---

[3] Unless otherwise noted, the court only cites to the plaintiffs' complaint (ECF No. 1) to provide context to this action, not to indicate a finding of fact.

states that L&W is only allowed to use Evolution's confidential information to the extent necessary to "evaluate the possibility of developing a land-based version of Lightning Roulette, and not for any other purpose." *Id.* Section 11 of the NDA also states that the parties agreed that any breach of the NDA by L&W would "irreparably harm Evolution" and "money damages alone would be an inadequate remedy." *Id.*

Thereafter, the parties negotiated a "Heads of Terms" on March 8, 2021, to "set out their common understanding of the terms of the arrangement." *Id.* at 6. The Heads of Terms included a "Confidentiality provision" whereby both parties agreed not to use the other party's confidential information for any purpose other than to perform the obligations under the Heads of Terms. *Id.* The Heads of Terms also identified some of Evolution's intellectual property that protects Lightning Roulette, including the '024 patent and the application that ultimately led to the '014 patent. *Id.*

After the parties agreed to the terms of both the NDA and Heads of Terms, Evolution disclosed to LNW Gaming Evolution's proprietary and confidential information involving Lightning Roulette solely so that LNW Gaming could use that information to aid the development of the physical Lightning Roulette game tables. *Id.* For example, Evolution provided to L&WW two math files for Lightning Roulette. *Id.* These math files, clearly marked as "COMPANY CONFIDENTIAL" explain the underlying math for Lightning Roulette, including the "frequency with which each multiplier is selected, the frequency with which the roulette numbers are selected as 'Lucky Numbers' and the frequency with which the ball lands on a roulette number." *Id.* Evolution claims that this information is "proprietary, unique to the Lightning Roulette game, and cannot be readily ascertained through proper means, including by observing the Lightning Roulette features or by playing the game." *Id.* This information allows the game to remain profitable and increases player engagement. *Id.*

3

On March 29, 2021, Evolution and LNW Gaming ultimately entered into an agreement requiring LNW Gaming to develop and build a physical Lightning Roulette game table for land-based casinos. *Id.* at 7. In furtherance of this agreement, Evolution granted LNW Gaming an exclusive license to some of Evolution's intellectual property (IP) including the '024, '014, and '371 patents. *Id.* The IP was only to be used for the purposes of developing the physical Lightning Roulette game table. *Id.* The agreement between Evolution and LNW gaming reiterated the confidentiality obligations numerous times and made clear that any disclosure by Evolution of its confidential and proprietary information to LNW Gaming should not be construed as a grant of any rights in or license to that information. *Id.* Further, the agreement expressly prohibited LNW Gaming from building a table game that would compete with a physical Lightning Roulette game table. *Id.*

After entering into the agreement and publicly announcing it, Evolution alleges that LNW Gaming "led Evolution to believe that it was working on developing the Lightning Roulette game tables pursuant to the parties' Agreement." *Id.* at 8. Evolution alleges that instead, LNW Gaming attempted to terminate the parties' agreement and spread false information to Evolution customers that the agreement had been terminated. *Id.* L&W then announced the launch of its own "copycat" roulette game, called RouletteX. *Id.* RouletteX has been released as both an online game and a physical table game format. *Id.* According to Evolution, "RouletteX's appearance, features, and functionality are strikingly similar to Lightning Roulette. For example, RouletteX—like Lightning Roulette—randomly selects up to five roulette numbers and assigns multipliers from 50x to 500x to those randomly selected numbers for each roulette spin." *Id.* Further, "RouletteX even identifies these randomly selected numbers with an animated lightning strike, like Lightning Roulette. If the ball falls into one of those randomly selected roulette numbers and the player bet on that number, then RouletteX pays out according to the assigned multiplier, again like Lightning Roulette." *Id.*

