NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
**SPENCER FANE**
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400/ Fax: (702) 938-8648
Email: nsantoro@spencerfane.com
        jdsmith@spencerfane.com

CHING-LEE FUKUDA (admitted pro hac vice)
SHARON LEE (admitted pro hac vice)
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
Email: clfukuda@sidley.com
        sharon.lee@sidley.com

JOSHUA J. FOUGERE (admitted pro hac vice)
**SIDLEY AUSTIN LLP**
1501 K Street, N.W. #600
Washington, DC 20005
(202) 736-8000
Email: jfougere@sidley.com

*Attorneys for Plaintiffs Evolution Malta Ltd.,
Evolution Gaming Malta, Ltd., Evolution
Gaming  Ltd., and SIA Evolution Latvia*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| EVOLUTION MALTA LIMITED, EVOLUTION GAMING MALTA LIMITED, EVOLUTION GAMING LIMITED, and SIA EVOLUTION LATVIA,<br><br>Plaintiffs,<br><br>v.<br><br>LIGHT & WONDER, INC. f/k/a SCIENTIFIC GAMES CORP. and LNW GAMING, INC. f/k/a SG GAMING, INC.,<br><br>Defendants. | Case No.: 2:24-cv-00993-CDS-EJY<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

i

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ........................................................................1

BACKGROUND ...................................................................................................2

    A.    Evolution Revolutionizes Online Gaming with Its Lightning Roulette Games. ................................................................................2

    B.    Evolution Protects Trade Secret Rights For Its Innovations........................3

    C.    Evolution Attempts to Partner with L&W, but L&W Takes Evolution's Intellectual Property Instead. ...............................................3

    D.    Evolution Brings Suit to Enforce Its IP Rights. ...........................................4

ARGUMENT ......................................................................................................4

I.    THE COURT SHOULD DENY THE REQUEST TO COMPEL ARBITRATION OF COUNTS IV-V. ...................................................4

    A.    The License Agreement Does Not Require Arbitration of Counts IV-V. ...4

    B.    The Court Can and Should Decide Arbitrability. ........................................7

II.    THE COURT SHOULD DENY THE "IN THE ALTERNATIVE" MOTION TO DISMISS COUNTS IV-V AS TIME-BARRED. ...................................................10

    A.    Section 8(g) Does Not Apply to Evolution's Trade Secret Claims. ..........10

    B.    In Any Event, L&W's Affirmative Defense Cannot Be Resolved Against Evolution on a Motion to Dismiss. ...........................................12

CONCLUSION..................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accentra, Inc. v. Staples, Inc.*,
    No. 07-cv-5862, 2008 WL 7400627 (C.D. Cal. Feb. 27, 2008) ...............................................11

*Amcor Flexibles Inc. v. Fresh Express Inc.*,
    No. 14-cv-01025, 2014 WL 2967909 (N.D. Cal. July 1, 2014) .......................................12, 13

*Archer & White Sales, Inc. v. Henry Schein, Inc.*,
    935 F.3d 274 (5th Cir. 2019) .........................................................................................8, 9

*Bloate v. United States*,
    559 U.S. 196 (2010).........................................................................................................5

*Cape Flattery Ltd. v. Titan Mar., LLC*,
    647 F.3d 914 (9th Cir. 2011) .............................................................................................7

*CASS, Inc. v. Prod. Pattern & Foundry Co.*,
    No. 13-cv-00701, 2015 WL 3935078 (D. Nev. June 26, 2015) .......................................12, 13

*Clifton v. Houghton Mifflin Harcourt Pub. Co.*,
    152 F. Supp. 3d 1221 (N.D. Cal. 2015) ............................................................................12

*Court Concepts, Inc. v. Scottsdale Indemnity Co.*,
    No. 18-cv-421, 2018 WL 3570330 (S.D. Cal. July 25, 2018) .................................................5

*Han v. Mobil Oil Corp.*,
    73 F.3d 872 (9th Cir. 1995) ...........................................................................................14

*Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture, LLC*,
    300 P.3d 124 (Nev. 2013).........................................................................................10, 13

*Jackson v. Amazon.com, Inc.*,
    65 F.4th 1093 (9th Cir. 2023) ...........................................................................................5

*JP Morgan Chase Bank, N.A. v. KB Home*,
    632 F. Supp. 2d 1013 (D. Nev. 2009)................................................................................12

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)........................................................................................................5

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..........................................................................................6

*Madero v. Refco, Inc.*,
    95-cv-4519, 1996 WL 426516 (N.D. Ill. July 23, 1996) .........................................................14

*Maguire Insurance Agency, Inc. v. Amynta Agency, Inc.*,
    652 F. Supp. 3d 1313 (W.D. Wash. 2023)..............................................................8, 9

*Meta Platforms, Inc. v. Bright Data Ltd.*,
    No. 23-cv-00077, 2024 WL 251406 (N.D. Cal. Jan. 23, 2024)................................11

