UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Evolution Malta Limited, et al.

        Plaintiffs

v.

Light & Wonder, Inc., et al.,

        Defendants

Case No. 2:24-cv-00993-CDS-NJK

**Order Resolving Defendants' Motions and Granting Plaintiffs' Motion to Seal the First Amended Complaint**

[ECF Nos. 74, 87, 114]

      This is a misappropriation of trade secrets and patent infringement action brought by plaintiffs Evolution Malta Limited, Evolution Gaming Malta Limited, SIA Evolution Latvia, and Uplay1, against defendants Light & Wonder, Inc., and LNW Gaming, Inc. *See* Second Am. Compl. (SAC), ECF No. 125.[1] Pending before the court are defendants' motion to compel arbitration (ECF No. 74), defendants' motion to dismiss plaintiffs' first amended complaint (ECF No. 114)[2], defendants' motion to dismiss plaintiffs' second amended complaint (ECF No. 156)[3], and plaintiffs' motion to seal the first amended complaint (ECF No. 87).[4] With the exception of defendants' motion to dismiss the SAC, all motions are fully briefed. Opp'n Mot. to Compel, ECF No. 78; Reply to Mot. to Compel, ECF No. 79; Resp. Mot. to Seal, ECF No. 102;

---

[1] The specific claims set forth in the SAC are: (1) misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) misappropriation of trade secrets in violation of the Nevada Trade Secrets (NRS) 600A; (3) infringement of U.S. Patent 10, 629, 024; (4) infringement of US Patent No. 11, 011, 014; (5) infringement of U.S. Patent No. 11, 756, 371; (6) infringement of U.S. Patent No. 9, 905, 074; and (7) infringement of U.S. patent No. 11, 783, 663. *See* ECF No. 125.

[2] Defendants' motion to dismiss plaintiffs' first amended complaint is denied as moot.

[3] The deadline to file a reply to the opposition is September 29, 2025. Accordingly, once this motion is fully briefed, I will consider the pleadings and issue a separate order resolving the motion.

[4] Evolution's motion for leave to file under seal select portions of exhibits 2, 4, and 6 to plaintiffs' first amended complaint (FAC) [ECF No. 87] is granted. Parties "who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Kamakana v. City & Cnty.e of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Plaintiffs' request is narrowly tailored, as Plaintiffs are seeking to seal limited portions of the exhibits because the exhibits contain information designated as Confidential. The court finds that compelling reasons exist to temporarily seal select portions of the plaintiffs' first amended complaint and selected portions of exhibits 2,4, and 6. Further instructions are included in the conclusion.

Reply to Mot. to Seal, ECF No. 108. For the reasons set forth herein, I grant the defendants' motion to compel arbitration on the two misappropriation of trade secrets claims,[5] deny the defendants' motion to dismiss the plaintiffs' first amended complaint, and grant the plaintiffs' motion to seal select portions of exhibits 2, 4, and 6 of the plaintiffs' first amended complaint.

I. Background[6]

Evolution provides a fully-integrated software casino solution to online gaming operators and land-based casinos. ECF No. 125 at ¶ 12. Evolution was one of the first providers of B2B live casino, a form of online gambling. Light & Wonder[7] is a cross-platform global gaming company which supplies gaming machines, gaming content, and casino management systems, and table game products and services to licensed gaming entities. *Id.* at ¶ 13.

In 2018, Evolution launched a new game called "Lightning Roulette" in an online, live version format. *Id.* at ¶ 14. Unlike like traditional roulette, Lightning Roulette permits one or more players to place bets electronically through player devices and includes software that randomly or pseudo-randomly selects one or more numbers on the roulette wheel as "Lucky Numbers" that are each assigned an increased payout. *Id.* If the ball lands in one of the selected "Lucky Numbers" on the roulette wheel for that round, the software indicates the payouts to be made to each player who bet on that number according to the multiplier assigned to that number. *Id.* Evolution also launched "XXXtreme Lightning Roulette," which increases the opportunities for bigger payouts. *Id.* at ¶ 17.

