PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
CAMPBELL & WILLIAMS
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

NEAL MANNE *(Pro Hac Vice)*
nmanne@susmangodfrey.com
JOSEPH GRINSTEIN *(Pro Hac Vice)*
jgrinstein@susmangodfrey.com
MEGAN E. GRIFFITH *(Pro Hac Vice)*
mgriffith@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

*Attorneys for Defendants Light & Wonder, Inc. and LNW Gaming, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EVOLUTION MALTA LIMITED, EVOLUTION GAMING MALTA LIMITED, EVOLUTION GAMING LIMITED and SIA EVOLUTION LATVIA, <br><br>Plaintiffs, <br><br>vs. <br><br>LIGHT & WONDER, INC. f/k/a SCIENTIFIC GAMES CORP. and LNW GAMING, INC. f/k/a SG GAMING, INC., <br><br>Defendants, | CASE NO.: 2:24-cv-00993-CDS-NJK <br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS [ECF NO. 156]** |

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ........................................................................................................... 1
II.  THE HAUSHALTER CLAIMS REMAIN INVALID UNDER *ALICE*............................... 3
III. THE MERATI PATENTS ARE LIKEWISE INVALID UNDER *ALICE*. .......................... 7
     A. STEP ONE: THE MERATI CLAIMS ARE DIRECTED TO ABSTRACT IDEAS. .............. 7
     B. STEP TWO: THE MERATI CLAIMS DO NOT PRESENT AN INVENTIVE CONCEPT. ................... 11
IV.  REPRESENTATIVENESS ............................................................................................ 13
V.   CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ................................................................................. 7

*Alice Corp. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ................................................................................................. 3

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................................... 13

*Beteiro, LLC v. DraftKings, Inc.*,
   104 F.4th 1350 (Fed. Cir. 2024) ............................................................................... 5

*Boom! Payments, Inc. v. Stripe, Inc.*,
   839 F. App'x 528 (Fed. Cir. 2021) ........................................................................... 7

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
   113 F.4th 1359 (Fed. Cir. 2024) ............................................................................... 5

*CG Tech. Dev., LLC v. Bwin.party (USA), Inc.*,
   2016 WL 6089696 (D. Nev. Oct. 18, 2016) ........................................................... 11

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ................................................................................ 10

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
   50 F.4th 127 (Fed. Cir. 2022) ................................................................................... 7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ............................................................................... 11

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ................................................................................ 6

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ................................................................................ 6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ................................................................................ 9

# TABLE OF AUTHORITIES
### (continued)

**PAGE**

*In re Marco Guldenaar Holding B.V.*,
    911 F.3d 1157 (Fed. Cir. 2018) ................................................................................... 4

*In re Smith*,
    815 F.3d 816 (Fed. Cir. 2016) ............................................................................ 4, 5, 9

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) ..................................................................................... 7

*Konami Gaming, Inc. v. High 5 Games, LLC*,
    2018 WL 1020120 (D. Nev. Feb. 22, 2018) ................................................................ 5

*Mobile Acuity Ltd. v. Blippar Ltd.*,
    110 F.4th 1280 (Fed. Cir. 2024) ................................................................................. 14

*NEXRF Corp. v. Playtika Ltd.*,
    547 F. Supp. 3d 977 (D. Nev. 2021) ............................................................................ 5

*People.ai, Inc. v. Clari Inc.*,
    2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ............................................................... 14

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ............................................................................ 5

*Recentive Analytics, Inc. v. Fox Corp.*,
    134 F.4th 1205 (Fed. Cir. 2025) ................................................................................... 1

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ................................................................................. 12

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ....................................................................................... 1

*Scibetta v. Slingo, Inc.*,
    2018 WL 466224 (D.N.J. 2019) ................................................................................... 5

*Skillz Platform Inc. v. Aviagames Inc*
    2022 WL 7833384 (N.D. Cal. Mar. 14, 2022) ........................................................... 11

**TABLE OF AUTHORITIES**
**(continued)**
**PAGE**

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)......................................................................................... 14

*Trinity Info. Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) .......................................................................................... 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).......................................................................................... 7

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)............................................................................................ 3

