UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Evolution Malta Limited, et al. | Case No. 2:24-cv-00993-CDS-NJK |
| Plaintiffs | **Order Granting the Defendants' Motion to Dismiss** |
| v. | |
| Light & Wonder, Inc., et al., | [ECF No. 156] |
| Defendants | |

This is a misappropriation of trade secrets and patent infringement action brought by plaintiffs Evolution Malta Limited, Evolution Gaming Malta Limited, SIA Evolution Latvia, and Uplay1, against defendants Light & Wonder, Inc., and LNW Gaming, Inc (L&W). *See* Second am. compl. (SAC), ECF No. 125. The defendants move to dismiss the plaintiffs' SAC. Mot., ECF No. 156. This motion is fully briefed. Opp'n, ECF No. 162; Reply, ECF No. 165.[1] For the reasons set forth herein, I grant the motion.

I.      Background[2]

The parties are familiar with the background of this case, so I include and address only information relevant to resolving the pending motion. In my previous order resolving the defendants' motion to compel arbitration, I found that the plaintiffs' misappropriation trade secret claims four (IV) and five (V) are to be arbitrated. *See* Order, ECF No. 163. As such, this

---

[1] I note that the defendants' reply was untimely, and I advised the parties in my prior order that the defendants' reply was due by September 29, 2025 (ECF No. 163 at 1 n.3.). Local Rule 7-2(b) provides that "[t]he deadline to file and serve any reply in support of [a] motion is seven days after service of the response." LR 7-2(b). The record does not indicate any request by the defendants to seek leave or for an extension of time. Accordingly, the reply is stricken as untimely. *See Madrid v. Lazer Spot, Inc.*, 2020 U.S. Dist. LEXIS 131619, at *10 (E.D. Cal. July 24, 2020) (striking untimely reply) (citing *Warkentin v. Federated Life Ins. Co.*, 2012 WL 2116389, at *1 n.1 (E.D. Cal. June 11, 2012) (disregarding an untimely reply brief for failure to comply with the deadline set forth in the court's local rules)).

[2] I incorporate by reference the factual background in previous orders. *See* ECF No. 76; ECF No. 163 at 2–5.

order on the pending motion to dismiss only addresses Evolution's remaining patent infringement claims. *See* ECF No. 156.[3]

Evolution brings the following infringement claims: U.S. Patent Nos. 10, 629, 024 ('024); 11, 011, 014 ('014); 11, 756, 371 ('371) (the Haushalter Patents). *See* ECF No. 125 at ¶¶ 18, 53–55. And, for U.S. patent Nos. No. 9, 905, 074 ('074) and 11, 783, 663 ('663) (the Merati Patents). *Id.* at ¶¶ 235–69.

**II.    Legal standard**

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[3] I briefly address Evolution's argument that the SAC is the operative complaint and controls. ECF No. 162 at 7, 16. I agree with Evolution. The SAC is operative, so I consider the claims pleaded therein. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (explaining that the general rule is that an amended complaint supersedes the original complaint and renders without legal effect).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

**III.    Discussion**

The crux of L&W's motion to dismiss asserts Evolution's patents are ineligible under 35 U.S.C. § 101. ECF No. 156 at 8–9. Specifically, L&W argues that all of Evolution's patents are directed toward wagering games, which is an abstract idea. *Id.* at 8. L&W further argues that all five of Evolution's patents recite generic hardware components and generic gambling mechanisms to implement the abstract ideas. *Id.* In opposition, Evolution argues that L&W's motion is a "fundamental misconception of patent eligibility," and that its patents are not directed at the abstract idea of playing roulette or wagering, but rather are directed to novel and technological improvements in roulette and hybrid gaming, which makes them eligible for patent protection. ECF No. 162 at 7. Evolution maintains that L&W's motion fails at both steps of the *Alice* test, but even if the court accepts L&W's arguments as to step one of that test, their arguments still fail at step two. *Id.* at 7–9. (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)).

"Whether a patent is eligible under § 101 is a question of law that may be determined at the dismissal stage." *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 986 (D. Nev. 2021) *aff'd*, 2022 U.S. App. LEXIS 12929 (Fed. Cir. May 13, 2022). Under § 101 of the Patent Act, a patent can be given to an inventor for any "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Claims of issued patents

3

are presumed valid. *Id.* at § 282. "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003) (citing *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1221 (Fed. Cir. 2002). And the Supreme Court has made clear that "laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)). The reason behind this exemption is "one of pre-emption": if an inventor could obtain a patent protection over natural laws or abstract ideas, it would undermine future innovation instead of promoting it. *NEXRF Corp.*, 547 F. Supp. 3d at 986.