1    Evolution states that L&W recently petitioned the Pennsylvania Gaming Control Board
2 to add a temporary regulation[4] that allows certificate holders in Pennsylvania to offer
3 RouletteX. *Id.* at 9. The regulation states, "Roulette X is similar to already authorized Lightning
4 Roulette in that it incorporates increased payout odds being randomly applied to the Roulette
5 table." *Id.* (citing 54 Pa. Bull. 1537, 1541 (March 23, 2024)). The regulation also provides that
6 RouletteX "shall follow the rules and procedures of Lightning Roulette under § 617b.3 (relating
7 to Lightning Roulette)." *Id.* (citing 54 Pa. Bull. 1537, 1541).[5]
8    After learning about RouletteX, Evolution sent L&W a letter demanding that L&W
9 refrain from further violations of Evolution's intellectual property and specifically identified the
10 '024, '014, and '371 patents, which explained how the RouletteX infringes on one or more of the
11 claims of those patents. *Id.* at 10. Evolution also argued that the unauthorized use of the
12 Lightning Roulette math files constituted trade secret misappropriation. *Id.* Despite this,
13 Evolution alleges that L&W has continued to use Evolution's intellectual property and recently
14 released another copycat game called PowerX. *Id.* On April 24, 2024, Evolution sent L&W
15 another letter again demanding that they stop violating Evolution's intellectual property rights.
16 *Id.* Again, the letter specifically identified the '024, '014, and '371 patents. *Id.* L&W did not
17 comply with Evolution's demands, so Evolution brought this action against L&W on May 28,
18 2024. ECF No. 1.

**II.    Legal standard**

20    The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain
21 statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
22 Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which
23 relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A
24 pleading must give fair notice of a legally cognizable claim and the grounds on which it rests,

---

[4] 58 Pa. Code § 617b.5.
[5] Available at https://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol54/54-12/398.html&search=1&searchunitkeywords=125-248.

5

and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### III. Discussion

L&W files the instant motion to dismiss and asks the court to dismiss the patent claims for failure to state a claim because Evolution's patents do not claim patent eligible subject matter, and two of the claims are time-barred. ECF No. 34.

L&W first argues that the asserted patents are invalid under 35 U.S.C. § 101. *Id.* at 10. Specifically, L&W argues that the asserted patents cover "abstract ideas" that are not patentable under § 101. *Id.* L&W uses the two-step framework the Supreme Court outlined in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014), to argue that Evolution's patents did not cover patent-eligible subject matter. *Id.* at 10–17. In response, Evolution argues that issued

patents are presumed eligible and, under the Supreme Court's framework, the patents are directed toward eligible material. ECF No. 53 at 12. In its reply, L&W insists that the patents cover ineligible material and that the cases Evolution cites to in its opposition are inapposite. ECF No. 66 at 3–7.

"Whether a patent is eligible under § 101 is a question of law that may be determined at the dismissal stage." *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 986 (D. Nev. 2021) *aff'd*, 2022 U.S. App. LEXIS 12929 (Fed. Cir. May 13, 2022). Under § 101 of the Patent Act, a patent can be given to an inventor for any "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Claims of issued patents are presumed valid. 35 U.S.C. § 282. "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003) (citing *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1221 (Fed. Cir. 2002). And the Supreme Court has made clear that "laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The reason behind this exemption is "one of pre-emption"; if an inventor could obtain a patent protection over natural laws or abstract ideas, it would undermine future innovation instead of promoting it. *NEXRF Corp.*, 547 F. Supp. 3d at 986. However, courts are also aware that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaboration Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

To that end, the Supreme Court has developed a two-part test to assess whether a patent improperly covers an abstract idea. First, courts must determine whether a patent's claims are directed to a "patent-ineligible concept." *Alice*, 573 U.S. at 217. Examples of abstract ideas include mathematical equations, methods of organizing human activity, or longstanding commercial practices. *Id.* at 220. Second, if a court finds that the patent involves an abstract idea, the court

asks whether the remaining elements, either in isolation or combination with the non-patent-ineligible concepts "'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaboration Servs.*, 566 U.S. at 78).

Where claims of a patent are substantially similar and linked to the same abstract idea, courts may focus their analysis on representative claims rather than analyzing each claim of the patent at issue. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (focusing the *Alice* analysis on a single representative claim); *Voip-Pal.Com, v. Apple Inc.*, 375 F. Supp. 3d 1110, 1125 (N.D. Cal. 2019) ("[T]he Court need not individually analyze every claim if certain claims are representative.") (citing *Alice*, 573 U.S. at 224–28). Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer, v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016)).

In its motion to dismiss, L&W asserts that Claim 1 of the '014 patent is representative of all of the claims. ECF No. 34 at 19. Evolution does not respond to this assertion, and therefore has conceded that Claim 1 of the '014 patent is representative. *See Aevoe Corp. v. AE Tech. Co.*, 2013 U.S. Dist. LEXIS 58665, at *3 n.1 (D. Nev. Apr. 23, 2013) (finding that failure to respond to an argument results in acquiescence). Therefore Claim 1 of the '014 patent will serve as the Representative Claim 1 for the purposes of this action.[6]

Claim 1 of the '014 patent states the following:

A system for wagering, comprising:

A roulette wheel;

A ball configured to be used in the roulette wheel;

---

[6] L&W also argues that the dependent claims of the asserted patents relate to the same abstract idea and do not save the Asserted Patents. ECF No. 34 at 17 (citing *TS Pats. LLC v. Yahoo! Inc.*, 279 F. Supp. 3d 968, 983 (N.D. Cal. 2017)) ("[T]he dependent claims introduce minor variations that do not shift the *Alice* analysis"). Evolution does not address this argument in its response and therefore concedes this point. *Aevoe Corp.*, 2013 U.S. Dist. LEXIS 58665, at *3 n.1.