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)...............................................................................8, 9

*Olympic Forest Coalition v. Coast Seafoods Co.*,
    884 F.3d 901 (9th Cir. 2018) ...................................................................................5

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    No. 16-cv-00495, 2016 WL 4059658 (D. Or. July 27, 2016)...................................9

*Portland General Electric Co. v. Liberty Mutual Insurance Co.*,
    862 F.3d 981 (9th Cir. 2017) .................................................................................. 9

*R.F. MacDonald Co. v. Sierra Boiler Serv., Inc.*,
    No. 21-cv-00045, 2021 WL 3192226 (D. Nev. Mar. 3, 2021) ...............................14

*RUAG Ammotec GmbH v. Archon Firearms, Inc.*,
    538 P.3d 428 (2023)................................................................................................9

*Seagate Tech. LLC v. Dalian China Express Int'l Corp.*,
    169 F. Supp. 2d 1146 (N.D. Cal. 2001) .................................................................14

*Smith Int'l, Inc. v. Hughes Tool Co.*,
    718 F.2d 1573 (Fed. Cir. 1983)..............................................................................14

*SR Constr., Inc. v. Peek Bros. Constr., Inc.*,
    510 P.3d 794, 798 (Nev. 2022) ...............................................................................4

*Supermail Cargo, Inc. v. United States*,
    68 F.3d 1204 (9th Cir. 1995) ...........................................................................12, 13

*Tessera, Inc. v. Advance Micro Devices, Inc.*,
    No. 05-cv-4063, 2008 WL 239215 (N.D. Cal. Jan. 28, 2008)................................11

*Tuxedo Int'l Inc. v. Rosenberg*,
    251 P.3d 690 (Nev. 2011) .....................................................................................11

*Uber Techs., Inc. v. Royz*,
    517 P.3d 905 (2022)................................................................................................9

*United States v. Sterling Centrecorp, Inc.*,
    No. 08-cv-2556, 2013 WL 3166585 (E.D. Cal. June 20, 2013) ...............................5

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,
    871 F.3d 791, 798-800 (9th Cir. 2017) ..................................................................12

*W. Filter Corp. v. Argan, Inc.*,
   540 F.3d 947 (9th Cir. 2008) ................................................................................10

*W. Filter Corp. v. Argan, Inc.*,
   No. 05-cv-03548, 2005 WL 8165587 (C.D. Cal. Nov. 17, 2005) ...........................13

**Statutes**

18 U.S.C. § 1836(a) ................................................................................................14

NV ST 600A.080 ....................................................................................................14

**Other Authorities**

Rule 12(b)(6) ............................................................................................................1

Local Rule IC2-2(b) ..............................................................................................1, 7

## INTRODUCTION AND SUMMARY

Plaintiff Evolution brought this case to enforce its intellectual property rights over award-winning technologies that even Defendant Light & Wonder ("L&W") personnel have described as providing a "truly unique roulette experience." L&W has deliberately stolen and misappropriated valuable Evolution trade secrets.

L&W filed a motion to compel arbitration of Evolution's trade secret claims, but this requests is meritless.[1]  Taking the allegations as true and construing them in the light most favorable to Evolution—as the Court must—each of L&W's arguments fails:  (1) the trade secret claims are not subject to arbitration, and (2) the parties' License Agreement does not constrict the statutory limitations periods or otherwise render any claims untimely.

*First*, L&W does not raise any substantive objection to the trade secret claims (Counts IV-V) but, instead, relies on procedural distractions to sever these claims into arbitration and sow delay.  This is meritless.  The relied-on contract provisions explicitly exclude disputes related to "Licensed Property" from arbitration.  Under the plain terms of the agreement, and consistent with the parties' conduct, Evolution's trade secrets are "Licensed Property."  That fact eviscerates L&W's arbitration arguments.  Sensibly, L&W did not seek to arbitrate any issue related to Evolution's patents because, presumably, L&W recognizes the patents are "Licensed Property" and the License Agreement carves out such claims from its arbitration provisions.  Because the asserted trade secrets are *also* "Licensed Property," they must be treated the same way.

*Second*, and in the alternative, L&W argues that Counts IV-V are time-barred under Section 8(g) of the License Agreement.  This is a peculiar request.  After insisting that the trade secret claims belong in arbitration, L&W contends that they are actually precluded as a matter of law in *any* forum, including this one.  L&W does not explain why it would make any sense to send time-barred claims to arbitration because, in truth, there is no time bar.  Section 8(g) does not apply

---

[1] L&W first filed its Motion to Compel Arbitration as part of a Motion to Dismiss pursuant to Rule 12(b)(6).  ECF 34.  This Court found that requesting two forms of relief is a violation of Local Rule 1C 2-2(b) and provided notice to Defendants that the order on the Motion to Dismiss would only address the patent claims.  ECF 72.

to Evolution's claims, and, in all events, there are a litany of factual issues that render L&W's affirmative defense of untimeliness inappropriate here. The Motion to Compel Arbitration (ECF 74, "MTC") should be denied.