---

[5] The two claims at issue in the arbitration motion are Misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, and Misappropriation of trade secrets in violation of the NRS 600A, which are identified as claims four (IV) and five (V) in the original complaint. *See* ECF No. 1. However, in the second amended complaint, these claims are identified as claim one (I) and claim two (II). *See* ECF No. 125. For ease, I refer to both claims together as the misappropriation trade secret claims.

[6] Unless otherwise noted, citations to the first amended complaint (FAC) (ECF No. 1) or SAC (ECF No. 125) are to provide context to this action, not to indicate a finding of fact.

[7] I refer to Light & Wonder as L&W and LNW Gaming throughout this order.

The U.S. Patent and Trademark Office awarded Evolution several patents for the innovations created in Lightning Roulette, including the '024, '014, and '371 patents. *Id.* at ¶ 18. Evolution began looking for a partner to help bring Lightning Roulette to land-based casinos worldwide. *Id.* at ¶ 24. L&W and Evolution began to negotiate "terms of an agreement" for producing a physical Lightning Roulette game table to be placed in land-based casinos. *Id.* at ¶¶ 25–26. The parties agreed to the terms of a Mutual Non-Disclosure Agreement (NDA), which provided that "L&W was allowed to use Evolution's confidential information only to the extent necessary to evaluate the possibility of developing land-based version of Lightning Roulette, and 'not for any other purpose.'" *Id.* at ¶ 26. The parties also negotiated a "Head of Terms" to "set out their common understanding of the terms of the arrangement." *Id.* at ¶ 28. This Head of Terms included a confidentiality provision whereby the parties agreed not to use the other party's confidential information for any purpose other than to perform their obligations under the Heads of Terms. *Id.* The "Heads of Terms identified some of Evolution's intellectual property that protects Lightning Roulette which includes the '024 patent and the application that led to the '014 patent." *Id.*

After the parties agreed to the terms of the NDA and Heads of Terms, "Evolution disclosed to LNW Gaming Evolution's proprietary and confidential trade secret information" involving Lightning Roulette solely so that LNW Gaming could use that information to develop physical Lightning Roulette game tables. *Id.* at ¶ 29. For instance, Evolution provided to L&W two math files for Lightning Roulette. *Id.* The math files were marked as "COMPANY CONFIDENTIAL" and explained the underlying math for the Lightning Roulette game. *Id.* at ¶ 30. The math files explain the "frequency with which each multiplier is selected, the frequency with which the roulette numbers are selected as 'Lucky Numbers,' the quantity of 'lucky numbers' selected per spin, the probability of winning a particular payout, and the associated payouts." *Id.* Evolution asserts that this information is proprietary and cannot be ascertained through proper means, such as observing the Lightning Roulette features. *Id.*

On March 29, 2021, Evolution and LNW Gaming "entered into an agreement[8]," Evolution granted "LNW Gaming an exclusive license to certain [parts of] Evolution's intellectual property, including Asserted Patents, but only for the purpose of developing a physical Lightning Roulette game table to be placed in land-based casinos." *Id.* at ¶ 32. Evolution claims that the License "Agreement reiterated LNW Gaming's obligations to maintain the confidentiality of Evolution's confidential and proprietary information, which includes the Lightning Roulette math files, and not to use Evolution's confidential and proprietary information for LNW Gaming's own or anyone else's benefit." *Id.* at ¶ 33. The License "Agreement further provided that Evolution's disclosure of confidential and proprietary information to LNW Gaming shall not be construed as a grant of any rights in or license to that information." *Id.*

Evolution asserts that after it publicly announced that the parties entered into the License Agreement, LNW Gaming attempted to terminate the parties' License Agreement and their arrangement, by launching an infringing, competing product called "Roulette X." *Id.* at ¶ 36. Evolution asserts that "RouletteX's appearance, features, and functionality are strikingly similar to Lightning Roulette." *Id.* at ¶ 38. For instance, RouletteX "randomly selects up to five roulette numbers and assigns multipliers from 50x to 500x to those randomly selected numbers for each roulette spin", and "identifies the randomly selected numbers with an animated lightning strike, like Lightning Roulette." *Id.*