*US Pat. No. 7,679,637 LLC v. Google LLC*,
    713 F. Supp. 3d 1024 (W.D. Wash. 2024).......................................................................... 6

*Vetnos, LLC v. SidePrize LLC*,
    2024 WL 1558195 (N.D. Ga. Mar. 25, 2024) (R. & R.) .................................................. 11

*WinView Inc. v. FanDuel, Inc.*,
    2025 WL 1908758 (D.N.J. July 11, 2025)....................................................................... 11

**STATUTES**

35 U.S.C. § 101............................................................................................................... passim

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 16

## I.  INTRODUCTION

This Motion to Dismiss presents a straightforward Section 101 dispute—nothing more. Evolution's opposition brief largely reprises the rhetoric it deployed against prior motions, now embellished with more "robust" allegations and two additional patents it acquired to bolster its case. Evolution tries to position this case as "quite literally, a referendum on 'gaming' patents" and urges that "the industry" is watching this case. But Evolution's hyperbole has nothing to do with the analysis before this Court—and it is belied by Evolution's failure to address significant Federal Circuit cases that directly address Section 101 in the wagering and computing contexts.

Instead, Evolution waits until page 17 of its opposition brief to reach *Alice* step one. Why? Because the Court already rejected Evolution's position under the two-step analysis, and Evolution would prefer to spill ink trying to "reset" what the *Alice* test is to fit Evolution's view of what counts as "new" or "improved." But the Federal Circuit still addresses the *Alice* inquiry one step at a time: (1) whether claims are directed to an ineligible concept, like an abstract idea, and (2) if so, whether there is nevertheless an inventive concept that could be patent eligible. *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1211 (Fed. Cir. 2025). Under the governing case law, Evolution's alleged claims fail under Section 101 and should be dismissed.

The Court already dismissed the original complaint's patent counts, holding the Haushalter claims "invalid under Alice" and expressing doubt that Evolution could amend around the problem. And rightly so—the center of gravity under *Alice* remains the claims themselves. "No amendment to a complaint can alter what a patent itself states." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023). Nothing in Evolution's latest opposition changes that conclusion. Evolution's SAC cannot convert results-oriented wagering claims into technological inventions by relabeling attorney argument as "facts," invoking industry praise, or recasting previously rejected theories as "software improvements." The claims of the Haushalter patents still recite the abstract idea of playing a modified roulette game using generic components in results-oriented terms, without any disclosed technological means for achieving those results. Evolution continues to rely on conclusory assertions that the Haushalter claims present "technological improvements," but Evolution still identifies no concrete algorithm, software

1

architecture, or computer-centric solution in the claims that explains how these outputs are achieved. Trying to recast each limitation in its claims as a step in a supposed "algorithm" doesn't get it there. Further, Evolution's "remote gameplay" theme appears only in the specification; it cannot be imported into the claim language. Thus, the Haushalter claims fail at *Alice* step one. And Evolution's allegations that the games were successful or well-received in the marketplace cannot supply an inventive concept at *Alice* step two. These are the same entrepreneurial tweaks that the Court already found ineligible earlier this year. The Court should again dismiss the Haushalter patent claims under Section 101.

The newly asserted Merati patents fare no better, nor do they change the *Alice* analysis. The Merati claims fail at *Alice* step one because they are directed to the abstract idea of providing hybrid games—which already existed in traditional and online forms—using a generic communications interface and processor. And they fail at *Alice* step two, as Evolution can point only to results and conventional components. The Merati claims recite no specific technical improvements. Thus, the Court should likewise dismiss the Merati claims under Section 101.

Evolution's arguments about whether certain claims are representative also fail. For the Haushalter family, Claim 1 of the '014 patent remains representative. The Court already so held after Evolution conceded the point, and the SAC provides no non-frivolous reason under *Mobile Acuity* to treat the materially similar independent or dependent claims differently for the Section 101 analysis. For the Merati family, Claim 1 of the '074 patent is representative. As L&W demonstrates, all independent and dependent claims in the Merati family share the same conventional backbone—a communications interface and a processor executing functional steps to provide hybrid gaming services. Evolution's opposition does not identify any claim-specific limitations that would materially change the Section 101 analysis. *See* Motion at 28–32.