However, courts are also aware that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). To that end, the Supreme Court has developed a two-part test to assess whether a patent improperly covers an abstract idea. First, courts must determine whether a patent's claims are directed to a "patent-ineligible concept." *Alice*, 573 U.S. at 217. Examples of abstract ideas include mathematical equations, methods of organizing human activity, or longstanding commercial practices. *Id.* at 220. Second, if a court finds that the patent involves an abstract idea, the court asks whether the remaining elements, either in isolation or combination with the non-patent ineligible concepts "'transform the nature of the claim' into a patent-eligible application." *Id.* at 217 (quoting *Mayo Collaborative Servs.*, 566 U.S. at 78).

As a threshold matter, I first address whether there are representative claims for each patent family. L&W argues that Evolution previously conceded (ECF No. 75 at 8 n.6) that claim 1 of the '014 patent is representative of all Haushalter patent claims. ECF No. 156 at 10. L&W also argues that claim 1 of the '074 patent is representative of all Merati patent claims. *Id.* at 12. In opposition, Evolution asserts that L&W fails to address most of its asserted claims, and attempts to collapse its "diverse set of patent claims" under the umbrella of "wagering games,"

and that L&W has not met its initial burden for showing representativeness for either patent family. ECF No. 162 at 15–16.

It is well-established that where claims of a patent are substantially similar and linked to the same abstract idea, courts may focus their analysis on representative claims rather than analyzing each claim of the patent at issue. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d 1343, 1348 (Fed. Cir. 2014) (focusing the Alice analysis on a single representative claim); *Voip-Pal.Com, Inc., v. Apple Inc.,* 375 F. Supp. 3d 1110, 1125 (N.D. Cal. 2019) ("[T]he Court need not individually analyze every claim if certain claims are representative." (citing *Alice,* 573 U.S. at 224–28)).

Courts may treat a claim as representative "if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer, v. HP Inc.,* 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citing *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1352 (Fed. Cir. 2016)).

Although Evolution argues that it has "asserted at least 75 distinct claims—each, individually, presumed to be valid—across five patents from two different families," ECF No. 162 at 15, and would like this court to essentially analyze each claim, rather than find a claim representative of each family, it has not presented "any meaningful argument for the distinctive significance of any claim limitation not found in the representative claim[s]" L&W proposes. *See Berkheimer,* 881 F.3d at 1365 (citing *Electric Power Group,* 830 F.3d at 1352). As to the Haushalter patent claims,[4] Evolution argues that its patents do more than assert three components—a ball, a roulette wheel, and a processor—directed to a system, method, or medium 'for wagering,'" that is, it alleges "how different limitations from different independent and dependent claims show various technological improvements and inventive concepts." ECF No. 162 at 16–17. However,

---

[4] I note that I previously found "Claim 1 of the '014 patent will serve as the Representative Claim 1 for the purposes of **this action**." ECF No. 76 at 8 (emphasis added). Nonetheless, for judicial efficiency, I briefly address Evolution's arguments.

even when reviewing the "features" highlighted by Evolution, my prior conclusion stands: there is no meaningful distinction between the claims asserted in its complaint nor opposition. Consequently, I find that the '014 patent claim is representative of the Haushalter patent claims.