> At least one hardware processor collectively configured to:
>
> generate a first graphical user interface for presentation on a first player device of a first player;
>
> generate a second graphical user interface for presentation on a second player device of a second player;
>
> receive first bet information for a first bet on a spin of the roulette wheel via the first graphical user interface, the first bet information corresponding to only a single first position on the roulette wheel;
>
> receive second bet information for a second bet on the spin of the roulette wheel via the second graphical user interface, the second bet information corresponding to only a single second position on the roulette wheel that is different from the single first position;
>
> determine that the roulette wheel and the ball have been spun for the spin of the roulette wheel;
>
> randomly select a first selected position on the roulette wheel for the spin of the roulette wheel prior to the ball falling into an outcome position on the roulette wheel, wherein the first selected position is the same as the single first position; determine a first payout for the first single position and a second payout for the single second position for the spin of the roulette wheel, wherein the first payout is higher than the second payout;
>
> determine that the ball has fallen in the single first position for the spin of the roulette wheel; and indicate that the first player is to be paid at the first payout for the spin of the roulette wheel.

'014 Patent, Pl.'s Ex. 3, ECF No. 1–4 at 88.

### A. *Alice* step 1: The patents' claims are directed to a "patent-ineligible" concept.

L&W argues that Evolution's patents are directed to abstract ideas because the Federal Circuit has consistently demonstrated that "wagering games" are abstract ideas. ECF No. 34 at 11. It also argues that Claim 1 outlines the "basic steps of playing the wagering game roulette, an abstract idea [and] [u]sing a computer or processor to perform them does not make it any less abstract." *Id.* at 13. In response, Evolution argues that the patent does not cover an abstract idea because the patent is directed to "new and improved roulette games, not an abstract idea" and

that courts have consistently held that a patent covered eligible material when the patent's goal was technological improvement. ECF No. 53 at 14. In its reply, L&W argues that although Evolution "claims that the Asserted Patents provide 'an improvement in existing technology that is unlike traditional roulette'" Evolution does not actually identify any technology that is allegedly improved. ECF No. 66 at 8 (quoting ECF No. 53 at 7). L&W maintains that Evolution's patents are ineligible because they do not improve any technology.

The '014 patent is directed towards ineligible material. Although there is no bright-line test to separate abstract ideas from concepts that are sufficiently concrete to require no further inquiry under the first step of the *Alice* framework, *Voip-Pal.Com, Inc.*, 375 F. Supp. 3d at 1125, the Federal Circuit has explained that patents "directed toward rules for conducting a wagering game" compare to other "fundamental economic practice[s] found abstract by the Supreme Court, *In re Smith*, 815 F.3d 816, 818 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 220). Specifically, in *Smith*, the court determined that a patent directed towards a variation of Blackjack was ineligible and explained that the "wagering game is, effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards." 815 F.3d at 818–19. Further, in *Planet Bingo, LLC v. VKGS LLC*, the Federal Circuit affirmed the district court's finding that patent claims directed to "managing a bingo game while allowing a player to repeatedly play the same sets of numbers in multiple sessions" were directed to an abstract idea. 576 F. App'x 1005, 1007–08 (Fed. Cir. 2014). The court explained that the claim stated "the steps of selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers" and this was directed to an abstract idea because these steps can be "'carried out in existing computers . . . .'" *Id.* at 1008 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). Here, there is no evidence that the roulette method the patent is directed toward cannot be carried out in existing computers, and Evolution appears to concede as much. *See* ECF No. 53 at 13 (citing *McRO, Inc v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313

(Fed. Cir. 2016) to demonstrate that the Federal Circuit has found a patent was directed to eligible material "even if the 'rules [we]re embodied in computer software that is processed by general-purpose computers'" (alterations in original))).