### BACKGROUND

**A.      Evolution Revolutionizes Online Gaming with Its Lightning Roulette Games.**

Founded in 2006, Evolution is a leading provider of online casino solutions to online gaming operators and land-based casinos. Compl. ¶ 2. Evolution quickly became the market leader in Europe, is growing rapidly in the U.S., and now employs more than 21,000 people worldwide, including over 3,000 people in North America. Evolution owes its success to the unique technological advancements in its games and products. *Id.* ¶¶ 2, 4, 6. And Evolution's technological innovations and resulting success have significantly advanced and established the modern online live casino industry, including by incentivizing and inspiring other industry players to similarly innovate by producing new and exciting games and products.

Evolution's premier product, Lightning Roulette, is the largest and most profitable roulette game in the world. *Id.* ¶ 4. Lightning Roulette is an online live version of roulette that enhances players' experience through randomly generated "Lucky Numbers" that can increase an assigned payout by multipliers between 50x and 500x. *Id.* The game "combines all the familiar elements of traditional roulette (*e.g.*, wheel, dealer, roulette bets), but adds additional features to enhance the players' experience" and render the game "unique." *Id.*

After its launch in 2018, Lightning Roulette quickly gained popularity and recognition. The gaming industry awarded Evolution several prestigious awards, including Product Innovation of the Year at the 2018 Global Gaming Awards, Product Innovation of the Year at the 2018 Global Gaming Expo (G2E), Game of the Year at the EGR Operator Awards in 2018, and Game of the Year at the American Gambling Awards in 2022. *Id.* ¶¶ 6-10. L&W personnel also sung the game's praises: a senior executive called it a "a truly unique roulette experience for players" and predicted that, with its "big-win multipliers, Lightning Roulette is sure to be one of the most visually engaging and entertaining live table games ever offered." *Id.* at ¶¶ 11, 21.

**B.  Evolution Protects Trade Secret Rights For Its Innovations.**

Evolution is the owner of valuable trade secrets related to Lightning Roulette.  *Id.* ¶¶ 120, 135.  These include Evolution's proprietary "math files."  *Id.* ¶¶ 121, 136.  As their name implies, the math files lay out the underlying math for the Lightning Roulette game, including the frequency with which the roulette numbers are selected as "Lucky Numbers," and the frequency with which the ball lands on a roulette number.  *Id.* ¶ 17.  Evolution has taken reasonable measures to maintain their confidentiality, and the files are all clearly marked as such.  *Id.*  Evolution spent significant time and resources developing the math files, and Lightning Roulette's success is largely attributable to them because, for example, they allow the game to be profitable despite the inclusion of multipliers with increased payouts and increase player engagement with the game.  *Id.* ¶¶ 17-18.

**C.  Evolution Attempts to Partner with L&W, but L&W Takes Evolution's Intellectual Property Instead.**

Evolution subsequently sought to capitalize on the success of Lightning Roulette online by finding partners to bring the game to land-based casinos, including in the United States.  *Id.* ¶ 12.

L&W was one of numerous companies interested in the U.S. opportunity.  *Id.*  Beginning in 2020, Evolution and L&W started negotiating the terms of a deal to produce a physical Lightning Roulette game table for U.S. land-based casinos, and they eventually signed a license agreement in March 2021.  *Id.* ¶¶ 14-19; *see* ECF 43, Ex. 1 (the "License Agreement").  From the beginning of the negotiations and agreements, confidentiality was paramount.  Compl. ¶¶ 14-19.  Pursuant to the venture, Evolution granted L&W an exclusive license to Evolution intellectual property and shared with L&W highly confidential and proprietary information related to Lightning Roulette, including its trade secret math files.  *Id.*  ¶¶ 17-19.  That license was limited, however—it was "*only* for purposes of developing a physical Lightning Roulette game table to be placed in land-based casinos."  *Id.* ¶ 19 (emphasis added).

L&W was excited about the partnership.  In March 2021, L&W issued a press release touting Lightning Roulette's "phenomenal success."  *Id.* ¶ 21.  L&W said that it was "sure to be one of the most visually engaging and entertaining live table games ever offered" and explained

how Lightning Roulette "provides a truly unique roulette experience for players." *Id.* But a few months later L&W's abruptly and unilaterally sought to terminate the License Agreement without building a single physical Lightning Roulette game. *Id.* ¶ 22. It turned out that L&W had been working on its own copycat roulette game, called RouletteX, and announced its launch at the same time it was trying to pull out of its partnership with Evolution. *Id.* ¶¶ 22-28. Even after Evolution demanded that L&W cease its unlawful conduct, L&W doubled-down on its misconduct by launching yet another copycat roulette game called PowerX. *Id.* ¶ 29.