After learning about RouletteX, Evolution sent L&W "a [demand] letter" asking that L&W take all steps necessary to refrain from further violating Evolution's intellectual property (IP). *Id.* at ¶ 43. The demand letter stated that "L&W's unauthorized use of Evolution's trade secrets, including the Lightning Roulette math files, to develop and launch its own copycat RouletteX game constitute[d] trade secret misappropriation under the applicable federal and state law." *Id.* Evolution further asserts that even after sending the demand letter, L&W did not

---

[8] Hereinafter "the License Agreement."

cease its violations, and instead, misappropriated and infringed their IP by creating another "copycat" game called "PowerX". *Id.* at ¶ 44. Evolution then sent a second demand letter to L&W. *Id.* at ¶ 45. After Evolution filed this lawsuit, L&W revealed another "copycat game" called "88 Fortunes Blaze Live Roulette," *id.* at ¶ 47, and as a result, Evolution sent L&W a third demand letter regarding "ongoing violations of Evolution's intellectual property and demanded L&W cease all infringing activities." *Id.* at ¶ 49.

In the SAC, Evolution brings trade secret misappropriation and patent violation claims under federal and state law. *See* ECF No. 125 at ¶¶ 137, 152 (bringing misappropriation of trade secrets claim in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 and NRS 600A.). Evolution asserts that it is the owner of the trade secrets, and "[a]s a result of the NDA, Heads of Terms, and pursuant to the License Agreement, L&W obtained [their] intellectual property, including Evolution's proprietary work product, processes, formulae, trade secrets, and know-how or similar rights." *Id.* at ¶¶ 137, 153. Evolution asserts that the proprietary math files for "Lightening Roulette" constitute trade secrets, *id.* ¶¶ 137, 153, and that it relied on the confidentiality terms of the NDA to provide LNW Gaming access to its trade secrets for the purpose of developing physical Lightning Roulette game tables, but L&W improperly acquired its trade secrets through misrepresentation. *Id.* at ¶¶ 143–144; ¶¶ 158–160. Evolution also asserts that LNW Gaming improperly used Evolution's trade secrets to develop RouletteX and PowerX. *Id.* at ¶¶ 145, 163.

Defendants move to compel arbitration on the misappropriating trade secrets claims arguing that the License Agreement requires arbitration, or in the alternative, argues that those claims should be dismissed as time-barred. *See* ECF No. 74. Plaintiffs oppose the motion. ECF No. 78.

I.   Legal standard

The Federal Arbitration Act (FAA) "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Under Section 2 of the FAA, it provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, a party seeking to compel arbitration "has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citations omitted).

Like the FAA, in Nevada "[t]here is a strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties." *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (1996)). "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Local No. 1285*, 929 P.2d at 957. "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [courts] 'liberally construe arbitration clauses in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting *Tallman v. Eighth Judicial Dist. Court*, 359 P.3d 113, 118–19 (Nev. 2015)). Courts are guided by a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

When analyzing a motion to compel arbitration, the court employs a similar standard to the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure. *Gonzalez v. Comenity Bank*, 2019 U.S. Dist. LEXIS 188514, at *4 (E.D. Cal. Oct. 30, 2019). Therefore,

the moving party must show there is no genuine issue of material fact and it is entitled to an order compelling arbitration as a matter of law. If a genuine issue of material fact exists, I must summarily proceed to a bench trial on the issue. 9 U.S.C. § 4; *see also Mayorga v. Ronaldo*, 491 F. Supp. 3d 840, 855, 860 (D. Nev. 2020).

Further, the question of whether parties have submitted a dispute to arbitration is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Wynn Resorts v. Atlantic-Pacific Capital, Inc.*, 497 Fed. Appx. 740, 741 (9th Cir. 2012) (cleaned up); *see Portland GE v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (explaining that an incorporation by reference of the American Arbitration Association (AAA) is an indication of arbitrability being a question for the arbitrator).