Finally, Evolution's opposition tries to reframe this case as a referendum on "gaming patents" or an industry-wide alarm bell. It is neither. As before, this is a Section 101 challenge to specific claim sets that recite wagering concepts in functional, output-oriented terms on generic components. The U.S. patent system is designed to encourage and protect innovation, but not to enforce patents on overbroad, abstract ideas that do not advance technology. Evolution's patents

2

functionally claim the idea of playing a modified idea of roulette or the idea of playing existing wagering games in a hybrid environment, but do not disclose *how* to implement those concepts. Enforcing such patents would *inhibit* innovation because they "defeat[] the very purpose of the patent system." *Recentive Analytics*, 134 F.4th at 1213 (holding that claims applying machine learning to a new environment were not patent eligible). Where the asserted claims fail both *Alice* steps—as they do here—dismissal is appropriate. And the fact that L&W has filed its own patents in this space does not change the analysis; whether those patents survive Section 101 should be analyzed fully only if and when they are asserted.

The SAC's expanded allegations, new labels, and added patent family do not create a plausible factual dispute about what the Haushalter or Merati claims actually recite. Both sets of asserted claims are directed to patent-ineligible subject matter. Evolution has already amended its complaint twice. The Court should dismiss each of the patent counts in the SAC, with prejudice.

## II. THE HAUSHALTER CLAIMS REMAIN INVALID UNDER *ALICE*.

The Supreme Court's *Alice* decision "articulated a technological arts test for patent eligibility," concluding that claims were patent-ineligible "because they did not 'improve the functioning of the computer itself' or 'effect an improvement in any other *technology* or *technical field*.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014) (quoting *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 210 (2014)).

As the Court previously recognized, the Haushalter claims fall well short of this test. *See* Motion at 6–8, 12–18, 22–25. In its earlier order (at 10–11), the Court found that the Haushalter claims' "'method for a roulette game' is, at its core, a method of exchanging and resolving financial obligations based on probabilities,' such that the claims are "directed to an abstract idea." The Court then focused on the functional, results-oriented language of the claims, and concluded the Haushalter claims were "invalid under *Alice*." Order at 15. Those findings are as true today as they were in February—because they are based on the claim language, which has not changed.

Evolution argues that based on its new allegations, the Court must deny the Motion and

3

credit all of Evolution's allegations—no matter how implausible—that the Haushalter claims "are directed to technological improvements in existing technology for new and improved games including roulette," and "us[e] existing computer technology" to "improve existing processes." But the SAC and Response do not render the claims patent eligible; were that the case, every Section 101 motion would be defeated by the patentee's say-so in its complaint. Here, the claims improve no technology; the alleged "new and improved" nature of the roulette game cannot salvage the claims; and adding "existing computer technology" to the abstract idea does not confer eligibility.

At step one, the Haushalter claims are directed to nothing more than the abstract idea of playing a modified roulette game using conventional computer components. Evolution cautions the Court against "overgeneralizing" the claims here as directed to "wagering games." But where each of the Haushalter claims is directed to the modified roulette game, this is no overgeneralization. Thus, it was appropriate for the Court to analyze the Haushalter claims as other courts have routinely done for other claims directed to wagering games—they are abstract ideas under *Alice* step one. *See, e.g.*, *In re Smith*, 815 F.3d 816, 817–18 (Fed. Cir. 2016) (blackjack); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1162 (Fed. Cir. 2018) (rolling dice); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (bingo); *Beteiro, LLC v. DraftKings, Inc.*, 104 F.4th 1350, 1354 (Fed. Cir. 2024) (location-based remote gambling); *see also NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 987 (D. Nev. 2021), *aff'd*, No. 2021-2147, 2022 WL 1513310 (Fed. Cir. May 13, 2022) (slots); *Scibetta v. Slingo, Inc.*, 2018 WL 466224 (D.N.J. 2019) (cards); *Konami Gaming, Inc. v. High 5 Games, LLC*, 2018 WL 1020120, at *19 (D. Nev. Feb. 22, 2018), *aff'd*, 756 F. App'x 994 (Fed. Cir. 2019) (slots).