As to Evolution's Merati patent claims, L&W argues that claim 1 of the '074 patent is representative of all Merati patent claims. ECF No. 156 at 12. L&W essentially argues that the claims use generic components (communication interface and processor) to perform steps specified in results-oriented language, including at the alleged points of novelty. *Id.* In opposition, Evolution argues that L&W fails to assert a prima facie showing "that the group of claims are 'substantially similar and linked to the same' ineligible concept," *id.* at 17 (citing *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024), and that its SAC does explain that no claim is representative and discusses different limitations that provide technical improvements and inventive concepts. ECF No. 162 at 18. To support their position, Evolution again tries to highlight features in its SAC. *See id.* But those features demonstrate why claim 1 is an appropriate representative: the features are enhancements to online wagering, not technical or hardware advancements that would distinguish the claims from one another. *See Berkheimer*, 881 F.3d at 1365 (explaining that an alteration that lack "distinctive significance" will not preclude grouping the claims together analytically). Thus, claim 1 of the '074 patent is an appropriate representative claim because the Merati patent claims share a communications interface and a processor executing functional steps to provide hybrid gaming services. *See Internet Payments Pats. Ltd. v. PayPal Inc.*, 2026 U.S. Dist. LEXIS 15192, at *41 (N.D. Cal. Jan. 27, 2026) (finding that the plaintiff failed to make any meaningful argument as to why the claims (2, 7, 8) are distinct from claim 1 in any way that would alter the *Alice* analysis and found claim 1 representative of all asserted claims).

Having found there are representative claims for each patent family, I turn and analyze the patents under the *Alice* test.

### A. The Haushalter patents

Evolution asserts that when "the claims of Evolution's patents are viewed as a whole and considered in light of their specifications and prosecution histories, it is evident that they are directed to specific software advancements for new game elements." ECF No. 125 at 24, ¶ 75.

Claim 1 of the '014 patent states the following:

(a) A system for wagering, comprising:
(b) a roulette wheel;
(c) a ball configured to be used in the roulette wheel;
(d) at least one hardware processor collectively configured to:
(e) generate a first graphical user interface for presentation on a first player device of a first player;
(f) generate a second graphical user interface for presentation on a second player device of a second player;
(g) receive first bet information for a first bet on a spin of the roulette wheel via the first graphical user interface, the first bet information corresponding to only a single first position on the roulette wheel;
(h) receive second bet information for a second bet on the spin of the roulette wheel via the second graphical user interface, the second bet information corresponding to only a single second position on the roulette wheel that is different from the single first position;
(i) determine that the roulette wheel and the ball have been spun for the spin of the roulette wheel;
(j) randomly select a first selected position on the roulette wheel for the spin of the roulette wheel prior to the ball falling into an outcome position on the roulette wheel, wherein the first selected position is the same as the single first position;
(k) determine a first payout for the first single position and a second payout for the single second position for the spin of the roulette wheel, wherein the first payout is higher than the second payout;
(l) determine that the ball has fallen in the single first position for the spin of the roulette wheel; and
(m) indicate that the first player is to be paid at the first payout for the spin of the roulette wheel.

ECF No. 125 at 62–63, ¶ 190; Appendix of Exs-'014 patent, Pl.'s Ex. 3, ECF No. 126 at 183.[5]

---

[5] Material properly submitted as part of the compliant may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

The SAC alleges that in 2018, unlike traditional roulette games, "Evolution added features to the game, never before implemented by anyone, to drastically improve the players' experience." ECF No. 125 at 24, ¶¶ 76–77. Specifically, it asserts that "during a narrow window of time—before the ball lands on a position—Evolution's software uses a random number generator to select a subset of the positions, and announces to the players that those positions will receive not the usual 35 times payout, but a different payout many multiples higher than the usual payout." *Id.* at ¶ 77. It further asserts that "[t]he selected positions and multipliers change from game to game" and these features enhanced the excitement of the playing experienced. *Id.*

Evolution asserts that one of its technological improvements is "enabling single or multiplayer participation through electronic player devices." *Id.* at ¶ 90. It further asserts that '014 patent explains how players can place wagers on player devices and how the wager information can be received for each player. *Id.* at ¶ 91. As alleged, the betting interface area can provide "user interface elements for wagering in the game." *Id.*

Evolution alleges that L&W used the '014 patent and Lightning Roulette as blueprints in developing its own copycat game, RouletteX, and thus knew that RouletteX would infringe one or more claims of the '014 patent. ECF No. 125 at 65–66, ¶ 205.

### 1. *Alice step 1: The Haushalter patent claims are directed to an abstract idea.*

L&W first argues that when the court previously dismissed the Haushalter patents under *Alice*, the court's findings were not dependent on the pleading, but rather they flowed from the intrinsic record. ECF No. 156 at 8–9 (citing *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) (explaining "[n]o amendment to a complaint can alter what a patent itself states").[6] While I find that the '014 patent itself has not changed, I still consider Evolution's allegations in its amended complaint at this stage of the proceedings.