This case is analogous to *NEXRF Corp. v. Playtika Ltd*, where a judge in this district found that five patents that "generally claim[ed] slot machine games playable on a computer or handheld device run on a remote server" were directed toward ineligible patent material. 547 F. Supp. 3d at 982. In *NEXRF Corp.*, when discussing a patent that covered a slot machine that could be played remotely, U.S. District Judge Miranda Du determined it ineligible and explained that the "slot machine [was] effectively a method of exchanging and resolving financial obligations based on probabilities created by a generic random number generator." 547 F. Supp. 3d at 988. Like *NEXRF Corp.*, here, Evolution's "method for a roulette game" is, at its core, a method of exchanging and resolving financial obligations based on probabilities.

Further, Evolution's argument that the patent is directed to "a patentable, technological improvement" over existing roulette games is unpersuasive. ECF No. 53 at 13. Like *NEXRF Corp.*, Claim 1 of the '014 patent does not "explain how any of the purported technical improvements work." 547 F. Supp. 3d at 988. For example, Claim 1 of the '014 patent says that it is comprised of a hardware processor configured to "generate a first graphical user interface for presentation on a first player device of a first player[.]" ECF No. 1-4 at 88. It also says that the hardware processor will "determine a first payout for the first single position and a second payout for the single second position for the spin of the roulette wheel, wherein the first payout is higher than the second payout[.]" *Id.* Without explanation as to *how* the graphical users or payouts are determined, these statements are merely results, and not means to achieve the results. *See, e.g., Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1021 (N.D. Cal. 2020) (holding that because a patent describes "a result, not a means to achieve it[,] . . . it's abstract") *aff'd*, 4 F.4th 1342 (Fed. Cir. 2021). Based on the information before the court, I find that the '014 patent is directed to an abstract idea.

### B. *Alice* step 2: The patents' claims do not disclose an inventive concept transforming the abstract idea into something more.

A patent directed toward an abstract idea is not per se ineligible. If a party can demonstrate that the patent's claims disclose an inventive concept, the abstract idea can be transformed into a patent-eligible application. *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1160 (Fed. Cir. 2018).

In its motion to dismiss, L&W argues that Evolution fails at the second *Alice* step because "merely appending conventional features to an abstract idea is not enough for patent eligibility, nor is using a generic computer operating in conventional ways." ECF No. 34 at 14 (citing *In re Marco Guldenaar*, 911 F.3d at 1161 and *Alice*, 573 U.S. at 225). First, L&W asserts that the claimed ball and roulette wheel are well known elements of roulette that have existed for over a century and thus cannot supply an inventive concept. ECF No. 34 at 14. L&W also asserts that the claimed hardware processor is not inventive because it performs "well-known steps for playing roulette, all of which are claimed in a functional, results-oriented manner" and that "[c]entury-old roulette rules applied by 'any suitable' processor of a 'general purpose' computer do not supply inventive concepts." *Id.* at 14–15 (citing *In re Marco Guldenaar*, 911 F.3d at 1161). Second, L&W argues that the Federal Circuit has already rejected the notion that a graphical user interface could be an inventive concept. *Id.* at 15–16 (citing *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed Cir. 2019)). Third, L&W asserts that all the claimed functions are claimed in terms of what the processor is "configured to do" but nowhere does the '014 patent explain *how* the processor does anything. *Id.* at 16 (emphasis in original). L&W surmises that "[p]urely functional claim language, without an explanation of how a desired result is achieved, cannot show an inventive concept." *Id.*

In response, Evolution argues that because the patent "significantly improved existing technology for electronic wagering in a roulette game" it is an inventive application. ECF No. 53 at 18. Evolution also asserts that each of L&W's arguments in its dismissal motion fail. As to the

first argument, Evolution asserts that L&W asks the court to ignore and contradict the complaint's well-pleaded allegations which emphasize the unique features of the new technology. *Id.* at 19. As to L&W's second argument, Evolution argues that L&W improperly dissects the claimed inventions into different parts to contend that each is a well-known component and not inventive. *Id.* at 19–20. Specifically, Evolution argues that the Federal Circuit has held that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.* at 20 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)). As to the third argument, Evolution argues that, contrary to L&W's assertion, if the court decides that the patents were directed to an abstract idea in step 1, then the random position selection and the increased payouts are the "something more" needed to survive at step 2. ECF No. 53 at 20.