### D. Evolution Brings Suit to Enforce Its IP Rights.

Evolution sent several letters to L&W trying to persuade L&W to stop infringing Evolution's patents and misappropriating Evolution's trade secrets. Compl. ¶¶ 28-30. In May 2024, after L&W had continually refused and in fact geared up to launch additional infringing products, Evolution brought this lawsuit to enforce its rights. The Complaint asserts five claims: three for patent infringement (Counts I-III)[2] and two for misappropriation of trade secrets under federal and Nevada law (Counts IV-V). *Id.* ¶¶ 42-146.

### **ARGUMENT**

## I. THE COURT SHOULD DENY THE REQUEST TO COMPEL ARBITRATION OF COUNTS IV-V.

### A. The License Agreement Does Not Require Arbitration of Counts IV-V.

As L&W acknowledges, it bears the burden of "establish[ing]" that the trade secret claims "fit[] within the scope of the arbitration agreement." MTC 4 (citing *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022)). They do not.

The plain language of the License Agreement explicitly forecloses L&W's position. As L&W eventually recognizes, the arbitration clause contains a carve-out provision: it does *not* apply to any dispute "in relation to the Licensed Property." MTC 5 (quoting ECF 43, § 15(c)). "Licensed Property," in turn, means "*any and all* protectable intellectual property (IP) rights in and to the 'Lightning Roulette' game, *including but not limited to* the IP rights set out in Schedule

---

[2] This Court dismissed Claims I-III without prejudice and with leave to amend. ECF 76.

2, the trademark 'Lightning Roulette,' the trade dress and copyrights in the table layout and appearance, *Know-How*, and any Derivative Works to the IP rights created hereafter." ECF 43, at 4 (emphases added). That phrase is doubly expansive. The words "any and all" are "broad and inclusive." *United States v. Sterling Centrecorp, Inc.*, No. 08-cv-2556, 2013 WL 3166585, at *8-9 (E.D. Cal. June 20, 2013); *see also, e.g.*, *Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 906 (9th Cir. 2018) (the word "any" is "broad and all-encompassing"). And the words "including but not limited to" introduce a list that is "illustrative rather than exhaustive." *Bloate v. United States*, 559 U.S. 196, 208-209 (2010). "Know-How" is further defined to include confidential information and is commonly understood to encompass trade secrets. ECF 43, at 4.

A straightforward reading of these provisions is dispositive. Trade secrets are plainly "protectable intellectual property": they are a "kind[] of intellectual property," *e.g.*, *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478 (1974), that is protected under the federal and state statutes asserted in the Complaint. They are also kept confidential, as trade secrets and as "Know-How." Compl. ¶¶ 17, 119-146. Evolution's asserted trade secrets are therefore "Licensed Property," and that means that the License Agreement's dispute resolution provisions—including those concerning arbitration—do not apply to "any dispute … in relation to" them. ECF 43, § 15(c). Because Counts IV and V "f[a]ll outside the scope of the arbitration provision," the Court should deny the request to compel arbitration. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1104 (9th Cir. 2023) (affirming denial of motion to compel).

L&W's attempt to sidestep these contractual terms is untenable. L&W begins by stating that "[n]owhere are trade secrets specifically defined as Licensed Property." MTC 5. That establishes nothing. Again, in addition to "Know-How," the "including but not limited to" language is "a term of enlargement rather than limitation" and "clearly indicates that categories of [IP] beyond the enumerated examples are intended to be" captured. *Court Concepts, Inc. v. Scottsdale Indemnity Co.*, No. 18-cv-421, 2018 WL 3570330, *7-9 (S.D. Cal. July 25, 2018).

Next, L&W cites to Section 7(c) of the License Agreement to claim that "the math files alleged here are not Licensed Property." MTC 6 . But L&W crop-quotes the provision and leaves off the part that matters most here. Section 7(c) states in full:

> Neither the execution of this Agreement nor the disclosure of any confidential or proprietary information by one party to the other hereunder shall be construed as granting to the recipient of such information, by implication or otherwise, any right in, or license to, any present or future proprietary information, patent, trademark, copyright invention, now or hereinafter, owned or controlled by the disclosing party, *except as provided in this Agreement*.

ECF 43, § 7(c) (emphasis added).[3]  The Agreement, in fact, grants a limited license to Evolution's trade secrets—that was the reason that Evolution disclosed the math files to L&W in the first place. *See, e.g.*, Compl. ¶¶ 17-20, 124, 138.  The asserted trade secrets are thus "Licensed Property," and L&W cannot escape that unambiguous conclusion by deleting key language.