## II.     Discussion

The arbitration agreement at issue here is included in the License Agreement. *See* License Agreement, ECF No. 43 at 18, § 15(c). The agreement to arbitrate provides

> [a]ny Claim not resolved as stated above, and which arises out of or in connection with this Agreement, shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three arbitrators appointed in accordance with the said Rules. The third arbitrator, who shall act as president of the arbitral tribunal, shall be jointly nominated by the other two arbitrators within thirty (30) days of the appointment of the second arbitrator. If the president of the arbitral tribunal is not nominated within this time period, then the Court shall appoint such arbitrator. The seat of arbitration shall be London, England. The arbitration shall be conducted and the award shall be rendered in the English language. This arbitration agreement shall be construed in accordance with and governed by the laws of the State of Nevada in respect of all matters *with the sole exception of matters relating to infringements of IP of the Licensed Property* that shall be construed in accordance with and governed by the laws of the territory where the IP is held and allegedly infringed, without recourse to any choice of law statutes or rules.

*Id.*[9]

---

[9] The License Agreement was filed by the defendants, but it remains sealed. ECF No. 36. Although I considered the unsealed version of the License Agreement in resolving this motion, I only cite to the unsealed version (ECF No. 43) herein.

7

The License Agreement also includes a defined terms section, defining terms such as "Know-How" and "Licensed Property" *Id.* at 3–4. "Know-How" is defined as "proprietary, non-public technical data, knowledge, and information used in the development of the Licensed Property." *Id.* at 4. "Licensed Property" is defined as "any and all protectable intellectual property (IP) rights in and to the 'Lightning Roulette' game, including but limited to IP rights set out in Schedule 2, the trademark 'Lightning Roulette,' [and] the trade dress and copyrights," as well as "Know-How" and "any Derivative Works to the IP rights created hereafter." *Id.* The License Agreement further provides

> [t]he parties acknowledge and agree that they shall bring any claims arising under or relating to this Agreement within twelve (12) Months from the date of the claim arising, or, if later, within twelve (12) Months from the date the party claiming first became or should have become aware of the matters leadings to the claim, and failure to do so shall result in any such claim automatically and irrevocably expiring.

ECF No. 43 at 13, § 8(g).

Here, there is no question that the arbitration agreement is valid,[10] so the only question before the court is "whether [the parties] arbitration agreement applies to a particular dispute." *See Henry Schein, Inc v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

### A. The arbitrability of the misappropriation trade secret claims should be decided by the arbitrator.

L&W raises three main arguments: (1) because the parties incorporated the ICC's rules, which delegate questions regarding arbitrability of claims to the arbitrator in their arbitration agreement, the court must stay the trade secret claims and compel the parties to arbitrate; (2) if the court concludes it has authority to determine arbitrability, the court should find that Evolution's trade secret claims fall under the parties' arbitration agreement; and (3) alternatively, if the court concludes that it has jurisdiction over the trade secret claims, it should

---

[10] Indeed, in its opposition, Evolution does not challenge the validity of the arbitration agreement, so its validity is conceded. *Ardente, Inc. v. Shanley*, 2010 U.S. Dist. LEXIS 11674, at *21 (N.D. Cal. Feb. 9, 2010) (finding plaintiff's failure to respond to defendant's argument a concession through silence). Evolution primarily raises an argument that the misappropriation trade secret claims are not subject to arbitration.

find that the claims are time-barred under the parties' bargain for one-year limitations period. ECF No. 74 at 6.

In opposition, Evolution argues that L&W's motion to compel arbitration is meritless because the License Agreement contains a carve out for licensed property, and trade secrets are licensed property. ECF No. 78 at 6. Second, Evolution argues that the time-bar provision in Section 8(g) of the License Agreement does not apply to Evolution's claims. ECF No. 78 at 6–7.

### 1. *The misappropriation claims should be decided by an arbitrator.*

As noted above, L&W argues that the parties "have clearly and unmistakably delegated questions of arbitrability to the arbitrator," and that there is no question that the parties adequately incorporated the ICC's Rules into their License Agreement. ECF No. 74 at 7. L&W therefore contends that by incorporating the ICC Rules into their arbitration agreement, the parties delegated all arbitrability questions to the arbitrator. *Id.* at 8.