Not "all inventions in the gaming arts [are] foreclosed from patent protection." *In re Smith*, 815 F.3d at 819. But each of the courts above found and explained that claims directed to similar wagering games were predicated on abstract ideas. While non-technical advances to "games may enhance our leisure hours, they contribute nothing to the existing body of technological and scientific knowledge" and therefore, are ineligible for patenting. *See Guldenaar*, 911 F.3d at 1166 (Mayer, J., concurring). Evolution's patent claims to a tweak of

4

existing wagering games like roulette are non-technical and non-scientific. They are abstract. And nothing in Evolution's Response or SAC changes the fact that patent claims directed to wagering games are abstract ideas under *Alice* step one.

Evolution also argues that the Court should consider its "software" developments and alleged "new" roulette game to determine that there is not an abstract concept at step one. While conventionality may be ***relevant*** at step one, that does not determine whether a concept is abstract but instead concerns whether the invention is directed to an innovation above conventional methods. As explained above, courts have repeatedly held that wagering is an abstract concept. And the Federal Circuit has cautioned that "we must take care to avoid allowing a conventionality analysis at step one to render step two superfluous (except where the claimed innovation at step two is nothing more than practice of the abstract idea of step one). To find otherwise would ignore the Supreme Court's guidance in *Alice*, which clearly set forth a two-step inquiry." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1369 (Fed. Cir. 2024).

At step two, there is no inventive concept in the Haushalter claims, as each of the "software" improvements that Evolution identifies is simply part of the abstract concept itself. *See* Motion at 12–18, 24. The "algorithms" or "software" that Evolution points to are simply steps in a method claim—that alone does not render them steps in an algorithm, as they are expressed in functional, results-oriented language and remain abstract. The Haushalter claims do not include algorithms to ***implement*** those steps. Following Evolution's logic, every method claim with more than one step discloses an "algorithm," mooting the algorithm case law. *See, e.g.*, *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1340 (Fed. Cir. 2016) (upholding claims as disclosing an algorithm where they "sufficiently identified a structure for a person of skill in the art to implement the function of 'configuring said memory according to a logical table'"). The Haushalter claims provide no such identification and thus improve no technology, like other claims frequently "held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). In fact, the functional, results-oriented nature of the claims was a central focus of the Court's prior Order holding the Haushalter claims "invalid under *Alice*." Order at 11, 15. Given that the Haushalter claims do not claim any new algorithms or technology

5

to perform the steps, they do not qualify for patent protection. *See Recentive*, 134 F.4th at 1213.

After that Order, Evolution added allegations in the SAC to dress up the Haushalter claims. But as the Court suggested, the functional, results-oriented nature of the claims is a fundamental deficiency that Evolution cannot plead around. *See* Order at 16 n.8; *see, e.g.*, *NEXRF*, 547 F. Supp. 3d at 993 (amending allegations cannot solve problems in the claim language); *US Pat. No. 7,679,637 LLC v. Google LLC*, 713 F. Supp. 3d 1024, 1042 (W.D. Wash. 2024) ("The claim language of '637 Patent dictates the result of § 101 ineligibility and amendment cannot rectify that."). The SAC's and Response's conclusory arguments that the patents offer "technological improvements" and "software improvements" fail as a matter of law and need not be accepted as true: Functionally drafted, results-oriented claims like Evolution's improve no technology. *See Recentive*, 134 F.4th at 1213; *Beteiro*, 104 F.4th at 1356; *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1378 (Fed. Cir. 2022); *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337–38 (Fed. Cir. 2017); *Elec. Power Grp.*, 830 F.3d at 1354–55; *NEXRF*, 547 F. Supp. 3d at 989.

What Evolution appears to argue in its Response is that every patentee can survive a Section 101 motion to dismiss by including unsupported allegations of technological improvements and inventive concepts in a complaint because those allegations ***must*** be credited at the motion to dismiss stage. That is not the law, nor should it be as those allegations must be ***plausible***. *See Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021) ("Boom's amended complaint repeatedly asserts that its claims are not routine or conventional but does not provide plausible factual allegations to support those assertions."). For the allegations to be plausible, they must be tied to language in the claims or at least be a plausible interpretation of them. But here, a cursory comparison of the "inventive concepts" listed in the SAC and the Haushalter claim language confirms that the "allegations"—textbook attorney argument—are not part of the asserted claims.