---

[6] Evolution opposes the motion, but does not directly address this argument raised by L&W.

As it relates to the Haushalter patent claims, L&W argues that the SAC offers no basis for this court to reach a different conclusion from its previous order. ECF No. 156 at 19. In particular, it asserts the SAC's allegations "do not cure the fundamental defect that the claims are directed to the abstract idea of playing roulette." *Id.* at 19. It further argues that Evolution's allegations that randomly selecting a roulette position before the ball drops is a technological improvement that cannot save its claims. *Id.* at 20. In opposition, Evolution argues that its patents are not directed to an abstract idea, "but are instead directed to technological improvements in existing technology for new and improved games, including roulette and hybrid gaming, which encompass features that were not available in traditional or prior electronic versions of those games." ECF No. 162 at 23.

In considering the SAC and the arguments raised by both parties, I find that '014 patent remains directed towards ineligible material—an abstract idea—for the same reasons stated in my prior order. ECF No. 76 at 10–11. In my prior findings related to step 1 in the *Alice* analysis, I found there was no evidence that the roulette method to which the patent is directed could not be carried out on existing computers. *Id.* at 10. In particular, I determined that claim 1 of the '014 patent did not "explain how any of the purported technical improvements work." *Id.* at 11 (quoting *NEXRF Corp.*, 547 F. Supp. 3d at 982). I make the same findings here.

Evolution argues that it has added "pages of detailed factual allegations" of how the Haushalter patents are directed at specific software advancements for new game elements, not just traditional wagering games. But when considering the SAC allegations concerning the '014 patent as a whole, it merely provides the results of the advancements (or features), but not means to achieve the results. *See Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1021 (N.D. Cal. 2020) (holding that because a patent describes a result, and not the means to achieve it, it is considered abstract); *Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*, 652 F. Supp. 3d. 1255, 1262 (D. Nev. 2023) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F. 3d 1343, 1346 (Fed. Cir. 2015) (explaining that the court's task is not to determine whether claims merely involve an abstract

9

idea at some level, but rather to examine the claims "in their entirety to ascertain whether their character as a whole is directed to some excluded subject matter"))). "Without more than this results-oriented language, the claim does not recite more than the abstract idea itself." *Clear Imaging Rsch. LLC v. Google LLC*, 790 F. Supp. 3d 948, 957 (S.D. Cal. 2025) (citing *Mobile Acuity Ltd.*, 110 F.4th at 1292–93)). For software-based inventions, like the one Evolution asserts here, step one "often turns on whether the claims focus on the specific asserted improvement in computer capabilities, or instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Trinity Info Media, LLC, v. Covalent, Inc.*, 72 F.4th 1355, 1362–63 (Fed Cir. 2023) (quoting *In re Killian*, 45 F.4th 1373, 1382 (Fed Cir. 2022); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("We look to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery"). The steps explained in the '014 patent do not purport to "improve the functioning of the computer itself"; rather, the claims use generic computer components in their ordinary capacity as tools to execute the steps. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1378 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts."). Consequently, I find that '014 patent is directed to an abstract idea.

### 2. *Alice step 2: the Haushalter patent claims do not transform the abstract idea into something more.*

A patent directed toward an abstract idea is not per se ineligible. If a party can demonstrate that the patent's claims disclose an inventive concept, the abstract idea can be transformed into a patent-eligible application. *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1160 (Fed. Cir. 2018).

In my prior order, I found *NEXRF Corp.*, 547 F. Supp. 3d at 997, instructive. ECF No. 76 at 14 (explaining that the patent at issue lacked an inventive concept sufficient to transform the

abstract idea into a patent-eligible application when the patent consisted of a combination of generic computer elements performing conventional functions). In particular, the basis of my prior ruling in step 2 was that the features described in claim 1 of the '014 patent were both generically described and claimed because the features described *what* they can do and not *how* they can do it. *Id.* (citing ECF No. 1-4 at 88).