In its reply, L&W turns first addresses Evolution's argument that the random position selection and increased payouts provide an inventive concept, and avers that both the random position selection and increased payouts are necessary parts of the abstract idea and cannot supply an inventive concept. ECF No. 66 at 12. As to Evolution's argument that L&W's accusations ignore and contradict the well-pleaded accusations, L&W argues that the unsupported allegations of "improved existing technology" are inconsistent with the actual patents, which do not describe any improvement to technology. *Id.* Lastly, L&W argues that Evolution's reliance on *Bascom Glob. Internet Servs., Inc.* is misplaced because, in that case, the Federal Circuit found that the combined conventional components provided a "technology-based solution" to a "technical problem, 'filter[ing] content of the Internet." *Id.* at 13 (quoting 827 F.3d at 1349–52). To the contrary, according to L&W, the combination of claim elements at issue here—the roulette wheel, ball, and hardware processor—improves no technology and does not solve a technical problem. *Id.*

1    I find that Evolution's '014 patent fails step 2 of the *Alice* test. Again, *NEXRF Corp.* is
2 instructive. In *NEXRF Corp.*, the court found that the patent lacked an inventive concept
3 sufficient to transform the abstract idea into a patent-eligible application when the patent
4 consisted of "a combination of generic computer elements performing conventional functions."
5 547 F. Supp. 3d at 989. Like the *NEXRF Corp.* challenged patent, the features described in Claim 1
6 of the '014 patent are described and claimed generically because they describe *what* they can do
7 and not *how* they can do it. *See* ECF No. 1-4 at 88 (no explanation throughout Claim 1 describes
8 how the hardware works). Based on the generic descriptions, it is not clear how the components
9 provide a "concrete solution to the problem addressed by the patent." *Affinity Labs of Texas, LLC v.*
10 *Amazon.com, Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016).
11   Evolution's reliance on *Bascom Glob. Internet Servs., Inc.*, is unpersuasive because they fail to
12 explain how the finding in *Bascom Glob. Internet Servs., Inc.*, actually applies to the '014 patent.
13 Instead, Evolution merely says, "[a]nd here, as in *Bascom*, Evolution 'adequately alleged . . . that
14 an inventive concept can be found in the ordered combination of claim limitations that
15 transform [any alleged] abstract idea of [the wagering game roulette] into a particular, practical
16 application of that abstract idea.'" ECF No. 53 at 20 (quoting 827 F.3d at 1352) (alterations in
17 Evolution's brief). But as pled, the complaint neither adequately alleges an inventive concept,
18 nor does their opposition explain what inventive concept or concepts transfer the abstract idea
19 into a patentable one. Without more, this argument is merely conclusory.
20   Evolution's argument that the random position selection and advanced payouts are
21 inventive concepts also fails because Evolution does not articulate how these advancements
22 were well-known, routine, or conventional. Instead, it merely concludes as such. ECF No. 1 at 19,
23 ¶ 70 (alleging that "[t]hese advancements were neither well-known, routine, nor
24 conventional."); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016)
25 ("mere recitation of concrete, tangible components is insufficient to confer patent eligibility to
26

an otherwise abstract idea" when those components simply perform their "well-understood, routine, [and] conventional" functions.).

Last, Evolution's argument that the random position selection and advanced payouts are inventive concepts also fails because these features set forth in the claim are described and claimed too generically. Stated otherwise, they "lack the specificity necessary to show how these components provide a concrete solution to the problem addressed by the patent." *Affinity Labs of Texas*, 838 F.3d at 1271 (finding that "[f]eatures such as network streaming and a customized user interface do not convert the abstract idea of delivering media content to a handheld electronic device into a concrete solution"); *see also In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d at 613.

Based on my analysis of representative Claim 1 of the '014 patent, I conclude that the '014, '024, and '371 patents are invalid under *Alice*. Therefore, L&W's motion to dismiss must be granted.[7]

## IV.   Leave to Amend

If a court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend should generally be denied only if allowing amendment would unduly prejudice the opposing party,

---

[7] Because I find the patents invalid, I do not address the merits of whether two of the patent claims are time barred.

15

cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Here, is it unclear if the pleading deficiencies can be cured by amended.[8] Thus, I cannot say amendment would be futile. Accordingly, I grant dismissal of the complaint without prejudice and with leave to amend.

V.   **Conclusion**

IT IS THEREFORE ORDERED that the defendant's motion to dismiss **[ECF No. 34] is GRANTED.** The complaint is dismissed without prejudice and with leave to amend.

This matter is referred to the magistrate judge for a settlement conference. LR 16-5. If the parties do not settle, and Evolution elects to file an amended complaint, it must do so within fourteen days of the conclusion of the settlement conference.

Dated: February 11, 2025

_____
Cristina D. Silva
United States District Judge

---

[8] Considering the plain language of the claims in the patent, the Court has some doubt that Evolution can amend around this problem.

16