Finally, L&W tries to bolster its position by claiming that "Evolution only specifically identifies the Asserted Patents as 'Licensed Property'" in the Complaint.  MTC 6 (citing Compl. ¶ 19).  This is just more of the same—and equally disingenuous.  What Paragraph 19 says is that "Evolution granted LNW Gaming an exclusive license to certain of Evolution's intellectual property, *including* the Asserted Patents, but only for purposes of developing a physical Lightning Roulette game table to be placed in land-based casinos."  Compl. ¶ 19 (emphasis added).  The word "including" is, again, expansive and introduces only an example.  Nothing about that statement limits the Licensed Property to the "Asserted Patents" or in any way implies that "Licensed Property" does *not* include trade secrets.  L&W's argument is baseless.

If more were needed, Evolution's February 28, 2022 letter—and the parties' course of conduct more broadly—further contradicts L&W's argument and confirms the scope of Section 15.[4]  *See* ECF 58 (Fougere Decl., Ex. C).  The February 28 letter provides notice of two separate sets of claims: (1) L&W's material breach of the License Agreement, and (2) L&W's violation of Evolution's intellectual property rights.  The first sentence of the letter says as much, and the two categories are then delineated with bolded section headers.  *Id.*  Only the breach of contract claims are the ones for which Evolution provided notice and invoked the dispute resolution provisions of

---

[3] L&W's omission is particularly egregious given that Evolution already explained in a letter the import of the *entirety* of Section 7(c).  *See* ECF 46-3 at 2 (Ex. B to Decl. of Sharon Lee).

[4] The letter is cited in the Complaint and thus incorporated by reference.  Compl. ¶¶ 28, 61, 88, 111; *e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Section 15.  The IP claims were distinct, and the letter makes clear that the trade secret claims fall into that separate, distinct bucket.  *Id.* at 5.  Tellingly, none of L&W's responsive letters took any issue with Evolution's categorizations or argued that any IP claims (including trade secrets) fell within Section 15.  Those communications further undermine L&W's made-for-litigation assertion that Evolution's trade secret claims must be arbitrated.

**B.    The Court Can and Should Decide Arbitrability.**

L&W separately argues that the Court does not have the authority to decide the threshold question of whether the trade secret claims are arbitrable.  MTC 2-4.  According to L&W, this Court has "no power" to decipher the agreement terms and must send Counts IV and V to an arbitrator, so that the arbitrator can confirm that L&W's meritless reading of the License Agreement is in fact meritless—and then send the claims back here.  L&W reasons that: (1) Section 15 of the License Agreement incorporates the ICC Rules, (2) the ICC Rules delegate arbitrability to the arbitrator, and so (3) all such questions must go to the arbitrator.  L&W is mistaken.

Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."  *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 920 (9th Cir. 2011).  Here, there is no such evidence.  Section 15(a) defines a "Claim" as "any dispute, controversy or claim," and Section 15(c) then discusses what happens to a Claim that "arises out of or in connection with th[e] Agreement" and is not resolved through mandatory negotiations.  ECF 43, § 15.  Only that subset of the Claims "shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce."  *Id.*  But Section 15 goes on to state unequivocally that the preceding provisions—*i.e.*, "Paragraphs 15(a) to (c)"—"shall not in any way limit [Evolution's] freedom to enforce its rights under this Agreement in respect of any dispute relating to non-payment of the Royalty and/***or in relation to the Licensed Property, in any jurisdiction***."  *Id*.  That provision thus explicitly carves out claims related to "Licensed Property" from the scope of the arbitration clause *and* from the application of the ICC Rules.

Other courts considering arbitration provisions with carveouts have recognized that they do *not* clearly and unmistakably delegate the question of arbitrability to an arbitrator for carved-out claims.  On remand from the Supreme Court, the Fifth Circuit considered a clause analogous

to the License Agreement's, stating that "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [the predecessor]), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277 (5th Cir. 2019). The court held that the "plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out." *Id.* at 281. The Second Circuit has likewise held that the parties "never clearly and unmistakably expressed an intent to submit [the arbitrability] question to arbitration" when a "broad arbitration clause contains a carve-out provision that, at least arguably, covers the instant dispute." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1035–36 (2d Cir. 2014); *see also id.* at 1032 (holding that the carveout "delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided").

A district court in the Ninth Circuit recently reached the same result. In *Maguire Insurance Agency, Inc. v. Amynta Agency, Inc.*, the court recognized that a carve-out for specific kinds of claims (there, unfair competition) "expressly qualifie[d] application of the AAA Rules and, by extension, Rule 6(a)'s jurisdictional-arbitrability delegation." 652 F. Supp. 3d 1313, 1323 (W.D. Wash. 2023). The same is true here: Section 15's carve-out "expressly qualifies application of the [ICC] rules and, by extension, … the jurisdictional-arbitrability delegation" on which L&W relies. *See* MTC 3-4. Sending the trade secret claims to arbitration—even to decide arbitrability— would plainly "limit [Evolution's] freedom to enforce its rights" in this Court, and that is precisely what the carve-out forbids. ECF 43, § 15(c).