Evolution avers that the carve-out provision in the arbitration agreement is clear—it does *not* apply to any dispute "in relation to the Licensed Property." ECF No. 78 at 9 (quoting ECF No. 43). Evolution further argues that "licensed property" means "any and all protectable intellectual property rights in and to the 'Lightning Roulette' game," *id.*, and that "trade secrets are therefore 'Licensed Property,' and that means that the License Agreement's dispute resolution provisions—including those concerning arbitration—do not apply to 'any dispute . . . in relation to' them." *Id.* at 10. Although presented well, a closer look reveals that Evolution's arguments are directed at convenient, *select* language from the License Agreement, rendering its arguments unpersuasive.

Citing to *Kewanee Oil Company v. Bicron Corporation*, Evolution asserts that trade secrets are plainly protectable intellectual property and that they are a kind of intellectual property. *See* ECF No. 78 at 10; 416 U.S. 470, 478 (1974). I agree that trade secrets "are a kind of intellectual property," *Lawler v. Smith*, 2025 U.S. Dist. LEXIS 131413, *16 (W. Wash. July 10, 2025); *see also* 11 U.S.C. § 101(35A)(A) (defining "intellectual property" as including "trade secret[s]"); 18 U.S.C. §

1839(3) (defining a trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information" that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to . . . another person."); NRS 600A.030 (5) (defining "trade secret" as "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that: (1)[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and (2)[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."); *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 2025 U.S. App. LEXIS 20382, at *12 (9th Cir. 2025) (discussing the challenge of disclosing trade secrets during the discovery phase because of the concern of being overly specific in "defining their intellectual property") (citing *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir 2020). But that does not change the plain language of the "carve out" provision of the License Agreement upon which Evolution relies. Simply stated, that provision does not provide that matters of IP infringement should not be subject to arbitration. Rather, that provision states that **if a matter is deemed to fall within infringement of IP**, the matter should be governed by "laws of the territory where the IP is held and allegedly infringed." *See* ECF No. 43 at § 15 (emphasis added). Thus, the determination of whether trade secrets fall under the purview of intellectual property is a question for an arbitrator to decide in this case. Accordingly, I find that the misappropriation of trade secret claims to be claims arising "out of or in connection with [the License Agreement]," so L&W's motion to compel arbitration is granted.

## 2. *The determination of whether the misappropriation claims are time barred is a question for the arbitrator to decide.*

L&W asserts as an alternative argument that the parties agreed in their License Agreement to limit both the forum and timeframe in which disputes related to the License Agreement would be resolved. ECF No. 74 at 6. They further assert that the parties agreed that any claim arising under or relating to this License Agreement would be brought within twelve months from the date the claim arose, and failure to do so would result in the claim expiring. ECF No. 74 at 6 (citing to Ex. 1 § 8(g)). In opposition, Evolution responds that L&W is seeking two forms of relief (to compel arbitration and to dismiss) in violation of the local rules.[11] ECF No. 78 at 15. Evolution also argues that Section 8(g) does not apply to the misappropriation of trade secrets because "'any claim arising under or relating to this Agreement'", ECF No. 43, does not clearly and explicitly cover Evolution's trade secret misappropriation claims. ECF No. 78 at 16. Because the arbitrability of the misappropriation of trade secret claims should be resolved by the arbitrator, the argument that the claims are time-barred should also be decided by the arbitrator as that argument is connected to claims arising "out of or in connection" to the License Agreement entered into by the parties.

## III. Conclusion

IT IS HEREBY ORDERED that defendants' motion to compel arbitration **[ECF No. 74] is granted**. The parties must promptly submit these claims to arbitration in accordance with the License Agreement (ECF No. 43).

IT IS FURTHER ORDERED that plaintiffs' motion to seal exhibits 2, 4, and 6 to the first amended complaint **[ECF No. 87] is granted**. The Clerk of Court is kindly instructed to maintain the seal on ECF No. 86.

---

[11] I note Evolution's argument but disagree and find L&W makes this argument in the alternative.

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' first amended complaint **[ECF No. 114] is denied as moot.**

These claims are now stayed pending the outcome of arbitration. The parties must meet and confer to determine if this decision impacts how the remaining claims should proceed, and must appear for a status conference on October 30, 2025, at 10:00 a.m. in LV Courtroom 6B.

Dated: September 30, 2025

_____
Cristina D. Silva
United States District Judge

12