For support, Evolution relies heavily on the *Aatrix Software* and *Cooperative v. Kollective* cases to argue that its allegations in the SAC can generate questions of fact. But those cases underscore why Evolution's argument fails: in both cases, the question of fact arose at *Alice* step

6

two, in determining whether there is an "inventive concept." *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018); *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 133 (Fed. Cir. 2022). Unlike in those cases, the Haushalter claims do not "recite[] a specific technical solution that is an inventive concept." *Id.* As much as Evolution tries to style them as software claims that improve the game of roulette, the plain language of the claims forecloses a plausible allegation that these are inventive concepts because the claims rely on using existing conventional components and rely on results-oriented, functional language. Perhaps there would be a path to eligibility if the claims described a technological means of achieving those functions—but they don't. It is not enough for Evolution to claim that something is "new and improved." Instead, Evolution must show—and doesn't—that the inventive concept here actually improves technology in some way. But Evolution attempts in the SAC to rely on its "novel" idea for a randomly-selected spot for the multiplier—conflating the Sections 101 and 102 analyses.

Even after two amendments to the complaint, Evolution cannot amend the claim language. The Haushalter claims rely on traditional wagering techniques (the ball and roulette wheel) and conventional components to execute the abstract steps. *See, e.g.*, ''014 patent, claim 1; *id.* at 6:43–48. As L&W's Motion explains at 6–8, 12–18, and 19–25, the allegations cannot create plausible facts for purposes of a motion to dismiss when the Haushalter claim language is so clearly directed to abstract concepts. Thus, as the Court previously anticipated, the Haushalter claims are still invalid under *Alice*, and the related counts should be dismissed—this time with prejudice.

### III.   THE MERATI PATENTS ARE LIKEWISE INVALID UNDER *ALICE*.

Evolution similarly tries to argue that the Merati claims present a "technological advancement" because they combine "traditional casino games" and "traditional electronic games" to include "the best of both worlds." Response at 20–21. Unsurprisingly, the combination of ***two*** existing categories of wagering games, without any software or technological improvements, fails at both steps of the *Alice* analysis.

#### A.   Step One: The Merati claims are directed to abstract ideas.

The Merati claims are directed to an abstract concept: hybrid wagering games. The claims

7

each recite the basic steps of playing **any** wagering game—certain values are generated, communicated to the player, and the values determine the final result (*e.g.*, whether a player gets a payout) based on the rules of the selected wagering game. The "improved" version, in Evolution's view, is that these wagering games—which already existed in traditional and electronic forms—could be played in a hybrid mode, where at least one of the players is remote and one of the values may be electronically generated. But the focus of the claims remains the wagering game—**any** wagering game. The Merati claims are therefore at least as abstract as others directed to blackjack (*In re Smith*), dice (*Guldenaar*), bingo (*Planet Bingo*), cards (*Scibetta*), or slots (*NEXRF*).[1] The Merati claims therefore must provide an inventive concept at step two.

Evolution tries to spin the Merati claims as directed to technology, not wagering. But the Merati claims are no less abstract if viewed as directed to software or algorithms. "In the context of software patents . . . , the step-one inquiry determines 'whether the claims focus on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Recentive*, 134 F.4th at 1212 (quoting *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018)). In *Recentive*, the court concluded that the plaintiff's proposed technological improvement—applying machine learning to map creation—did not qualify at step one where the claim language was results-focused, functional, and abstract. *Id.* at 1213. A comparison of one of the *Recentive* patent claims with the Merati '074's claim 1 shows that the '074's bland application to **any** wagering game and reliance on conventional computer components translates into language at least as functional and results-oriented as that in *Recentive*. Compare, *e.g.*, *Recentive*, 134 F.4th at 1212 n.3 ("using the network map to determine for each station (i) the first live event from the first plurality of live events that will be displayed at the first time and (ii) the second live event from the second plurality of live events that will be displayed at the second time" ('811 patent at 9:66–10:32)), *with* Merati ''074 patent at 48:20–50 ("determine, by the processor, a final game result based on

---

[1] Notably, Evolution ignores at least two of these two controlling Federal Circuit precedents: *Guldenaar*, 911 F.3d at 1162 (dice), and *Planet Bingo*, 576 F. App'x at 1008 (bingo).