To address this concern, Evolution asserts that the SAC describes how the inventive concepts work, "through detailed factual allegations that must be taken as true at this stage." ECF No. 162 at 35 (citing ECF No. 125 at ¶¶ 88, 106–12, 115, 117). But a review of the allegations and Evolution's arguments do not remedy the issue. Thus, *NEXRF Corp* remains instructive because the SAC's allegations simply tell (meaning they give results), rather than *show,* how its computer elements allegedly transform the patent claims to an inventive concept. *See* ECF No. 125 at ¶ 88 (explaining that '014 describes how the selected wheel positions and modified payments are determined—that is, the process for implementing a wagering game can randomly select one or more of the roulette wheel numbers using a pseudo-random number generate and this function can be used to approximate random functions and selects the pseudo-random numbers); *id.* (also explaining how "the randomly or pseudo-randomly selected positions and increased payouts" use this "process [to] detect the ball dropping into a position on the roulette wheel, deduct money from player accounts . . . , and make payouts of money"); *id.* at ¶ 91 (explaining that first and second player devices can present a user interface, video, and audio by providing "user interface elements for wagering in the game"). *See Two-Way Media*, 874 F.3d at 1339 (explaining that "merely reciting an abstract idea performed on a set of generic computer components . . . would not contain an inventive concept").

The "newly" asserted allegations do not change my prior determination that '014 patent claims remain result-oriented and do not explain how they are patent-eligible matter. In other words, I find that the SAC has not crossed the line from conceivable to plausible, so the

Haushalter patent claims are directed at an abstract idea[7] and should therefore be dismissed. *See Twombly*, 550 U.S. at 570.

### B. The Merati patents

Evolution asserts that its allegations related to the Merati patents contain pages of detailed allegations explaining that "viewed as a whole and considered in light of their specifications and prosecution histories, it is evident that they are directed to specific advancements for gaming servers and methods of operating them." ECF No. 125 at 36, ¶ 103.

> Claim 1 of the '074 patent states the following:
> (a) A server for providing a game to online game players over a network that utilizes physical gaming values produced at a location with electronica game values generated by the server, comprising:
> (b) a communication interface for receiving one or more electronic indications of the physical game values over the network from the location for use in playing the game, and for providing one or more of the electronic game values to an online game player of the online game players over the network;
> (c) a memory for storing processor-executable instructions; and
> (d) a processor coupled to the communication interface and the memory for executing the processor-executable instructions that causes the server to;
> (e) receive, by the processor via the communication interface, the one or more electronic indications of the physical game values;
> (f) generate, by the processor via the communication interface, one or more electronic game values for use in playing the game;
> (g) provide the one or more electronic game values to an online game player of the online game players over the network;
> (h) provide, by the processor via the communication interface, the one or more electronic representations of the physical game values to the online game player over the network; and
> (i) determine, by the processor, a final game result based on at least the one or more electronic representations and the one or more electronic game values.

ECF No. 125 at 76, ¶ 237; App'x of Exs., Pl.'s Ex. 7, ECF No. 129 at 46.

Evolution asserts that both RouletteX and 88 Fortunes Blaze Live Roulette comprise a server that provides a game to online game players over a network and uses physical gaming values produced at a location together with electronic gaming values generated by the server.

---

[7] Because I make this finding, I limit my analysis to addressing whether Evolution has explained how the patent functions. And I do not address the additional arguments raised by the defendants.

ECF No. 125 at 77, ¶ 238. It further asserts that L&W infringed on its '074 patent claims by manufacturing, using, importing, selling, and/or offering to sell in the United States at least its RouletteX and 88 Fortunes Blaze Live Roulette systems. *Id.* at ¶ 236.

### 1. *Alice step 1: The Merati patent claims are also directed at an abstract idea.*

L&W argues that the Merati patent claims are abstract not only because they are directed at wagering games, but also because they merely combine online and in-person wagering. ECF No. 156 at 25. It further argues that the Merati patents generically recite claims using a computer to implement the basic steps of a wagering game with a physical element to generate a random number. *Id.* In particular, L&W argues that the Merati claims cite a communication interface and a processor to "provid[e] gaming services to game players located remotely from one another," through system claims and method claims. *Id.* In other words, as L&W argues, it uses a communication interface and processor to perform the wagering game, but that does not make it any less abstract. *Id.*

In opposition, Evolution argues the Merati patents improve how computing and physical game elements interact to deliver new and innovative hybrid gaming experiences. ECF No. 162 at 21. Evolution also asserts that the Merati patents fit comfortably within the scope of patent-eligible improvements. *Id.* at 26. They contend that is because the claims are not just directed to managing a game, but rather, "the claimed system is directed to the improvement in the functioning of a computer in the implementation of a game and an improved user interface" and the "claimed system represents an improvement in how these computing elements interact to deliver a gaming experience to an end-user." *Id.* (citing *Gree, Inc. v. Supercell Oy*, 2020 WL 4799770, at *3 (E.D. Tex. Aug. 6, 2020) (citation modified).