L&W's argument to the contrary is self-defeating. According to L&W, "[b]y incorporating the ICC Rules into their arbitration agreement, the parties delegated ***all*** arbitrability questions to the arbitrator." MTC 4 (emphasis added). But even L&W does not believe that categorical statement, because its logic would extend to the patent infringement claims in Counts I-III too. On L&W's reasoning, the mere incorporation of the ICC rules means that "all arbitrability questions" go to the arbitrator, no matter how "wholly groundless" they are. MTC 2-4 . But L&W did not try

-8-

to compel arbitration for the patent infringement claims—surely because even L&W does not dispute patents are "Licensed Property," and Section 15's carveout means they are not subject to arbitration *or* to the ICC's arbitrability delegation. As *Maguire* stated, in language that could have been written to reject L&W's argument, "nothing in the Ninth Circuit's jurisprudence suggests that talismanic incorporation of the [ICC] Rules creates an unqualified delegation of the arbitrability determination, even in the midst of limiting language." 652 F. Supp. 3d at 1321.

L&W cites a few cases, but none helps. L&W's featured case is *Portland General Electric Co. v. Liberty Mutual Insurance Co.*, 862 F.3d 981 (9th Cir. 2017). It is true that *PGE* states generally that "the incorporation of the rules of the ICC into an arbitration agreement … constitutes clear and unmistakable evidence of a delegation of gateway issues to the arbitrator." MTC 3. But it is emphatically not true that "Section 15(c) is materially indistinguishable from the provision in *Portland Gen. Elec.* that the Ninth Circuit found sufficient to incorporate the ICC's Rules," as L&W claims. *Id.* In stark contrast to Section 15(c), the provision at issue in *PGE contained no carveout. See Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, No. 16-cv-00495, 2016 WL 4059658, at *2 (D. Or. July 27, 2016) (reciting language). Instead, it was simply a case finding "the 'clear and unmistakable' provision satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability." *NASDAQ*, 770 F.3d at 1031. But the Ninth Circuit, like the Second, "ha[s] not reached the same conclusion where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute." *Id.*; *see also Maguire*, 652 F. Supp. 3d at 1321-22. That is what Section 15(c) does.

L&W's other cases change nothing. *RUAG Ammotec GmbH v. Archon Firearms, Inc.*, 538 P.3d 428 (2023) simply cited and followed *PGE*'s general statement about the incorporation of ICC rules, with no discussion of any carveout. And *Uber Techs., Inc. v. Royz*, involved an "express delegation clause" that "specifically state[d] that the arbitrator is responsible for deciding all threshold arbitrability issues"—something clearly missing here. 517 P.3d 905, 910-11 (2022). L&W's final case is the Supreme Court's 2019 decision in *Henry Schein*, but L&W ignores what happened in that case on remand. As explained above, the Fifth Circuit affirmed the *denial* of a

-9-

motion to compel arbitration and held that the "plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-out."  935 F.3d at 281.  The License Agreement does the same thing for the ICC rules.

*       *       *

In the end, L&W's treatment of the patent infringement claims as non-arbitrable betrays the flaw in its effort to compel the trade secret claims into arbitration.  Both the asserted patents and trade secrets are "Licensed Property" under the Agreement.  Just as L&W recognizes that Evolution was not *required* to arbitrate anything about the patent claims, Evolution also was not required to arbitrate anything about the trade secret claims.  L&W's request is nothing more than a baseless delay tactic, and it should be denied.

## II.    THE COURT SHOULD DENY THE "IN THE ALTERNATIVE" MOTION TO DISMISS COUNTS IV-V AS TIME-BARRED.

L&W's final argument is that certain claims are "time barred under Section 8(g) of the License Agreement" and should be dismissed.  MTC 7-9.  Like L&W's original motion to dismiss, Evolution respectfully submits that L&W is seeking two forms of relief—to compel arbitration or, alternatively, to dismiss—in the same motion. See ECF 72 (citing Local Rule IC2-2(b)).  Even if the Court considers L&W's time bar argument, however, it is incorrect and, in all events, premature.

### A.    Section 8(g) Does Not Apply to Evolution's Trade Secret Claims.[5]

An agreement to shorten a limitations period "must be clear and explicit, and is to be strictly construed against the party invoking the provision."  *W. Filter Corp. v. Argan, Inc.*, 540 F.3d 947, 953 (9th Cir. 2008).[6]  Section 8(g)'s application to "any claim arising under or relating to this

---

[5] In its Motion to Dismiss, L&W argued that Evolution's claims regarding the '014 and '024 patents are also time-barred and should be dismissed. ECF 34 at 19-22.  L&W's motion to dismiss the patent claims as time-barred fails for the same reasons as its claims to dismiss the trade secret claims as time-barred.