8

at least the one or more electronic representations and the one or more electronic game values").

Of particular significance, the *Recentive* court rejected the argument that applying machine learning to a new "environment" (creating network maps) was patent-eligible subject matter at step one. *Id.* at 1213. The court explained, "patents may be directed to abstract ideas where they disclose the use of an already available technology, with its already available basic functions, to use as a tool in executing the claimed process." *Id.* at 1214 (cleaned up). This is consistent with ample precedent explaining that moving existing processes online is an abstract concept. *See Trinity Info. Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023) (online polling); *Capital One*, 79 F.3d at 1367 (online budget notifications); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766–70 (Fed. Cir. 2019) (remote power management). The Merati claims certainly are directed to an abstract idea under this case law, as they are directed to combining existing traditional and electronic wagering games in a "hybrid" environment.

None of the cases cited by Evolution change this framework. Most of those cases (like *McRo*, *EcoServices*, *Contour IP*, *CardioNet*, *PowerBlock*) are inapposite and simply confirm that claims encompassing a technical improvement are patent eligible—L&W does not contend otherwise.[2] The remaining cases that Evolution cites involved markedly different claim language that the courts held were ***not*** directed to wagering or to moving an existing process online.

- In *DDR Holdings*, the claims were directed to improving website visitor retention and "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). This is markedly different from the instant patents, which address either the electronification of a modified roulette game, or improving trust

---

[2] *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313, 1310 (Fed. Cir. 2016) (focusing on a specific means—sequences, weights, and times—to improve the technology in 3-D computer generated lip synchronization); *EcoServices, LLC v. Certified Aviation Servs., LLC*, 830 F. App'x 634, 642 (Fed. Cir. 2020) (involving an improved "system for washing jet engines"); *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1380 (Fed. Cir. 2024) (involving technical improvements for "POV camera technology" with specific means for recording and using high- and low-definition videos); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1369 (Fed. Cir. 2020) (involving claims "directed to an improved cardiac monitoring device"); *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366, 1372 (Fed. Cir. 2025) (involving claims for a mechanical device to adjust the weight of "a particular type of dumbbell").

9

in online games by reverting part of the random number selection to a non-electronic random number generator.

- In *CG Tech.*, the claims were not directed to an abstract idea because they involved activities that—unlike picking random numbers or paying out wagers—could not be performed by the human mind. *CG Tech. Dev., LLC v. Bwin.party (USA), Inc.*, 2016 WL 6089696, *4 (D. Nev. Oct. 18, 2016).

- In *WinView*, the claims enabled "a plurality of users to simultaneously and in real time compete in the multiple contests of skill or chance," where the claims in question were not focused on the wagering but on the "technology for 'conducting simultaneous multiple contests.'" *WinView Inc. v. FanDuel, Inc.*, 2025 WL 1908758, *8 (D.N.J. July 11, 2025).

- In *Vetnos*, the special master recommended denying dismissal because discovery and claim construction might be required to determine which skills-based wagering games were covered and therefore whether the claims were directed to abstract ideas. *Vetnos, LLC v. SidePrize LLC*, 2024 WL 1558195, *13 (N.D. Ga. Mar. 25, 2024) (R. & R.). No such vagueness or claim construction is at issue here.

Instead, here, the focus of the Merati claims is the step-by-step implementation of any wagering games using virtually any conventional components. That is why the Asserted Patents are directed to abstract concepts under *Alice* step one.