I also find that the '074 patent is directed towards ineligible material. While there is no bright-line test to separate abstract ideas from concepts that are sufficiently concrete to end the *Alice* inquiry, *Voip-Pal.Com*, 375 F. Supp. 3d at 1125, there are "three themes" that would

13

demonstrate a claim is directed at an abstract idea: (1) the claimed method discloses only generalized steps drafted in purely functional terms; (2) it is analogous to well-known, longstanding practices; and (3) it does not recite an improvement in computer functionality. *See Voip-Pal.com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 951 (N.D. Cal. 2019).

I am careful not to express the claim's focus at an unduly "high level of abstraction . . . untethered from the language of the claims," but rather in parallel with the level of generality or abstraction expressed in the claims themselves. *Enfish*, 822 F.3d at 1337; *see also Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (requiring courts to "ensure at step one that [they] articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful"). My inquiry therefore "centers on determining the 'focus' of the claims." *Two-Way Media Ltd.*, 874 F.3d at 1340. The '074 patent claim states that it is a "server for providing a game to online game players over a network that utilizes physical gaming values" by a communication interface; receiving by the processor via the communication interface, the one or more electronic indications of the physical game values; generating by the processor via the communication interface, on one more electronic game values for use in playing the game; and a memory for storing processor-executable instructions. ECF No. 125 at 76, ¶ 237; ECF No. 129 at 46.

Thus, the '074 patent claim involves alleged technological improvements geared towards hybrid gaming systems and method that include both live and virtual gaming elements. ECF No. 125 at ¶ 106. But the SAC fails to explain how the claimed electronics (that is, the processor) and the network capabilities (that is, the communication interface) create a non-abstract idea. Rather, the '074 patent claim discloses only generalized steps using purely functional language. *See Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 Fed. App'x 882 (Fed. Cir. 2019) ("The distinction between claims that recite functions or results (the 'what it does' aspect of the invention) and those that recite concrete means for achieving particular functions or results (the 'how it does it' aspect of the invention) is an important indicator of whether a claim is directed to an abstract

idea."). "Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Electric Power Group*, 830 F.3d at 1356. For that reason, claims reciting "[g]eneralized steps to be performed on a computer using conventional computer activity are abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (quotations omitted). Because the '074 patent claim recites steps such as receiving, generating, and serving as a memory for storing processor-executable instructions, ECF No. 125 at 76, I find that the Merati patent claims are directed to an abstract idea.

### 2. *Alice step 2: the Merati patent claims do not transform the abstract idea into something more.*

In looking for "something more" to satisfy *Alice* step two, the court cannot rely on the basic use of computers to carry out an already well-known process. *RaceTech, LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 864 (W.D. Ky. 2016) (citing *Alice*, 573 U.S. 208). Nor can generic hardware in combination with a computer system transform an abstract idea into an inventive concept. *Id.* These principles are often applied in "the context of computer systems and hardware utilized in conjunction with computer gambling." *Id.* at 864–65 (citing *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1006–07 (Fed. Cir. 2014)).

In *NEXRF Corp. v. Playtika Ltd.*, the court found that the abstract idea of "incentivizing gambling tailored to a user's location" did not transform into an inventive concept because it recited "only generic computer hardware performing routine functions—a wireless device, a verification system, a centralized gaming server, and a memory module—to allow a user to play an online slot machine game." 547 F. Supp. 3d at 991–92. The '074 patent is akin to the patent at issue in *NEXRF*, because it fails to transform computer hardware, tools, and components into the "something more" required for an inventive concept. Consequently, I find that the Merati patent claims do not transform the abstract idea of rules for playing a hybrid game into an inventive concept.

IV.     Conclusion

        IT IS HEREBY ORDERED that the defendants' motion to dismiss **[ECF No. 156] is GRANTED.**

        IT IS FURTHER ORDERED that the parties must file a joint status report addressing arbitration by April 30, 2026.

        Dated: March 30, 2026

                                        _____
                                        Cristina D. Silva
                                        United States District Judge

16