[6] This case applies California law, but Nevada has followed and adopted the same principles, in reliance on the same California cases, in addressing whether and when parties can agree to shorten a limitations period.  *Compare, e.g.*, *W. Filter Corp.*, 540 F.3d at 952 (citing *Moreno*) with *Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture, LLC*, 300 P.3d 124, 128-29 (Nev. 2013) (citing California law, including *Moreno*).

Agreement," ECF 43, § 8(g), does not clearly and explicitly cover Evolution's trade secret misappropriation claims.

Courts often confront analogous "arising under or relating to" language in the context of forum selection clauses, and Nevada courts conduct a "thorough textual review" to determine such a provision's scope. *Tuxedo Int'l Inc. v. Rosenberg*, 251 P.3d 690, 697-99 (Nev. 2011). If that review does not resolve the question, "the next step is to determine whether resolution of the [relevant] claims … relates to the interpretation of the contract." *Id.* Applying such principles, courts regularly conclude that IP claims like patent infringement claims do not "arise under" or relate to contracts like license agreements. *See, e.g.*, *Tessera, Inc. v. Advance Micro Devices, Inc.*, No. 05-cv-4063, 2008 WL 239215, at *3 (N.D. Cal. Jan. 28, 2008); *Accentra, Inc. v. Staples, Inc.*, No. 07-cv-5862, 2008 WL 7400627, at *2-3 (C.D. Cal. Feb. 27, 2008).

These principles control the proper understanding of Section 8(g). Nothing about the trade secret claims—which are based on L&W's development of its own copycat products—arises under or relates to a License Agreement for a different, land-based product that L&W was contracted to develop for Evolution. Instead, by its terms, Section 8(g) applies to contract-based claims and to the Evolution products that were contemplated to be developed under the License Agreement. Evolution's trade secret claims are different and do not require the interpretation of any License Agreement provision.

Section 8(g)'s location in the Agreement provides additional contextual support for that understanding. In particular, the provision falls within Section 8, which is titled "Term and Termination" and whose paragraphs concern the term *of the License Agreement* and the termination *of the License Agreement*. Like its neighboring provisions, therefore, Section 8(g) is best read to concern contract-based claims under that same License Agreement. If subsection (g) were intended to cover a broader scope of potential extra-contractual claims, then Section 8 would be a strange place to put it. *See, e.g.*, *Meta Platforms, Inc. v. Bright Data Ltd.*, No. 23-cv-00077, 2024 WL 251406, at *18 (N.D. Cal. Jan. 23, 2024) (adopting interpretation that "is consistent with the structure" of contractual terms and citing to a Ninth Circuit decision "interpreting a clause narrowly based on its location and 'surround[ing]' provisions in the contract").

L&W's contrary arguments are unavailing.  MTC 7-9.  L&W cites just one case, but it confirms that Section 8(g) does not time bar Evolution's trade secret claims.  In it, the Ninth Circuit considered whether particular claims fell within an "arising out of" and "related to" provision *and held that they did not*.  *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798-800 (9th Cir. 2017).  The same reasoning applies here:  the trade secret claims "have no *direct* connection" to the License Agreement, because both claims could have been brought "even if [the parties] 'had never'" signed the License Agreement.  *Id.*  The Agreement only "*reiterated*" confidentiality obligations relevant to the trade secrets claims, for example; it was not the only source of them.  MTC 5, 9 (citing Compl. ¶ 20).  These claims do not arise out of or relate to that agreement, rendering Section 8(g) inapplicable.

**B.    In Any Event, L&W's Affirmative Defense Cannot Be Resolved Against Evolution on a Motion to Dismiss.**

If the Court does not rule that Section 8(g) is inapplicable on its face, L&W's argument should be rejected as inappropriate on this Motion Compel Arbitration for at least two reasons.

*First*, L&W's reliance on Section 8(g) is an affirmative defense, and "a complaint cannot be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207, 1209 (9th Cir. 1995).  When "there are insufficient facts to allow the court to dismiss the complaint (at least now) based on the defense's affirmative defense on which they bear the burden of proof," dismissal is improper.  *Clifton v. Houghton Mifflin Harcourt Pub. Co.*, 152 F. Supp. 3d 1221, 1226 (N.D. Cal. 2015).  And that is especially true if the issue implicates a contractual provision, because parties' "intentions regarding a contractual provision present a question of fact."  *JP Morgan Chase Bank, N.A. v. KB Home*, 632 F. Supp. 2d 1013, 1020 (D. Nev. 2009).  In short, if there are "disputed factual and legal issues" about timeliness, the question is "inappropriate for review on a motion to dismiss."  *CASS, Inc. v. Prod. Pattern & Foundry Co.*, No. 13-cv-00701, 2015 WL 3935078, at *3 (D. Nev. June 26, 2015).