Evolution also cites *Skillz Platform Inc. v. Aviagames Inc.*, but that case supports L&W's position. 2022 WL 783338, at *23–24 (N.D. Cal. Mar. 14, 2022). The *Skillz* court invalidated claims like those of the Asserted Patents. *Id.* Specifically, at *Alice* step one, the court found claims reciting "software . . . [that] **provides a random number seed**" were directed to abstract ideas: they were "entirely functional," results-oriented, and "fail[ed] to provide specific steps for how this outcome is achieved." *Id.* The claims here are no different—they recite random number selection and other wagering concepts without indicating how the results should be achieved.[3]

The other claims upheld in *Skillz* are nothing like those of the Asserted Patents. First, the

---

[3] At *Alice* step two, the court also found no inventive concept because the claims "do not provide enough detail to provide a non-abstract solution," and "are implemented on generic and conventional computing elements." *Id.* at *24.

claims that survived solved a particular technological problem (making gameplay "different between tournaments, but not between game instances in a given tournament") with a specific, non-results oriented technical solution ("using a tournament-specific identification number to derive pseudo-random numbers for gaming sessions"). *Id.* at *10. In contrast, Evolution's claims allegedly improve a non-technical discipline (wagering) with results-oriented, non-technical features (a generic random number generator and components; '074 at 5:15–17, 5:61–63). Second, while the claims in *Skillz* involved pseudo-random generation—a mathematical algorithm, and thus an abstract idea, *see RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)—the court found the upheld claims were not directed to that abstract idea because they contained other non-abstract elements in how the pseudo-random number seeds were standardized for gameplay across multiple users' experiences. *See Skillz*, 2022 WL 783338, at *9–11. The Court expressly distinguished these claims, like "using a unique match identifier," from the "final step of executing a game using pseudo-random numbers," *id.*, underscoring that the mere fact of using pseudo-randomly generated numbers will not suffice to render an otherwise abstract idea patent-eligible. *See also Enfish*, 822 F.3d at 1338 (upholding claims where they improved the ***functioning*** of a computer).

Evolution's claims recite no such elements for removing the alleged invention from the realm of abstract ideas or improving technology. For example, the Merati patents do not claim specific means (the how) for random number selection or payout determination, and instead broadly preempt all ways of carrying out these functions. *E.g.*, '074 at 5:10–17 ("RNGs or pseudo RNGs are well-known in the art . . . The electronic source, in general, comprises any device able to generate random values electronically."), 5:39–41 ("any other mechanical device capable of generating real, random information"). As the Merati claims are directed to wagering games—or even in Evolution's view, to moving existing games partially online—they are abstract.

### B. Step Two: The Merati claims do not present an inventive concept.

Evolution argues that the SAC alleges "inventive concepts" in the Merati claims that survive *Alice* step two. Response at 29. But as shown above, merely moving an existing process to a new environment (online or application) is an abstract idea, not an inventive concept.

11

*Recentive*, 134 F.4th at 1213 (rejecting "inventive concept" which was "no more than claiming the abstract idea itself"); *see Trinity Info.*, 72 F.4th at 1362; *Capital One*, 79 F.3d at 1367; *ChargePoint*, 920 F.3d at 766–70. Evolution fails entirely to respond to this point.

Here, the plain language of the claims and the specification show that none of the concepts in the Merati claims are, in fact, inventive:

| Alleged Concept | Specification Reveals No Inventive Concept |
|---|---|
| 1. Steps for receiving an electronic indication of a physical game value | "Detector 106 comprises any electronic or optical device that captures events generated by a real-world, actual source and converts them into electronic signals." 5:61–63 |
| 2. Steps for generating electronic game values | "The electronic source, in general, comprises any device able to generate random values electronically." 5:15–17. |
| 3. Steps for determining a game outcome based on both types of values | The processor "determines which player or players won the game, based on the scores, values, information, and/or indications of/from each player and/or processor[]." 14:12–15. |

Evolution also argues that the "order" that these steps take place is important for determining whether there is an inventive concept. *See* Response at 28 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016)). But the ***order*** of the steps in *Bascom* was part of the inventive concept for filtering at a specific location. Here, the ***order*** of the steps in the Merati claims is not inventive because it follows the conventional process for wagering games (players choose to participate, values are generated, and a payout is determined). Where "the ordered combination of steps are exactly the same steps" that would be used without the technology, the benefits are "for automation generally and do not result from some other inventive concept." *People.ai, Inc. v. Clari Inc.*, 2023 WL 2820794, *12 (Fed. Cir. Apr. 7, 2023) (rejecting application of *Bascom* to ordered steps where the order itself was not inventive). *See also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151–52 (Fed. Cir. 2016) (rejecting application of *Bascom* where the steps at issue did not "introduce a technical advance or improvement"). Evolution cannot plausibly allege that following that same order here is innovative. Combined with the generic, conventional components cited in the claims and specification, there is no inventive concept.