Consistent with these standards, courts have rejected attempts to dismiss claims as untimely under a disputed contractual provision.  In *Amcor Flexibles Inc. v. Fresh Express Inc.*, for example,

the defendant moved to dismiss based on a provision alleged to have shortened the limitations period from four years to two. No. 14-cv-01025, 2014 WL 2967909, at *4-6 (N.D. Cal. July 1, 2014). Given the parties' dueling positions on whether the provision applied to the claims, the court found that there was ambiguity, refused to impose the shorter contractual period, and denied the motion to dismiss. *Id.* Similarly, in the *Western Filter* case, the district court declined to decide the timeliness issue because, "[a]bsent a record of the circumstances surrounding the negotiations, it cannot be said that Plaintiff's claims are necessarily time-barred." *W. Filter Corp. v. Argan, Inc.*, No. 05-cv-03548, 2005 WL 8165587, at *3 (C.D. Cal. Nov. 17, 2005).

Applied here, even if the Court does not conclude that Section 8(g) is ***inapplicable***, *supra* § II.A, the Court certainly cannot say that it "appears beyond doubt that [Evolution] can prove no set of facts that would establish the timeliness of the claim[s]." *Supermail*, 68 F.3d at 1207. Indeed, L&W has not cited (and cannot cite) any Nevada case, including *Holcomb*, in which the court has enforced a contractual time bar shortening a statute of limitations on a motion to dismiss. There are at least "disputed factual and legal issues" about whether Section 8(g) extends to Evolution's trade secret claims, and that makes the issue "inappropriate for review on a motion to dismiss." *CASS*, 2015 WL 3935078, at *3.

*Second*, there would be still more factual issues about whether the purported limit in Section 8(g) is even valid as applied to trade secret claims. As L&W recognizes, parties' ability to contract for a shorter limitations period is subject to exceptions: the shortened period must be "reasonable, and subject to normal defenses including unconscionability and violation of public policy." MTC 7 (quoting *Holcomb*, 300 P.3d at 128). These are issues for discovery.

As for reasonableness, L&W simply declares the one-year limitation period is not "unreasonable." MTC 7. But reasonableness is an inherently factual issue. The standard in this context is whether "the reduced limitations period effectively deprives a party of the reasonable opportunity to vindicate his or her rights." *Id.*, at 8 Although L&W may believe that "Evolution can make no such showing," *id.*, there is zero evidence on the issue at this stage—no evidence about whether, for example, Evolution's investigation and pursuit of its claims may have been hampered by a one-year limitations period. Tellingly, L&W cites two cases to support the

-13-

proposition that Section 8(g) was reasonable as a matter of law, but *both were decided at summary judgment*—after a full record was developed.  *See Han v. Mobil Oil Corp.*, 73 F.3d 872 (9th Cir. 1995); *Seagate Tech. LLC v. Dalian China Express Int'l Corp.*, 169 F. Supp. 2d 1146 (N.D. Cal. 2001).

As for public policy, L&W's Motion does not address the point, but Evolution should be allowed to pursue an argument that "[p]ermitting the parties to contract for a shorter limitations period would … be contrary to public policy."  *Madero v. Refco, Inc*., No. 95-cv-4519, 1996 WL 426516, at *1 (N.D. Ill. July 23, 1996).  The Nevada Legislature and Congress have established a three-year statute of limitations period for trade secrets. NV ST 600A.080; 18 U.S.C. § 1836(a). This statutory period is backed by established public policy: "[p]ublic policy favors the protection of trade secret information," *R.F. MacDonald Co. v. Sierra Boiler Serv., Inc.*, No. 21-cv-00045, 2021 WL 3192226, at *1 (D. Nev. Mar. 3, 2021).  Applying Section 8(g) here may well contravene those public policies.  L&W cannot short-circuit all of these issues at the pleading stage.

## **CONCLUSION**

For the foregoing reasons, the Court should deny L&W's Motion to Compel Arbitration.

-14-

Dated this 21st day of February 2025.

OF COUNSEL:

CHING-LEE FUKUDA *(admitted pro hac vice)*
SHARON LEE *(admitted pro hac vice)*
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
Email: clfukuda@sidley.com
        sharon.lee@sidley.com

JOSHUA J. FOUGERE *(admitted pro hac vice)*
SIDLEY AUSTIN LLP
1501 K Street, N.W. #600
Washington, DC 20005
(202) 736-8000
Email: jfougere@sidley.com

**SPENCER FANE**

*/s/ Jason D. Smith*
NICHOLAS J. SANTORO, ESQ.
Nevada Bar No. 532
JASON D. SMITH, ESQ.
Nevada Bar No. 9691
300 South Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Tel.: (702) 408-3400/ Fax: (702) 938-8648
Email: nsantoro@spencerfane.com
        jdsmith@spencerfane.com

*Attorneys for Plaintiffs Evolution Malta Ltd., Evolution Gaming Malta, Ltd., Evolution Gaming Ltd., and SIA Evolution Latvia*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of February, 2025, I caused a true and correct copy of the foregoing **Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

*/s/ Marissa Vallette*
An employee of SPENCER FANE