12

To the extent Evolution otherwise tries to point to the allegations in the SAC, it fails for the same reason as for the Haushalter claims: attorney argument in the SAC cannot amend the claim language. And because the plain Merati claim language is abstract—and the specification makes clear it relies on generic, conventional components—the Merati claims fail under *Alice* steps one and two. Evolution has proven the futility of amendment here by including only more attorney argument, and the Court should dismiss the Merati patent infringement counts with prejudice.

## IV. REPRESENTATIVENESS

In the Motion, L&W met its "initial burden to make a prima facie showing that the group[s] of claims are 'substantially similar and linked to the same' ineligible concept." *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024) (citation omitted). Now, "the burden shifts to [Evolution] to present non-frivolous arguments as to why the eligibility of the identified representative claim cannot fairly be treated as decisive of the eligibility of all claims in the group." *Id.* Evolution fails to meet its burden.

As to the Haushalter claims, L&W already met its initial burden in the original motion to dismiss and showed that claim 1 of the '014 patent was representative of all Haushalter Claims. ECF No. 34 at 13–34. Evolution "did not respond to this assertion, and therefore conceded that Claim 1 of the ''014 patent is representative." Order at 8. Neither the FAC nor the SAC provides any basis to change the reasoning underlying the Court's prior order. Evolution cannot credibly refute that claim 1 of the ''014 patent is representative of all Haushalter claims. As L&W explained in its Motion, all the independent claims claim the same components—a ball, a roulette wheel, and a processor—in system, method, or non-transitory medium claims. Motion at 30–31. The dependent claims do not add anything relevant to the Section 101 analysis. *Id.* at 28–29. Likewise, as to the Merati patents, L&W demonstrates in the Motion that each of the independent and dependent claims claim the same components—a communication interface and a processor—incorporated into "a system and method of providing gaming services to game players located remotely from one another." *Id.* at 28–32. The representative nature of the claims is hardly surprising, given that the Haushalter patents share a common specification, and the Merati '663

patent specification includes the full '074 patent specification. *See* SAC ¶ 107.

Evolution points to variances in the language between these claims. *See* Response at 12–13 (listing alleged "features of individual claims that are part of the technological improvements of those claims"). But ***none*** of the differences in the patent language unlink these claims from abstract concepts (wagering games or moving existing games to a hybrid format) or make them dissimilar. And each of the additions is phrased in functional, results-oriented language that does not improve on technology. That is why Evolution's showing is insufficient—none of these alleged distinctions matter to the Section 101 analysis. Simply alleging the opposite is not plausible when the plain language controls. As a result, there is no need to independently assess each claim for patentability under Section 101. *See Planet Bingo*, 576 F. App'x at 1007.

## V. CONCLUSION

For the reasons argued above, the Court should dismiss with prejudice each of the Patent Claims (Counts 3–7) pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED this 13th day of October, 2025.

> CAMPBELL & WILLIAMS
>
> By: */s/ Philip R. Erwin*
> PHILIP R. ERWIN, ESQ. (11563)
> 710 South Seventh Street
> Las Vegas, Nevada 89101
>
> SUSMAN GODFREY
>
> NEAL MANNE, ESQ.
> (*Pro Hac Vice*)
> JOSEPH GRINSTEIN, ESQ.
> (Admitted *Pro Hac Vice*)
> MEGAN E. GRIFFITH, ESQ.
> (Admitted *Pro Hac Vice*)
>
> *Attorneys for Defendants Light & Wonder, Inc and LNW Gaming, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of October, 2025, I caused a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS [ECF NO. 156]** to be served via the United States District Court CM/ECF system on all parties or persons requiring notice.

                                       /s/ *Philip R. Erwin*
                                       An employee of Campbell & Williams